**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARACTER TECHNOLOGIES, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11603 ([___]) |

**DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE APPOINTMENT OF STRETTO, INC. AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "Debtor") hereby submits this application (this "Application") for entry of an order granting the relief described below. In support hereof, the Debtor relies on the *Declaration of Colin M. Adams in Support of the Debtor's Chapter 11 Petition and First Day Motions* (the "First Day Declaration")[2] filed concurrently herewith and incorporated by reference, and further represents as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of* Reference from the United States District Court for the District of Delaware, dated February 29, 2012. Pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor confirms its consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter

[1] The Debtor and the last four digits of its taxpayer identification number are: Character Technologies, Inc. (8842). The Debtor's mailing address for purposes of the chapter 11 case is 700 El Camino Real, Suite 120, P.O. Box 1152, Menlo Park, CA 94025.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this chapter 11 case and this Application is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are section 156(c) of title 28 of the United States Code, sections 105(a) and 503(b)(1)(A) of title 11 of the United States Code, as amended (the "Bankruptcy Code"), rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Local Rule 2002-1(e), and the Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)*, instituted by the Office of the Clerk of the Bankruptcy Court (the "Clerk") on February 1, 2012 (the "Claims Agent Protocol").

**RELIEF REQUESTED**

4. The Debtor respectfully seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (i) authorizing the Debtor to employ and retain Stretto, Inc. ("Stretto") as claims and noticing agent (the "Claims and Noticing Agent") in the Debtor's chapter 11 case effective as of the Petition Date (as defined herein), in accordance with the terms and conditions set forth in that certain Services Agreement between the Debtor and Stretto, dated September 24, 2026 (the "Services Agreement"), and (ii) granting related relief.

5. In support of this Application, the Debtor relies upon and incorporates by reference the *Declaration of Sheryl Betance in Support of Debtor's Application for Entry of an Order (I) Authorizing the Appointment of Stretto, Inc. as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief* (the "Betance Declaration"), attached hereto as **Exhibit B**.

## BACKGROUND

6. On October 12, 2026, (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this chapter 11 case, and no official committee of unsecured creditors has been appointed in this chapter 11 case.

7. The Debtor is a first in kind artificial intelligence ("AI") entertainment platform that allows users to have immersive, multimodal experiences with fictional or imagined characters. What started as a platform to have one-on-one chats tailored to user preferences, has evolved to become a category leader in entertainment AI. Today, the Character.AI platform generates stunning visuals that become part of a story, creates dynamic video content with AI characters, and actively augments videos and stories with rich audio experiences to enhance immersion. In its 4-year lifespan as an active platform, Character has amassed a large and engaged user base. The burgeoning and evolving field of AI entertainment, however, has proven to be costly to develop and grow. These high costs, coupled with potential litigation related liabilities and regulatory engagement have contributed to the Debtor's inability to generate sufficient cash flows to support its business in the present form. The Debtor has commenced this case to engage in value-maximizing transactions for the benefit of its stakeholders.

8. Additional factual background regarding the Debtor, including its business operations, its corporate and capital structure, and the events leading to the filing of this chapter 11 case, is set forth in detail in the First Day Declaration and incorporated herein by reference.

9. Although the Debtor has not yet filed its schedules of assets and liabilities, it anticipates that there may be a significant number of entities to be noticed. Local Rule 2002-1(e) provides that "[a] chapter 11 debtor with more than 200 parties identified in the list filed under Local Rule 1007-2(a) must file [a] motion [to retain a claims and noticing agent] with its petition or within 7 days thereafter, unless the Court orders otherwise." In view of the number of anticipated claimants and the complexity of the Debtor's business, the Debtor submits that the appointment of a Claims and Noticing Agent is required by Local Rule 2002-1(e) and is otherwise in the best interests of both the Debtor's estate and its creditors.

10. The Debtor's selection of Stretto to act as the Claims and Noticing Agent satisfies the Claims Agent Protocol, in that the Debtor obtained and reviewed engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process. Moreover, the Debtor submits, based on all engagement proposals obtained and reviewed, that Stretto's rates are competitive and reasonable given Stretto's quality of services and expertise. The terms of Stretto's appointment are set forth in the Services Agreement attached as **Exhibit 1** to the Proposed Order. Notwithstanding the terms of the Services Agreement, the Debtor is seeking to retain Stretto solely on the terms set forth in this Application and Proposed Order.

11. By separate application, the Debtor intends to seek authorization to employ Stretto as administrative advisor in this chapter 11 case, pursuant to section 327(a) of the Bankruptcy Code, because the administration of the chapter 11 case will require Stretto to perform duties outside the scope of 28 U.S.C. § 156(c).

**STRETTO'S QUALIFICATIONS**

12. Stretto is one of the country's leading chapter 11 administrators, with experience in both the legal and administrative aspects of large, complex chapter 11 cases. Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Indeed, Stretto has acted as the claims and noticing agent in numerous chapter 11 cases of comparable size and complexity, including cases in this District: *In re Norcold LLC*, Case No. 25-11933 (TMH) (Bankr. D. Del. Nov. 4, 2025); *In re US Magnesium LLC*, Case No. 25-11696 (BLS) (Bankr. D. Del. Sept. 12, 2025); *In re IMG Holdings, Inc.*, Case No. 25-11500 (KBO) (Bankr. D. Del. Aug. 13, 2025); *In re Am.'s Gardening Res., Inc.*, Case No. 25-11180 (BLS) (Bankr. D. Del. July 14, 2025); *In re My Job Matcher, Inc.*, Case No. 25-11280 (KBO) (Bankr. D. Del. July 8, 2025); *In re CHG US Holdings LLC.*, Case No. 25-10851 (MFW) (Bankr. D. Del. May 15, 2025); *In re Accelerate Diagnostics, Inc.*, Case No. 25-10837 (KBO) (Bankr. D. Del. May 12, 2025); *In re Creativemass Holdings, Inc.*, Case No. 25-10695 (MFW) (Bankr. D. Del. Apr. 16, 2025); *In re Viridos, Inc.*, Case No. 25-10697 (CTG) (Bankr. D. Del. Apr. 17, 2025); and *In re KTRV LLC*, Case No. 25-10601 (MFW) (Bankr. D. Del. Apr. 2, 2025).

13. Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest. By appointing Stretto as the Claims and Noticing Agent in this chapter 11 case, the distribution of notices and the processing of claims will be expedited, and the Clerk will be relieved of the administrative burden of processing what may be an overwhelming number of claims. Given

the nature of this chapter 11 case, the Debtor believes that the appointment of Stretto as the Claims and Noticing Agent will serve to maximize the value of the Debtor's estate for all stakeholders.

**SERVICES TO BE PROVIDED**

14. This Application pertains only to the work to be performed by Stretto under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(e). Any work to be performed by Stretto outside of this scope is not covered by this Application or by any order granting approval hereof.

15. Specifically, Stretto will perform the following tasks, as necessary, in its role as Claims and Noticing Agent, as well as all quality control relating thereto:

(a) Prepare and serve required notices and documents in this chapter 11 case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court, including (i) notice of the commencement of this chapter 11 case and the initial meeting of creditors under Bankruptcy Code § 341(a); (ii) notice of any claims bar date; (iii) notices of transfers of claims; (iv) notices of objections to claims and objections to transfers of claims; (v) notices of any hearings on a disclosure statement and confirmation of the Debtor's plan or plans of reorganization, including under Bankruptcy Rule 3017(d); (vi) notice of the effective date of any plan; and (vii) all other notices, orders, pleadings, publications and other documents as the Debtor or Court may deem necessary or appropriate for an orderly administration of this chapter 11 case;

(b) Maintain an official copy of the Debtor's schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtor's known creditors and the amounts owed thereto;

(c) Maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

(d) Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the

lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e) Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f) Maintain an electronic platform for purposes of filing proofs of claim;

(g) For all notices, motions, orders, or other pleadings or documents served, prepare and file, or cause to be filed with the Clerk, an affidavit or certificate of service within seven business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served; (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses; (iii) the manner of service; and (iv) the date served;

(h) Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(i) Maintain the official claims register for the Debtor (the "Claims Register") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

(j) Provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

(k) Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims through the claims agent's case website, but protecting from public access any information protected by Court order;

(l) Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(m) Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Stretto, not less than weekly;

(n) Upon completion of the docketing process for all claims received to date, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

(o) Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(p) Identify and correct any incomplete or incorrect addresses in any mailing or service lists (to the extent such information available);

(q) Assist in the dissemination of information to the public and respond to requests for administrative information regarding this chapter 11 case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

(r) Thirty (30) days prior to the close of this chapter 11 case, to the extent practicable, request that the Debtor submits to the Court a proposed order dismissing Stretto as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of this chapter 11 case;

(s) Within fourteen (14) days after entry of an order dismissing a case or within twenty-eight (28) days after entry of a final decree, forward to the Clerk an electronic version of all proofs of claim, upload the creditor matrix into CM/ECF, and docket a final claims register;

(t) Within fourteen (14) days after the earlier of entry of an order (a) converting the case or (b) terminating the services of the claims agent, (i) forward to the Clerk an electronic version of all proofs of claim; (ii) upload the publicly available portions of the creditor matrix into CM/ECF; (iii) forward to the Clerk the sealed portions of the creditor matrix in the format requested by the Clerk; and (iv) docket a final claims register; and

(u) At the close of this chapter 11 case, comply with all applicable laws and procedures for disposing and/or archiving of claims and related documents.

16. The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Stretto.

## COMPENSATION

17. The Debtor requests that the undisputed fees and expenses incurred by Stretto in the performance of the above services be treated as administrative expenses of the Debtor's

chapter 11 estate pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.

18. Stretto agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on (a) the Debtor, (b) the office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (c) proposed counsel for the Debtor, (d) counsel for any statutory committee appointed in this chapter 11 case, and (e) any party in interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Services Agreement or Stretto's monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

19. Prior to the Petition Date, the Debtor provided Stretto an advance in the amount of $25,000. Stretto seeks to first apply the advance to all prepetition invoices, and thereafter, to have the advance replenished to the original advance amount, and thereafter, to hold the advance under the Services Agreement during this chapter 11 case as security for the payment of fees and expenses incurred under the Services Agreement.

20. Additionally, under the terms of the Services Agreement, the Debtor has agreed to indemnify, defend, and hold harmless Stretto and its members, officers, employees, representatives, affiliates, consultants, subcontractors, and agents under certain circumstances specified in the Services Agreement, except in circumstances resulting solely from Stretto's gross negligence, willful misconduct, or as otherwise provided in the Services Agreement or Proposed Order. The Debtor believes that such an indemnification obligation is customary, reasonable, and necessary for the appointment of a Claims and Noticing Agent in this chapter 11 case.

**DISINTERESTEDNESS**

21. Although the Debtor does not propose to employ Stretto under section 327 of the Bankruptcy Code pursuant to this Application (such retention will be sought by separate application), Stretto has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtor, and, to the best of the Debtor's knowledge, information, and belief, and except as disclosed in the Betance Declaration, Stretto has represented that it neither holds nor represents any interest materially adverse to the Debtor's estate in connection with any matter on which it would be employed. To the extent that Stretto or its personnel have, or may have had, relationships with certain of the Debtor's creditors as described in the Betance Declaration, Stretto has represented to the Debtor that those matters are wholly unrelated to this chapter 11 case.

22. Moreover, in connection with its appointment as Claims and Noticing Agent, Stretto represents in the Betance Declaration, among other things, that:

(a) Stretto is not a creditor, equity security holder, or insider of the Debtor;

(b) Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

(c) By accepting employment in this chapter 11 case, Stretto waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

(d) In its capacity as the Claims and Noticing Agent in this chapter 11 case, Stretto will not be an agent of the United States and will not act on behalf of the United States;

(e) Stretto will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

(f) Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g) In its capacity as Claims and Noticing Agent in this chapter 11 case, Stretto will not intentionally misrepresent any fact to any person;

(h) Stretto shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i) Stretto will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j) None of the services provided by Stretto as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk's office.

23. Stretto will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## COMPLIANCE WITH CLAIMS AGENT PROTOCOL

24. This Application complies with the Claims Agent Protocol, in that the Debtor has obtained and reviewed engagement proposals from at least two other Court-approved claims and noticing agents to ensure selection through a competitive process. Moreover, the Debtor submits, based on all engagement proposals obtained and reviewed, that Stretto's rates are competitive and reasonable given Stretto's quality of services and expertise.

25. To the extent that there is any inconsistency between this Application, the Proposed Order, and the Services Agreement, the Proposed Order shall govern.

## BASIS FOR RELIEF

### I. RETENTION AND EMPLOYMENT OF STRETTO AS CLAIMS AND NOTICING AGENT IS PERMITTED

26. The Debtor submits that the requested relief is appropriate pursuant to section 156(c) of title 28 of the United States Code, section 105 of the Bankruptcy Code, Bankruptcy Rule 2002, and Local Rule 2002-1(e). Pursuant to 28 U.S.C. § 156(c), the Court is authorized to utilize agents and facilities other than the Clerk for the administration of bankruptcy cases. Specifically, 28 U.S.C. § 156(c) provides, in relevant part, as follows:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.

28 U.S.C. § 156(c). Further, section 105(a) of the Bankruptcy Code provides, in pertinent part, as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Moreover, Bankruptcy Rule 2002, which regulates the notices that must be provided to creditors and other parties in interest in a bankruptcy case, provides that the Court may direct that a person other than the Clerk give notice of the various matters described therein. *See* Fed. R. Bankr. P. 2002. In addition, Local Rule 2002-1(e) provides that "[t]he Court may at the First Day Hearing authorize the retention of a claims and noticing agent." Del. Bankr. L.R. 2002-1(e). Additionally, Local Rule 2002-1(e) requires the appointment of a claims and noticing agent when a chapter 11 debtor has "more than 200 creditors identified in the [creditor matrix]." *Id.* The Debtor has more than 200 parties identified on its creditor matrix and, accordingly, seeks to retain Stretto in accordance with the Local Rules.

27. In view of the substantial number of parties receiving notice in this chapter 11 case and the significant number of anticipated claimants, the Debtor submits that the appointment of Stretto as the Claims and Noticing Agent is required by the Local Rules and is necessary and in the best interests of the Debtor and its estate and will serve to maximize the value of the Debtor's estate for all stakeholders.

## II. RELIEF EFFECTIVE AS OF THE PETITION DATE IS APPROPRIATE

28. Pursuant to the Debtor's request, Stretto has agreed to serve as the Claims and Noticing Agent on and after the Petition Date with assurance that the Debtor would seek approval of its employment and retention, effective as of the Petition Date, so that Stretto may be compensated for its services prior to the approval of this Application. The Debtor believes that no party in interest will be prejudiced by granting relief as of the Petition Date, as proposed in this Application, because Stretto has provided and continues to provide valuable services to the Debtor's estate in the interim period.

29. Accordingly, the Debtor requests entry of the Proposed Order authorizing the Debtor to retain and employ Stretto as Claims and Noticing Agent, effective as of the Petition Date.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

30. To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## NOTICE

31. The Debtor has provided notice of this motion to the following parties or their respective counsel: (a) the U.S. Trustee; (b) the United States Attorney's Office for the District of Delaware; (c) the state attorneys general for all states in which the Debtor conducts business; (d) the Internal Revenue Service; (e) the holders of the twenty (20) largest unsecured claims against the Debtor; (f) counsel to Disney; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor will serve copies of this Application and any order entered in respect hereto as required by Local Rule 9013-1(m). The Debtor submits that, in light of the nature of the relief requested, no further notice is necessary.

## **CONCLUSION**

WHEREFORE, the Debtor respectfully requests entry of the Order, substantially in the form attached hereto as **Exhibit A** granting the relief requested herein and such other and further relief as this Court may deem just and appropriate.

Dated: October 13, 2026

/s/ *Colin M. Adams*

Colin M. Adams
Chief Executive Officer
Character Technologies, Inc.
700 El Camino Real, Suite 120, P.O. Box 1152, Menlo Park, CA 94025

# **Exhibit A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARACTER TECHNOLOGIES, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11603 ([___])<br><br>**Ref. Docket No. __** |

**ORDER (I) AUTHORIZING THE APPOINTMENT OF STRETTO, INC. AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

Upon the application (the "Application")[2] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an order (this "Order"), (i) authorizing the Debtor to retain and appoint Stretto, Inc. ("Stretto") as claims and noticing agent (the "Claims and Noticing Agent") pursuant to 28 U.S.C. § 156(c), and section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002(f), and Local Rule 2002-1(e), to, among other things, (a) distribute required notices to parties in interest, (b) receive, maintain, docket, and otherwise administer the proofs of claim filed in the Debtor's chapter 11 case, (c) provide such other claims and noticing services, as required by the Debtor, that would fall within the purview of services to be provided by the Clerk's office, all as more fully set forth in the Application, and (ii) granting related relief; and upon the First Day Declaration and the Betance Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having

[1] The Debtor and the last four digits of its taxpayer identification number are: Character Technologies, Inc. (8842). The Debtor's mailing address for purposes of the chapter 11 case is 700 El Camino Real, Suite 120, P.O. Box 1152, Menlo Park, CA 94025.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Application is granted on a final basis as set forth herein.

2. All objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

3. Notwithstanding the terms of the Services Agreement attached hereto as **Exhibit 1**, the Application is approved solely as set forth in this Order.

4. The Debtor is authorized pursuant to 28 U.S.C. § 156(c) and Local Rule 2002-1(e) to retain Stretto as Claims and Noticing Agent in this chapter 11 case effective as of the Petition Date under the terms of the Services Agreement, and Stretto is authorized and directed to perform the claims and noticing services and to receive, maintain, record, and otherwise administer the

proofs of claim filed in this chapter 11 case, and all related tasks, all as described in the Application.

5. Stretto shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in this chapter 11 case and is authorized and directed to maintain official claims register for the Debtor, to provide public access to every proof of claim without charge, unless otherwise ordered by the Court, and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

6. Stretto is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.

7. Stretto is authorized to take such other action to comply with all duties set forth in the Application and this Order.

8. Stretto shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of to 28 U.S.C. § 156(c).

9. Without further order of this Court, the Debtor is authorized to compensate Stretto in accordance with the terms of the Services Agreement upon the receipt of reasonably detailed monthly invoices setting forth the services provided by Stretto and the rates charged for each, and to reimburse Stretto for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Stretto to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses as the Claims and Noticing Agent.

10. Stretto shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtor, the U.S. Trustee, proposed counsel for the Debtor, counsel for any statutory committee appointed in

this chapter 11 case and any party in interest who specifically requests service of the monthly invoices.

11. The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Services Agreement or monthly invoices; *provided*, that the parties may seek resolution of the matter from this Court if resolution is not achieved.

12. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, Stretto's fees and expenses incurred in connection with the Claims and Noticing Services shall be an administrative expense of the Debtor's chapter 11 estate.

13. Stretto may apply its advance to all prepetition invoices, which advance shall be replenished to the original advance amount, and, thereafter, Stretto may hold its advance under the Services Agreement during the chapter 11 case as security for the payment of fees and expenses incurred under the Services Agreement.

14. The Debtor is authorized to indemnify Stretto under the terms of the Services Agreement, subject to the following modifications:

(a) Stretto shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Services Agreement for services other than the services provided under the Services Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court.

(b) Notwithstanding anything to the contrary in the Services Agreement, the Debtor shall have no obligation to indemnify Stretto, or provide contribution or reimbursement to Stretto, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Stretto's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtor alleges the breach of Stretto's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to applicable law; or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Stretto should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by this Order.

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this chapter 11 case (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing this chapter 11 case, Stretto believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution, and/or reimbursement obligations under the Services Agreement (as modified by this Order), including without limitation the advancement of defense costs, Stretto must file an application therefor in this Court, and the Debtor may not pay any such amounts to Stretto before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Stretto for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify Stretto. All parties in interest shall retain the right to object to any demand by Stretto for indemnification, contribution, or reimbursement.

15. The limitation of liability section in paragraph 10 of the Services Agreement is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

16. In the event Stretto is unable to provide the services set out in this Order, Stretto shall immediately notify the Clerk and Debtor's counsel and, upon approval of the Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtor's counsel.

17. The Debtor may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Stretto but is not specifically authorized by this Order.

18. The Debtor and Stretto are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

19. Notwithstanding any term in the Services Agreement to the contrary (including with regard to paragraph 15 of the Services Agreement), the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

20. Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

21. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

22. Stretto shall not cease providing claims processing services during the chapter 11 case(s) for any reason, including nonpayment, without an order of the Court.

23. In the event of any inconsistency between the Services Agreement, the Application and this Order, this Order shall govern.

24. The Debtor and Stretto are authorized to take all actions necessary to effectuate the relief granted in this Order.

25. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# Exhibit 1

## Services Agreement

# Services Agreement

This Services Agreement (this "**Agreement**") is entered by and between Stretto, Inc. ("**Stretto**") and Character Technologies, Inc. (together with its affiliates and subsidiaries, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## 1. Services

(a) Stretto agrees to provide the following services for the Company if and to the extent requested:

(i) services under the Clerk of the Court's delegation of duties permitted by 28 U.S.C. § 156(c) pertaining to the provision of notices, dockets, calendars, and other administrative information to parties in interest in the Company's bankruptcy cases, including, but not limited to, (A) service of notices, orders, pleadings, and other documents; (B) preparation and filing of certificates of service; (C) maintenance and monitoring of dockets, calendars, claims registers, proofs of claim and proofs of interest, schedules of assets and liabilities, statements of financial affairs, and creditor mailing matrices; (D) providing a call center and communication support services; and (E) provision of an electronic platform for filing proofs of claim and a case website with case and docket information (the "**Clerk Services**"); and

(ii) (A) preparation of schedules of assets and liabilities, statements of financial affairs, and monthly operating reports; (B) claims analysis and reconciliation, including avoidance actions; (C) plan balloting and vote tabulation; (D) assistance with issuance of securities in connection with the Company's bankruptcy cases; (E) bankruptcy disbursements and distributions; and (F) certain other bankruptcy administration advisory services (the "**Administrative Advisor Services**"). The Clerk Services and the Administrative Advisor Services are referred to herein collectively as the "**Services**".

(b) The Company acknowledges and agrees that Stretto will often take direction from the Company's representatives, employees, agents, and/or professionals (collectively, the "**Company Parties**") with respect to providing services hereunder. The parties agree that Stretto may rely upon, and the Company agrees to be bound by, any requests, advice, or information provided by the Company Parties to the same extent as if such requests, advice, or information were provided by the Company.

(c) The Company agrees and understands that Stretto shall not provide the Company or any other party with legal advice.

(d) Nothing in this Agreement shall prevent the Company and Stretto from entering into other agreements for Stretto to provide services other than the Services that the Company may require in the ordinary course of its business.

## 2. Rates, Expenses and Payment

(a) Stretto will provide the Services on an as-needed basis and upon request or agreement of the Company. Stretto will charge for Clerk Services through the effective date of a chapter 11 plan at the rates attached hereto as **<u>Exhibit C</u>**, and thereafter the Company agrees that Clerk

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case. Each affiliated entity shall be jointly and severally liable for the Company's fees and expenses.

Services will be provided at Stretto's then prevailing rates. Administrative Advisor Services are charged under a separate rate structure provided upon request. The Company agrees to pay for reasonable out of pocket expenses incurred by Stretto in connection with providing Services hereunder.

(b) Stretto will bill the Company separately for the Clerk Services and the Administrative Advisor Services and no less frequently than monthly. All invoices for Clerk Services shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Stretto may require advance or direct payment from the Company before the performance of Services hereunder. If any amount for Clerk Services is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days. Except as otherwise required by the Court or the Clerk of the Court, Stretto reserves the right to suspend or discontinue providing additional services if billed amounts are not paid when due.

(c) In the case of a dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Stretto within 10 days of receipt of the invoice.

(d) The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of, or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Stretto or paid by Stretto to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Stretto an advance in the amount of $25,000.00 that may be held by Stretto as security for the Company's payment obligations under this Agreement. Stretto may use the advance against all unpaid fees and expenses (prepetition or postpetition), which advance shall be replenished immediately by the Company to the original advance amount. Stretto shall be entitled to hold the advance until termination of this Agreement, and thereafter, Stretto shall return to the Company any amount of the advance that remains following use against unpaid fees and expenses.

(h) Stretto reserves the right to make reasonable increases to its rates on a periodic basis. If any such increase represents an increase greater than 10% from the previously effective level, Stretto shall provide 30 days' notice to the Company of such increase.

## 3. Retention in Bankruptcy Case

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "**Bankruptcy Code**"), the Company promptly shall file any necessary application with the Bankruptcy Court to retain Stretto to provide the Services. The form and substance of such applications and any order approving them shall be reasonably acceptable to Stretto.

(b) If the Company seeks authorization in a chapter 11 case to obtain postpetition financing, including debtor-in-possession loans or use of cash collateral, the Company shall include Stretto's fees and expenses incurred (i) for Clerk Services in any carve out for fees required to be paid to the Clerk of the Court, and (ii) for Administrative Advisor Services in any carve out for professional fees.

(c) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Stretto will continue to be paid for Clerk Services in accordance with the terms hereunder.

## 4. Confidentiality

(a) The Company and Stretto agree to keep confidential all non-public records, systems, procedures, software, and other information received from the other party in connection with

the Services provided hereunder; provided, however, that if any such information was publicly available, already in the receiving party's possession or known to it, independently developed by the receiving party, lawfully obtained by the receiving party from a third party, or required to be disclosed by law, then the receiving party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, (i) such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time, if possible, to seek any remedy available under applicable law to prevent disclosure of the information; and (ii) such party will limit such disclosure to the extent such party's counsel in good faith determines such disclosure can be limited.

## 5. Property Rights

Stretto reserves to itself and its agents all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation, and any other information or property (collectively, "**Property**") furnished by Stretto for itself or for use by the Company hereunder. The foregoing definition of Property shall include any and all data, from any source, downloaded, stored, and maintained by Stretto's technology infrastructure. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Stretto hereunder.

## 6. Bank Accounts

At the request of the Company, in the ordinary course of the Company's business, Stretto also may assist the Company in establishing accounts with financial institutions in the name of the Company to facilitate depository management and other treasury services for which Stretto may be compensated by the Company or the respective financial institution, as applicable.

## 7. Term and Termination

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (i) gross negligence or willful misconduct of Stretto that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Stretto invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Stretto where Stretto reasonably believes it likely will not be paid.

(b) If this Agreement is terminated after Stretto is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Stretto of its duties under such retention, which order shall be in form and substance reasonably acceptable to Stretto.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Stretto hereunder.

(d) If this Agreement is terminated, Stretto shall coordinate with the Company and, to the extent applicable, the Clerk of the Court, to maintain an orderly transfer of record keeping functions, and Stretto shall provide the necessary staff, services, and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the applicable rate structure.

## 8. No Representations or Warranties

Stretto makes no representations or warranties, express or implied, regarding the services and products sold or licensed to the Company hereunder or otherwise with respect to this Agreement, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

## 9. Indemnification

(a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents (collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities, and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of, or related to Stretto's performance hereunder. Without limiting the generality of the foregoing, Losses include (i) any liabilities resulting from claims by any third parties against any Indemnified Party, and (ii) indemnification obligations of Stretto to its vendors.

(b) Stretto and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation, or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c) The Company's indemnification of Stretto hereunder shall exclude Losses resulting from Stretto's gross negligence or willful misconduct.

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

## 10. Limitations of Liability

Except as expressly provided herein, Stretto's liability to the Company for any Losses, unless due to Stretto's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company to Stretto for the portion of the particular work that gave rise to the alleged Loss. In no event shall Stretto be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

## 11. Company Data

(a) The Company is responsible for, and Stretto does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Stretto and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**"). Stretto bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b) The Company agrees, represents, and warrants to Stretto that before delivery of any information to Stretto: (i) the Company has full authority to deliver such information to Stretto; (ii) it has complied with all applicable data protection laws in the collection and retention of personal data (including providing any required notices and/or disclosures to

data subjects, consumers, or other necessary parties); and (iii) Stretto is authorized to use such information to perform Services hereunder and as otherwise set forth in this Agreement.

(c) The Company also agrees and represents that, before delivery of any information to Stretto that is personal data subject to the GDPR or other data protection laws, Company shall notify Stretto of the impending delivery and request any modification to this Agreement that Company believes may be required by the applicable data protection laws with respect to that personal data. For the avoidance of doubt, Stretto shall not be required to comply with data protection laws and regulations unless and until they take effect during the term of the Agreement and are applicable to the information Company delivers to Stretto. Personal data shall have the meaning assigned to the terms "personal data" and/or "personal information" under the applicable data protection laws.

(d) If Company notifies Stretto of the applicability of the GDPR to personal data delivered pursuant to this Agreement, the parties agree that the Agreement shall be subject to the terms set forth in the GDPR Addendum attached hereto as **Exhibit A** and incorporated herein in its entirety by reference.

(e) Attached hereto as **Exhibit B** and incorporated herein in its entirety by reference are notification procedures in the event of a Data Security Incident (as defined therein).

(f) Any data, storage media, programs or other materials furnished to Stretto by the Company may be retained by Stretto until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Stretto under this Agreement as a result of data, storage media or other materials maintained, stored, or disposed of by Stretto. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Stretto's Services for a period of 90 days or more, Stretto may dispose of any such materials in a manner to be determined in Stretto's sole reasonable discretion, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data, or information provided by the Company to Stretto.

(g) Notwithstanding the foregoing, if Stretto is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media, or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

(h) Stretto may use Company's name and logo on its website and in its promotional materials to state that Company is a customer of Stretto and its Services during and after the term of this Agreement.

## 12. California Consumer Privacy Act.

(a) Definitions. In this Section 12,

(i) "**CCPA**" means the California Consumer Privacy Act of 2018, including amendments and final regulations;

(ii) "**Personal Information**" has the same meaning given to such term under section 1798.140 of the CCPA and is limited to Personal Information contained in any Company data provided to Stretto by the Company in order for Stretto to provide Services under this Agreement; and

(iii) "**Commercial Purposes**", "**Sell**", "**Share**", "**Business**", and "**Service Provider**" have the same meanings assigned to them in section 1798.140 of the CCPA.

(b) Relationship Between the Parties. To the extent the Company is considered a Business under the CCPA, and subject to the terms of this Section 12, Stretto will act solely as Company's Service Provider with respect to Personal Information.

© 2026 Stretto, Inc., All Rights Reserved. CH 11 Services Agreement v.2026.2, June 16, 2026.

(c) Restrictions. Stretto will not: (i) Sell or Share Personal Information, (ii) retain, use, or disclose Personal Information for any purpose other than for the specific purpose of performing the Services specified in this Agreement, including retaining, using, or disclosing Personal Information for any Commercial Purpose other than providing the Services specified in this Agreement unless otherwise permitted under the CCPA; (iii) retain, use, or disclose the Personal Information outside the direct business relationship between Stretto and the Company; or (iv) combine the Personal Information that Stretto receives from, or on behalf of, the Company with Personal Information that it receives from, or on behalf of, another person or persons, or collects from its own interaction with a consumer, except as permitted by CCPA.

## 13. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ, or otherwise retain as employees, consultants, or otherwise, any employees of Stretto during the term of this Agreement and for a period of 12 months after termination thereof unless Stretto provides prior written consent to such solicitation or retention.

## 14. Force Majeure

Whenever performance by Stretto of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Stretto's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 15. Choice of Law

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 16. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in Irvine, California in accordance with the United States Arbitration Act. Notwithstanding the foregoing, upon commencement of any chapter 11 case(s) by the Company, any disputes related to this Agreement shall be decided by the bankruptcy court assigned to such chapter 11 case(s).

## 17. Integration: Severability; Modifications: Assignment

(a) Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Stretto.
(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Stretto may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.
(e) Any agreement or waiver herein by the Company extends to any assignee or successor in interest to the Company, including without limitation, the reorganized Company upon and after the effective date of a plan of reorganization in a bankruptcy case.

## 18. Electronic Signatures; Effectiveness of Counterparts

This Agreement may be executed with electronic signatures using DocuSign or a similar service that provides a complete, automated history of the sending and signing, including key event timestamps. If the Parties execute this Agreement electronically, they agree that their electronic signatures are the legally binding equivalent to their handwritten signatures. This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 19. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Stretto: Stretto
410 Exchange, Ste. 100
Irvine, CA 92602
Attn: Sheryl Betance
Tel: 714.716.1872
Email: sheryl.betance@stretto.com

If to the Company: ________________________
________________________
________________________
________________________
________________________

With a copy to: ________________________
________________________
________________________
________________________
________________________

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement effective as of September 24, 2026.

STRETTO, INC.

______________________________________________

By: Travis Vandell

Title: Executive Director

CHARACTER TECHNOLOGIES, INC.

Signed by:
Colin Adams
154163D0A0F34BB...
______________________________________________

By: Colin Adams

Title: Interim Chief Operating Officer

## Exhibit A

## GDPR Addendum

This GDPR Addendum is a part of the Services Agreement (the "**Agreement**") by and between Stretto (the "**Processor**") and the Company (together, the "**Parties**") only if Company notifies Processor in advance of processing relevant data that such data is subject to the GDPR pursuant to Paragraphs 11(c) and 11(d) of the Agreement[2].

### RECITALS

**WHEREAS**,

(A) The Processor and the Company have agreed to the following terms regarding the Processing of Company Personal Data.

(B) The Company acts as a Controller of the Company Personal Data.

(C) The Company wishes to subcontract certain Services, pursuant to the Agreement, which imply and require the processing of personal data, to the Processor.

(D) The Company instructs the Processor to process Company Personal Data.

(E) The Parties seek to implement a data processing agreement that complies with the requirements of the current legal framework in relation to data processing and with the Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation or "**GDPR**").

**NOW THEREFORE**, the Company and the Processor agree as follows:

1. **Definitions.** The parties agree that the following terms, when used in this GDPR Addendum, shall have the following meanings.

(a) "**Addendum**" shall mean this GDPR Addendum;

(b) "**Company Personal Data**" means any Personal Data Processed by the Processor or a Subprocessor on behalf of the Company pursuant to or in connection with the Agreement, and may include, for example, Personal Data of Company's employees, clients, customers, creditors, equity interest holders, or counter-parties;

(c) "**Data Protection Laws**" means EU Directive 95/46/EC, as transposed into domestic legislation of each Member State and as amended, replaced or superseded from time to time, including by the GDPR and laws implementing or supplementing the GDPR;

[2] Capitalized terms utilized but not defined in the GDPR Addendum have the meanings ascribed to them in the Agreement.

(d) "**Services**" means the services the Processor provides to the Company pursuant to the Agreement;

(e) "**Subprocessor**" means any person appointed by or on behalf the Processor to process Personal Data on behalf of the Company in connection with the Agreement;

(f) "**Technical and organizational security measures**" means those measures aimed at protecting Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing;

(g) The terms "**Commission**", "**Controller**", "**Data Subject**", "**Member State**", "**Personal Data**", "**Personal Data Breach**", "**Processor**", "**Processing**", "**Special Categories of Personal Data**", and "**Supervisory Authority**" shall have the same meaning as in the GDPR, and their derivative terms shall be construed accordingly.

2. **Obligations of the Company.** The Company agrees and warrants:

(a) that the Processing, including the transfer itself, of the Company Personal Data has been and will continue to be carried out in accordance with the relevant provisions of the applicable Data Protection Laws (and, where applicable, has been notified to the relevant authorities of the Member State);

(b) that it has instructed and throughout the duration of the Services will instruct the Processor to process the Company Personal Data transferred only on the Company's behalf and in accordance with the applicable Data Protection Laws, the Agreement, and this Addendum;

(c) that the Processor will implement appropriate technical and organizational security measures with respect to the Personal Data;

(d) that after assessment of the requirements of the applicable Data Protection Laws, the technical and organizational security measures implemented by Processor are appropriate to protect the Company Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing, and that these measures ensure a level of security appropriate to the risks presented by the processing and the nature of the data to be protected having regard to the state of the art and the cost of their implementation;

(e) that it will ensure compliance with the technical and organizational security measures; and

(f) that the Company Personal Data transferred to Processor does not include or involve any special categories of data, as defined by Article 9 of the GDPR.

3. **Obligations of the Processor.** The Processor agrees:

(a) to comply with the Data Protection Laws;

(b) to process the Company Personal Data only on behalf of the Company and in compliance with the Company's instructions and this Addendum unless required to do so by Data Protection Laws to which Processor is subject; in such a case, the Processor shall inform the Company of that legal requirement before processing, unless that law prohibits such information on important grounds of public interest; if Processor cannot comply with the Company's instructions, it agrees to inform promptly the Company of its inability to comply with such instructions, in which case the Parties shall work together in good faith to resolve Processor's inability to process Personal Data pursuant to the Company's instructions for no less than thirty (30) days, and failing resolution, Company is entitled to suspend the processing of Personal Data and/or terminate the Agreement;

(c) that it has implemented reasonable and appropriate technical and organizational security measures before processing the Company Personal Data;

(d) that it will promptly notify the Company about:

(i) any legally binding request for disclosure of the Company Personal Data required by law, subpoena, warrant, court order, government agency, or law enforcement unless otherwise prohibited by law, subpoena, warrant, court order, government agency, or law enforcement;

(ii) any Personal Data Breach ; and

(iii) any request received directly from any Data Subject and shall not otherwise respond to such request, unless required by Data Protection Laws;

(e) to respond promptly to reasonable inquiries from the Company relating to Processor's processing of the Company Personal Data and to abide by the advice of the supervisory authority with regard to the Processing of the Company Personal Data;

(f) to treat all confidential information and/or Company Personal Data received by Company in accordance with the confidentiality provisions in the Agreement. Any Subprocessor authorized by Processor or the Company shall contractually agree to maintain the confidentiality of such information or be under an appropriate statutory obligation of confidentiality; and

(g) that it shall have the Company's authorization to use Sub-processors from an agreed list and shall specifically inform the Company in writing of any intended changes to that list through the addition or replacement of Sub-processors at least thirty (30) days in advance, thereby giving Company sufficient time to be able to object to such changes prior to the engagement of the Sub-processor(s). The data importer shall provide the data exporter with the information necessary to enable the data exporter to exercise its right to object.

4. **Obligations after Termination of Personal Data Processing Services.**

(a) The Parties agree that within 10 business days of the termination of the Agreement or provision of Services, the Processor and any Subprocessor shall, at the choice of the Company, return all Company Personal Data and the copies thereof to the Company or shall destroy all the Company Personal Data and notify the Company that it has done so, unless prohibited by applicable law, subpoena, warrant, court order, government agency, or law enforcement. In that case, the Processor will abide by the confidentiality provisions in the Agreement and will not further process the Company Personal Data.

(b) The Processor and any Subprocessor warrant that upon request of the Company and/or of the supervisory authority, it will submit its data-processing facilities for an audit of the technical and organizational security measures.

5. **Notices.**

(a) All notices and communications given under this Addendum must be delivered as provided for by the Agreement.

*Remainder of page is intentionally blank.*

© 2026 Stretto, Inc., All Rights Reserved. 

## Exhibit B

## Data Security Incident Notification Procedures

1. The following definitions shall apply to these data security incident notification procedures:

(a) "**Covered Data**" means, in any form, format, or media, nonpublic information (i.e., information that is not posted on a public website maintained by Stretto in accordance with the Bankruptcy Code, the Bankruptcy Rules, or applicable bankruptcy case procedures or local rules, or filed on a non-confidential basis with the court-sponsored PACER or other docket filing system) provided or transferred to Stretto by Company or by an individual creditor, shareholder, or other third party for the purposes of Stretto's performance under this Agreement.

(b) "**Data Security Incident**" means the unauthorized or accidental access to, or use, disclosure, alteration, loss, or destruction of, Covered Data.

(c) "**Determine**" means Stretto has actual knowledge or reasonable certainty that a Data Security Incident has occurred.

(d) "**Discover**" means Stretto reasonably believes that a Data Security Incident has occurred.

2. When Stretto Discovers a potential Data Security Incident, Stretto shall begin an investigation into the nature and scope of the potential Data Security Incident at the direction of Stretto's Chief Information Security Officer and/or incident response team.

3. As soon as practicable, but not later than seventy-two (72) hours after Stretto Determines that a Data Security Incident has occurred, Stretto will provide confidential written notification of the Data Security Incident to the Company and the attorney of record for the Company (collectively, the "**Company Notice Parties**"). Stretto may, in its discretion, provide confidential written or oral notification of the Data Security Incident to (a) the Bankruptcy Court, (b) the Clerk of the Bankruptcy Court, (c) the appropriate representative of the Office of the United States Trustee, and (d) all official committees of the Court (collectively, the "**Court Notice Parties**", and with the Company Notice Parties, the "**Notice Parties**") and, if Stretto provides such additional notice, Stretto shall contemporaneously (or sooner) notify the Company and its attorney of record that Stretto has provided such additional notice.

4. The notification described in Section 3 (the "**Preliminary Notification**") shall include the following information, to the extent known by Stretto at the time of the Preliminary Notification:

(a) a brief description of the nature of the Data Security Incident, including how it occurred, when it occurred, and the date that Stretto Discovered the Data Security Incident;

(b) a description of the Covered Data potentially impacted;

(c) where appropriate, a description of what steps Stretto has taken or is taking to investigate and mitigate the effects of the Data Security Incident; and

(d) where appropriate, any corrective measures Stretto has taken or will take to reduce the likelihood of similar incident.

5. If requested, Company shall reasonably assist Stretto with Stretto's investigation of, and response to, a potential or actual Data Security Incident. After providing the Preliminary Notification, Stretto and the Notice Parties who have received notification will confer to determine, if necessary, an appropriate method to notify (a "**Supplemental Notification**") (a) creditors or claimants whose Covered Data may have been impacted by the Data Security Incident, and (b) any state, federal, or international governmental authorities or regulators, in accordance with applicable law.

6. If a law enforcement official informs Stretto that providing notification to third parties regarding the Data Security Incident would impede a criminal investigation or cause damage to national security, Stretto may delay any Preliminary Notification or Supplemental Notification for the time period specified by the law enforcement official.

7. Unless otherwise required by law, regulation, or court order, in providing any Preliminary Notification or Supplemental Notification, Stretto shall not be required to disclose (a) confidential or privileged information, (b) information that a law enforcement official has directed to remain confidential, (c) information regarding any other Stretto clients, or (d) the identities of any Stretto employees.

8. Notwithstanding any provisions to the contrary in this Agreement, in Stretto's discretion, Stretto may make public statements regarding a Data Security Incident, whether by posting on its website, in a statement to the media, or in a public filing. Stretto will endeavor to provide Company notice of the content of any such statement prior to publicly releasing such statement.

*Remainder of page is intentionally blank.*

# Exhibit C

## Clerk Services Rate Sheet

© 2026 Stretto, Inc., All Rights Reserved. CH 11 Services Agreement v.2026.2, June 16, 2026.

STRETTO

OUR PRICING

# Clerk Services Rate Sheet[1]

| CLERK SERVICES | |
|---|---|
| **Analyst**<br>The Analyst processes incoming mail, creditor correspondence and returned mail, and supports the case team with administrative tasks as required. | Waived |
| **Associate / Senior Associate**<br>The Associate is the day-to-day contact for mailings and electronic noticing requests, and preparation of affidavits/certificates of service. The Associate responds to creditor inquiries and maintains the case information website. The Associate updates the creditor matrix and other noticing lists, and maintains the claims register by processing claim forms, objections, transfers and other actionable pleadings and correspondence.<br><br>The Senior Associate manages the data collection, compilation, and maintenance processes required of a Claims and Noticing Agent, including those related to the creditor matrix and other noticing lists, the Schedules and Statements, and the official claims register. The Senior Associate oversees all mailings, ensures timely responses to creditor inquiries, and performs quality control checks of the docket, claims data, and case information website. In addition, the Senior Associate prepares claims reports and copies of other maintained lists, as requested. Senior Associates average over seven years of experience. | \$70-\$200 |
| **Director / Managing Director**<br>The Director is the primary contact for the company, counsel and other professionals, and provides oversight and support across all aspects of the administration for the entirety of an engagement.<br><br>The Managing Director provides industry and/or project specific expertise to support complex matters, as required. Professionals, including Stretto's executive management team, will serve in this role when appropriate. Stretto's Directors and Managing Directors have over fifteen years of experience and are typically former restructuring professionals. | \$210-\$250 |
| **Executive Management**<br>Our Executive Management team oversees Stretto's Corporate Restructuring group and will provide consulting support for this matter at no charge. | Waived |

[1] This Clerk Services Rate Sheet pertains only to work performed by Stretto under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c). Work performed by Stretto outside of this scope is subject to a separate rate structure.

STRETTO

| CALL CENTER AND COMMUNICATION SUPPORT SERVICES | |
|---|---|
| **Tier 1 Support**<br>Automated IVR telephone support | Waived |
| **Tier 2 Support**<br>AI-Enhanced client support including real-time online chat and document summarization | $15 |
| **Tier 3 Live Support**<br>Dedicated, live communications team support including telephone and email communication | $65-$95 |

| PRINTING & NOTICING SERVICES | |
|---|---|
| **Printing** | $0.12 (per image)[2] |
| **Postage/Overnight Delivery** | Preferred Rates |
| **ECF Email Noticing** | Waived |
| **Email Document Service** | Pricing Available on Request |
| **Fax Noticing** | $0.10 (per page) |
| **Envelopes** | Varies by Size |
| **Coordinate and Publish Legal Notices** | Pricing Available on Request |
| **Public Securities Events** | Varies by Event |

| ELECTRONIC SERVICES | |
|---|---|
| **Case Homepage Set-Up and Hosting** | Waived |
| **Robotic Process Automation**[3] | Starting at $0.48 (per process) |
| **Encrypted HTTPS Bandwidth (volume discount applies)** | Starting at $0.125 (per MB) |
| **Online Monthly Operating Report Platform Subscription** | Waived |
| **AI-Enhanced Communications Platform (monthly)** | Starting at $500 per month[4] |

[2] Print Surcharge of $0.05 may apply to mailings requested outside carrier hours (8am – 6pm ET, Monday – Friday).

[3] Includes ECF docket automation, subscription-based docket notifications, USPS bulk mail operations, address validation, e-filing transactions, cloud computing charges, and related activities.

[4] Monthly rate based on size of creditor matrix.

© 2026 Stretto, Inc., All Rights Reserved. CH 11 Services Agreement v.2026.2, June 16, 2026. 

STRETTO

| CLAIMS ADMINISTRATION & MANAGEMENT EXPENSES | |
|---|---|
| License Fee and System Maintenance | $0.10 (per creditor per month) |
| Database and System Access (Unlimited Users) | Waived |
| Online Claims Filing Portal | Waived |
| Online Ballots Filing Portal | Waived |
| Preference Analysis (Initial Preference Review) | Standard Hourly Rates |

| DOCUMENT MANAGEMENT SERVICES | |
|---|---|
| Electronic Imaging (Per Imaged Page) | $0.10 |
| FedRAMP Compliant File Retention (volume discount applies) | Starting at $0.125 (per MB) |
| Virtual Data Room | Available Upon Request |

| CALL CENTER AND COMMUNICATION SUPPORT SERVICES | |
|---|---|
| Case-Specific Toll-Free Number and Voice-Mail Box | Waived |
| Interactive Voice Response (Per Minute) | Waived |
| Monthly Maintenance Charge | Waived |

| ADMINISTRATIVE ADVISOR SERVICES | |
|---|---|
| Schedules and Statements | Available Upon Request |
| Contract Review | Available Upon Request |
| Claims Analysis and Reconciliation | Available Upon Request |
| Public Securities Support | Available Upon Request |
| Balloting and Tabulation Services | Available Upon Request |
| Disbursement Services | Available Upon Request |
| Preference Analysis and Recovery Services | Available Upon Request |

# Exhibit B

## Betance Declaration

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARACTER TECHNOLOGIES, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11603 ([___]) |

**DECLARATION OF SHERYL BETANCE IN SUPPORT OF DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE APPOINTMENT OF STRETTO, INC. AS CLAIMS AND NOTICING AGENT EFFECTIVE AS OF THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

I, Sheryl Betance, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Senior Managing Director at Stretto, Inc. ("Stretto"), a chapter 11 administrative services firm with offices located at 410 Exchange, Ste. 100, Irvine, CA 92602. I am duly authorized to make this declaration on behalf of Stretto. Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2. I submit this declaration in support of the *Debtor's Application for Entry of an Order (I) Authorizing the Appointment of Stretto, Inc. as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief*, to which this declaration is attached (the "Application").[2]

[1] The Debtor and the last four digits of its taxpayer identification number are: Character Technologies, Inc. (8842). The Debtor's mailing address for purposes of the chapter 11 case is 700 El Camino Real, Suite 120, P.O. Box 1152, Menlo Park, CA 94025.

[2] Capitalized terms used but not otherwise defined herein have the meanings set forth in the Application.

3. I am not being specifically compensated for this testimony other than through payments received by Stretto as a professional retained by the Debtor. I am over the age of 18 years and authorized to submit this declaration on behalf of Stretto.

4. Stretto is one of the country's leading chapter 11 administrators, with experience in both the legal and administrative aspects of large, complex chapter 11 cases. Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Stretto has acted as the claims and noticing agent in numerous chapter 11 cases of comparable size and complexity, including cases in this District: *In re Norcold LLC*, Case No. 25-11933 (TMH) (Bankr. D. Del. Nov. 4, 2025); *In re US Magnesium LLC*, Case No. 25-11696 (BLS) (Bankr. D. Del. Sept. 12, 2025); *In re IMG Holdings, Inc.*, Case No. 25-11500 (KBO) (Bankr. D. Del. Aug. 13, 2025); *In re Am.'s Gardening Res., Inc.*, Case No. 25-11180 (BLS) (Bankr. D. Del. July 14, 2025); *In re My Job Matcher, Inc.*, Case No. 25-11280 (KBO) (Bankr. D. Del. July 8, 2025); *In re CHG US Holdings LLC.*, Case No. 25-10851 (MFW) (Bankr. D. Del. May 15, 2025); *In re Accelerate Diagnostics, Inc.*, Case No. 25-10837 (KBO) (Bankr. D. Del. May 12, 2025); *In re Creativemass Holdings, Inc.*, Case No. 25-10695 (MFW) (Bankr. D. Del. Apr. 16, 2025); *In re Viridos, Inc.*, Case No. 25-10697 (CTG) (Bankr. D. Del. Apr. 17, 2025); and *In re KTRV LLC*, Case No. 25-10601 (MFW) (Bankr. D. Del. Apr. 2, 2025).

5. In its capacity as Claims and Noticing Agent, at the request of the Debtor or the Clerk, Stretto will only perform such services consistent with the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(e) as described in the Application ("Clerk Services"). In performing Clerk Services, Stretto will charge the Debtor the rates set forth on **Exhibit C** to the Services Agreement, which is attached as **Exhibit 1** to the Proposed Order.

6. Stretto represents, among other things, the following:

(a) Stretto is not a creditor of the Debtor;

(b) Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

(c) By accepting employment in this chapter 11 case, Stretto waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

(d) In its capacity as the Claims and Noticing Agent in this chapter 11 case, Stretto will not be an agent of the United States and will not act on behalf of the United States;

(e) Stretto will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

(f) Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g) In its capacity as Claims and Noticing Agent in this chapter 11 case, Stretto will not intentionally misrepresent any fact to any person;

(h) Stretto shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i) Stretto will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j) None of the services provided by Stretto as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk's office.

7. Although the Debtor does not propose to employ Stretto under section 327 of the Bankruptcy Code pursuant to the Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of potential parties-in-interest (the "Potential Parties in Interest") in this chapter 11 case. A list of Potential Parties in Interest, attached hereto as **Exhibit 1**, was provided by the Debtor and included, among other parties, the Debtor, non-Debtor affiliates, current and former directors and officers of the

Debtor, significant stockholders, the Debtor's largest unsecured creditors, the United States Trustee and persons employed in the office of the United States Trustee, and other parties. The Potential Parties in Interest list was compared to an internal database that includes, among others, Stretto's parent entities, affiliates, and subsidiaries. Stretto's internal database also includes Stone Point Capital LLC ("Stone Point"), its funds, and each such fund's respective portfolio companies as set forth in the list most recently provided to Stretto by Stone Point's internal compliance department (the "Stone Point Searched Parties"). The results of the conflict check were compiled and reviewed by Stretto professionals under my supervision. At this time, and as set forth in further detail herein, Stretto is not aware of any connection that would present a disqualifying conflict of interest. Should Stretto discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Stretto will use reasonable efforts to promptly file a supplemental declaration.

8. To the best of my knowledge, and based solely upon information provided to me by the Debtor, and except as provided herein, neither Stretto, nor any of its professionals, has any materially adverse connection to the Debtor, its creditors or other relevant parties.

9. Stretto has and will continue to represent clients in matters unrelated to this chapter 11 case. In addition, in matters unrelated to this chapter 11 case, Stretto and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtor's chapter 11 case. Stretto may also provide professional services to entities or persons that may be creditors or parties in interest in this chapter 11 case, which services do not directly relate to, or have any direct connection with, this chapter 11 case or the Debtor. Based upon a review of the Potential Parties in Interest:

- The List of Potential Parties in Interest identifies KPMG, McKool Smith, P.C., Skadden, Arps, Slate, Meagher & Flom LLP, and White & Case LLP, which are clients of Stretto's Chapter 11 Dockets business – a subscription service that provides clients with access to databases of public bankruptcy case docket information acquired through PACER. To the best of my knowledge, such relationships are materially unrelated to this chapter 11 case.
- The List of Potential Parties in Interest includes entities, as set forth on **Exhibit 2** attached hereto, which are current, former or potential defendants to avoidance actions brought under the Bankruptcy Code by clients of Stretto Recovery Services. However, to the best of my knowledge, such relationships are materially unrelated to this chapter 11 case.

10. To the best of my knowledge, none of Stretto's employees are related to bankruptcy judges in the District of Delaware, the United States Trustee for Region 3, or any attorney known by Stretto to be employed in the Office of the United States Trustee serving the District of Delaware. The list of Potential Parties in Interest identifies the Honorable Mary F. Walrath, United States Bankruptcy Judge for the District of Delaware. Denise Kaloudis, a Managing Director at Stretto, formerly worked as a law clerk to the Honorable Mary F. Walrath. I have been advised that Denise Kaloudis did not work on matters involving the Debtor while employed as a law clerk to the Honorable Mary F. Walrath.

11. Certain of Stretto's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in this case. Except as may be disclosed herein, these professionals did not work on any matters involving the Debtor while employed by their previous firms. Moreover, these professionals were not employed by

their previous firms when this chapter 11 case was filed. To the best of my knowledge, none of Stretto's professionals were partners of, or formerly employed within the last three years by firms that are Potential Parties in Interest or that have filed a notice of appearance in this chapter 11 case.

12. Stretto and its personnel in their individual capacities regularly utilize the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors. Such firms engaged by Stretto or its personnel may appear in chapter 11 cases representing the Debtor or parties in interest. To the best of my knowledge, Stretto does not currently utilize the services of any law firms, investment banking and advisory firms, accounting firms, or financial advisors who have been identified as Potential Parties in Interest or who have filed a notice of appearance in this chapter 11 case.

13. At the request of the Debtor and as provided in the Services Agreement, Stretto or its affiliate may provide services other than the services described in the Application to the Debtor that it may require in the ordinary course of business, including establishing one or more accounts with financial institutions in the name of and as agent for the Debtor to facilitate depository management and other treasury services, for which Stretto or its affiliate may be compensated by the applicable financial institution.

14. In April 2017, Stretto was acquired by the Trident VI Funds managed by private equity firm Stone Point. Stone Point is a financial services-focused private equity firm based in Greenwich, Connecticut. The firm has raised and managed ten private equity funds—the Trident Funds—with aggregate committed capital of approximately $65 billion. Stone Point targets investments in the global financial services industry and related sectors.

15. The following disclosure is made out of an abundance of caution in an effort to comply with the Bankruptcy Code and Bankruptcy Rules. Stretto has searched the names of the

Debtor and the names of the Potential Parties in Interest against the Stone Point Searched Parties. Based solely upon the foregoing search, Stretto has determined that AmTrust Financial Services, owned by Trident Fund VII, has been identified as an insurance provider of the Debtor. However, to the best of Stretto's knowledge, Stretto's relationship to this entity does not create an adverse interest against the Debtor's estate that would present a disqualifying conflict of interest, and there are no other connections that require disclosure. To the extent Stretto learns of any material connections between Stone Point's funds or investments included in the above-described conflicts search and the Debtor, Stretto will promptly file a supplemental disclosure. Stretto may have had, may currently have, or may in the future have business relationships unrelated to the Debtor with one or more Stone Point entities including, among others, portfolio companies of Stone Point.

16. From time to time, Stretto partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be the Debtor or one of its affiliates, often without Stretto's or its personnel's knowledge. Each Stretto partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. Each Investment Fund is generally operated as a blind pool, meaning that when the Stretto partners or employees make an investment in the particular Investment Fund, he, she or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

17. From time to time, Stretto partners or employees may personally directly acquire a debt or equity security of a company that may be the Debtor or its affiliates. Stretto has a policy

prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work. In this regard, subject to the foregoing, all Stretto partners and employees are barred from trading in securities with respect to matters in which Stretto is retained. Subject to the foregoing, upon information and belief, and upon reasonable inquiry through email survey of Stretto's employees, Stretto does not believe that any of its partners or employees own any debt or equity securities of a company that is a Debtor or of any of its affiliates.

18. To the best of my knowledge, Stretto (a) does not hold or represent an interest adverse to the Debtor's estate; (b) is a "disinterested person" that (i) is not a creditor, an equity security holder, or an insider, (ii) is not and was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtor, and (iii) does not have an interest materially adverse to the interest of the Debtor's estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason; and (c) has disclosed all of Stretto's connections with the Debtor, its creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 13, 2026

/s/ *Sheryl Betance*

Sheryl Betance
Senior Managing Director
Stretto, Inc.
410 Exchange, Ste. 100
Irvine, California 92602

**Exhibit 1**

**Conflicts Check List**

**Debtor**
Character Technologies, Inc.

**Current and Former Directors**
Richard Marini
Stan Chudnovsky
Christopher S. Sontchi
Karandeep Anand
Julie Park
Sarah Wang
Noam Shazeer

**Significant Equity Holders**
Anthony Galliano
Deniz Demir
Devin Mancuso

**Bankruptcy Professionals**
Wilson Sonsini Goodrich & Rosati, P.C.
Houlihan Lokey Capital, Inc.
Areté Capital Partners
Stretto, Inc.
Young Conaway Stargatt & Taylor, LLP

**Judges – Bankruptcy Court for the District of Delaware**
Chief Judge Karen B. Owens
Judge Laurie Selber Silverstein
Judge Craig T. Goldblatt
Judge Thomas M. Horan
Judge Brendan L. Shannon
Judge J. Kate Stickles
Judge Mary F. Walrath

**Staff – Bankruptcy Court for the District of Delaware**
Al Lugano
Amanda Hrycak
Cacia Batts
Claire Brady
Danielle Gadson
Demitra Yeager
Jill Walker
Laura Haney
Laurie Capp
Lora Johnson
Marquietta Lopez
Nickita Barksdale
Nikki Washington
Paula Subda
Stephen Grant
Rachel Bello
Xavier Hurt

**Office of the United States Trustee – District of Delaware**
Andrew R. Vara
Benjamin Hackman
Christine Green
Diane Giordano
Dion Wynn
Edith A. Serrano
Elizabeth Thomas
Fang Bu
Hannah M. McCollum
Hawa Konde
Holly Dice
James R. O'Malley
Jane Leamy
Jonathan Lipshie
Jonathan Nyaku
Joseph McMahon
Lauren Attix
Linda Casey
Michael Girello
Nyanquoi Jones
Richard Schepacarter
Rosa Sierra-Fox
Shakima L. Dortch

**Holders of 20 Largest Unsecured Claims on Consolidated Basis**
Digital Ocean LLC
Google LLC
Fireworks.Ai
Apple Distribution International Ltd.

Late Checkout, LLC
White & Case LLP
Hogan Lovells US LLP
Munger, Tolles & Olson LLP
Skadden, Arps, Slate, Meagher & Flom LLP
Zayo Group LLC
DoorDash
Scalrr
Persona Identities Inc.
Invertase Limited
Sundial Product Inc.
Alder FM, LLC
Quinn Emanuel Urquhart & Sullivan, LLP
Tines Automation Inc.
New Engen Inc.
The Trustee for Wailoaloa Trust

**Ordinary Course Professionals**
Minami Tamaki LLP
Alex Jonathan Feerst
KPMG
Frank Rimerman
FBT Gibbons LLP
Jaymie Scotto & Associates

**Significant Vendors and Contract Counterparties**
Mortgage Investors IV, LLC
Cornish & Carey Commercial
Gassed
Terminal Inc.
HireArt Inc.
Amplitude, Inc.
Nebius B.V.
Baseten Labs Inc.
PAG Consultants, LLC
Crusoe Energy Systems LLC
Cloudflare, Inc.
Replicate, Inc.
JSA+Partners
Safetykit Inc.
LegalPartners Group, LLC
Premier Property Management
AppsFlyer Inc.
Prime Intellect Inc.
Statsig
Braze Inc.
Ninja Partners, LLC
Porto Rocha LLC
Cinder Technologies Inc.
Castle Global Inc. a/k/a Hive
Remotely Works Inc.
Eleven Labs Inc.
Epiq eDiscovery Solutions Inc
Miller Barondess, LLP
Talentism Inc.
Testlio Inc.
LinkedIn Corporation
RevenueCat Inc.
Microsoft Azure

Right Side Up LLC
Fusion Electronics Technology Limited
Anyscale, Inc.
Confluent Inc.

Tribe Ventures Inc.
Hex Technologies
expoIT
Zentropi Inc.
Koko AI
University of Washington
ThroughLine Limited
33 Irving Tenant LLC (WeWork)
Vyanams LLC
OpenAI
Global Guardian LLC
Amazon Web Services, Inc.
Tines Automation Inc.
Connect Safely
Cadre Creative Labs OPC
Cursor
PagerDuty
Datadog Inc.
WaveSpeed
Karlon Group LLC
Empower

Anthem Blue Cross
Rippling
Ramp

**Utility Providers**
AT&T
Comcast
Pacific Gas & Electric
San Juan Water District
Golden Gate Disposal & Recycle

**Banks**
Silicon Valley Bank
Morgan Stanley
JPMorgan Chase Bank, N.A.

**Taxing Authorities**
California Franchise Tax Board (FTB)
Massachusetts Department of Revenue
Michigan Department of Treasury
New Jersey Division of Taxation
New York City Department of Finance
New York State Department of Taxation and Finance
Texas Comptroller of Public Accounts
Virginia Department of Taxation
Connecticut Department of Revenue Services (DRS)
Florida Department of Revenue
Hawaii Department of Taxation
Internal Revenue Service (IRS)
California Employment Development Department (EDD)
California Department of Tax and Fee Administration (CDTFA)
Delaware Division of Corporations (Dept. of State)

**Insurance Providers**
CNA Insurance Companies
Lloyd's London (CRC Wholesale Group)
AmTrust
Hamilton (Lloyd's of London)
Beazley (Lloyd's of London)
Forge
AIG
Berkshire
AXA XL
Berkley
Vantage
Sompo
Convex (Lloyd's of London)
QBE
Westfield
RSUI
Woodruff-Sawyer & Co.
Arthur J. Gallagher & Co.

**Sale Process Counterparties and Professionals**
Disney Worldwide Services, Inc.

**Litigation and Investigation Counterparties**
Commonwealth of Pennsylvania
Pennsylvania Department of State
Commonwealth of Kentucky
Garante per la Protezione dei Dati Personali
U.S. Department of Justice, Consumer Protection Branch
Federal Trade Commission
Office of the Attorney General of Alaska
Office of the Attorney General of American Samoa
Office of the Attorney General of Arizona
Office of the Attorney General of Arkansas
Office of the Attorney General of California
Office of the Attorney General of Colorado
Office of the Attorney General of Connecticut
Office of the Attorney General of District of Columbia
Office of the Attorney General of Delaware
Office of the Attorney General of Georgia
Office of the Attorney General of Hawaii
Office of the Attorney General of Idaho
Office of the Attorney General of Illinois
Office of the Attorney General of Indiana
Office of the Attorney General of Kansas
Office of the Attorney General of Louisiana
Office of the Attorney General of Maine
Office of the Attorney General of Maryland

Office of the Attorney General of Massachusetts
Office of the Attorney General of Michigan
Office of the Attorney General of Minnesota
Office of the Attorney General of Mississippi
Office of the Attorney General of Missouri
Office of the Attorney General of Montana
Office of the Attorney General of Nevada
Office of the Attorney General of New Hampshire
Office of the Attorney General of New Jersey
Office of the Attorney General of New York
Office of the Attorney General of North Carolina
Office of the Attorney General of North Dakota
Office of the Attorney General of Northern Mariana Islands
Office of the Attorney General of Ohio
Office of the Attorney General of Oklahoma
Office of the Attorney General of Oregon
Office of the Attorney General of Pennsylvania
Office of the Attorney General of Rhode Island
Office of the Attorney General of South Carolina
Office of the Attorney General of South Dakota
Office of the Attorney General of Tennessee
Office of the Attorney General of Utah
Office of the Attorney General of Vermont
Office of the Attorney General of Virginia
Office of the Attorney General of Washington
Office of the Attorney General of West Virginia
Office of the Attorney General of Wisconsin
Office of the Attorney General of Wyoming
Office of the Attorney General of Texas
Office of the Attorney General of Florida
Office of the Attorney General of New Mexico
Office of the Attorney General of Kentucky

**Counsel to Litigation Counterparties**
McKool Smith P.C.
Social Media Victims Law Center
Tech Justice Law Project
Budwin Kamprath Burgess Campbell PLLC
Glenn Agre Bergman & Fuentes LLP
Normand PLLC (Normand, Judkins & Couch; Normand Law PLLC)
The Ferraro Law Firm, P.A.
Gibbs Mura LLP
Khaitan & Co.
Bachubhai Munim & Co.
Bryson Harris Suciu & DeMay PLLC

**<u>Exhibit 2</u>**

Amazon Web Services Inc.
Arthur J Gallagher RMS Inc.
AT&T
Blue Cross of California
California Department of Tax and Fee Administration
Comcast
Delaware Secretary of State
Empower Retirement
Florida Department of Revenue
Google LLC
Hogan Lovells US LLP
J.P. Morgan Chase & Co.
Kentucky Department of Revenue
Massachusetts Department of Revenue
Microsoft
New Engen Inc.
New York State Department of Taxation and Finance
NJ Division of Taxation
Pacific Gas & Electric Company
Pennsylvania Department of Revenue
Texas Comptroller of Public Accounts
Virginia Department of Taxation