**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARACTER TECHNOLOGIES, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11603 ([___]) |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO (A) MAINTAIN EXISTING INSURANCE POLICIES AND PAY ALL INSURANCE OBLIGATIONS ARISING THEREUNDER, AND (B) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE INSURANCE COVERAGE; AND (II) GRANTING RELATED RELIEF**

The debtor and debtor in possession in the above-captioned case (the "Debtor") hereby submits this motion (this "Motion") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order" and, together with the Interim Order, the "Proposed Orders") (i) authorizing the Debtor, in its discretion, to (a) maintain its existing insurance policies and pay all obligations arising thereunder or in connection therewith, and (b) renew, supplement, modify, or purchase insurance coverage in the ordinary course of business; and (ii) granting related relief. In support hereof, the Debtor relies on the *Declaration of Colin M. Adams in Support of the Debtor's Chapter 11 Petition and First Day Motions* (the "First Day Declaration")[2] filed concurrently herewith, and further represents as follows:

---

[1] The Debtor and the last four digits of its taxpayer identification number are: Character Technologies, Inc. (8842). The Debtor's mailing address for purposes of the chapter 11 case is 700 El Camino Real, Suite 120, P.O. Box 1152, Menlo Park, CA 94025.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor confirms its consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this chapter 11 case and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 363(b), 364(c), and 1112(b) of title 11 of the United States Code, as amended (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

## RELIEF REQUESTED

4. The Debtor hereby requests entry of the Proposed Orders: (i) authorizing the Debtor, in its discretion, to (a) maintain its existing insurance policies and pay all obligations arising thereunder or in connection therewith, and (b) renew, supplement, modify, or purchase insurance coverage in the ordinary course of business; and (ii) granting related relief.

## BACKGROUND

5. On October 12, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this chapter 11 case, and no official committee of unsecured creditors has been appointed.

6. The Debtor is a first in kind artificial intelligence ("AI") entertainment platform that allows users to have immersive, multimodal experiences with fictional or imagined characters. What started as a platform to have one-on-one chats tailored to user preferences, has evolved to become a category leader in entertainment AI. Today, the Character.AI platform generates stunning visuals that become part of a story, creates dynamic video content with AI characters, and actively augments videos and stories with rich audio experiences to enhance immersion. In its 4-year lifespan as an active platform, Character has amassed a large and engaged user base. The burgeoning and evolving field of AI entertainment, however, has proven to be costly to develop and grow. These high costs, coupled with potential litigation related liabilities and regulatory engagement have contributed to the Debtor's inability to generate sufficient cash flows to support its business in the present form. The Debtor has commenced this case to engage in value-maximizing transactions for the benefit of its stakeholders.

7. Additional factual background regarding the Debtor, including its business operations, its corporate and capital structure, and the events leading to the filing of this chapter 11 case, is set forth in the First Day Declaration, and incorporated herein by reference.

## A. THE INSURANCE POLICIES

8. The Debtor maintains approximately twenty (20) insurance policies (as may be amended, modified, or supplemented as described herein and, together with any insurance policies that the Debtor may purchase after the date hereof, the "Insurance Policies") administered by multiple third-party insurance carriers (collectively, the "Insurance Carriers"). The Insurance Policies provide coverage for, among other things, general liability; property; business automobile; workers' compensation; media, technology, and cyber liability; excess media, technology, and

cyber liability; directors' and officers' liability and excess liability; employment practices liability; and fiduciary liability. A schedule of the Insurance Policies is attached hereto as **Exhibit C**.[3]

9. The Debtor generally pays premiums with respect to the Insurance Policies annually, which have been paid in full as of the Petition Date. The Debtor intends to renew or replace any expiring Insurance Policies, keeping the coverage consistent with its present coverage, but taking into consideration certain factors that may have affected the Debtor's business or the cost of the policies, such as, among other things, changes in the insurance marketplace. As of the Petition Date, no payments are outstanding and all premiums have been paid.

10. The Debtor's ability to maintain the Insurance Policies, to renew, supplement, and modify the same as needed, and to enter into new insurance policies is needed in the ordinary course of business and essential to preserving the value of the Debtor's estate. Further, maintenance of the Insurance Policies is required under the *Operating Guidelines for Chapter 11 Cases* (the "Operating Guidelines") promulgated by the Office of the United States Trustee for Region 3 (the "U.S. Trustee"), the laws of the various states in which the Debtor operates, and applicable federal law. Thus, the Debtor submits that it should be authorized, but not directed, to continue to pay premiums, claims, deductibles, charges, fees, and other obligations owed under or with respect to the Insurance Policies as such obligations come due in the ordinary course of the Debtor's business, whether arising prior or after the Petition Date.

**B. THE BROKERAGE FEES**

11. With respect to most of the Insurance Policies, the Debtor obtains insurance brokerage services from Arthur J. Gallagher & Co. and its subsidiary Woodruff-Sawyer & Co.

[3] The Debtor believes that **Exhibit C** contains a complete list of its Insurance Policies. To the extent that any insurance policy has been omitted from that list, the Debtor requests that the order granting the relief sought herein apply to any and all of the Debtor's insurance policies.

(collectively, the "Brokers"). The Brokers assist the Debtor in obtaining comprehensive insurance coverage for the Debtor's operations by aiding with the procurement and negotiation of the Insurance Policies and enabling the Debtor to obtain those policies on advantageous terms at competitive rates. As of the Petition Date, the Debtor does not have any amounts outstanding on account of the Brokerage Fees.

12. The Debtor seeks authority to continue to employ the Brokers in the ordinary course of business, to enter into new brokerage contracts, and to pay Brokerage Fees as necessary in connection with procurement and maintenance of the Insurance Policies.

## BASIS FOR RELIEF

### I. THE COURT SHOULD AUTHORIZE THE DEBTOR TO (A) HONOR ITS INSURANCE OBLIGATIONS, AND RENEW, SUPPLEMENT, MODIFY, AND PURCHASE ADDITIONAL INSURANCE COVERAGE IN THE ORDINARY COURSE OF BUSINESS AND (B) HONOR ITS OBLIGATIONS TO THE BROKERS

13. Pursuant to this Motion, the Debtor is seeking authority to: (a) honor its insurance-related obligations (the "Insurance Obligations"),[4] to extend or modify its Insurance Policies, or to enter into new insurance policies, as applicable, in the ordinary course of business; and (b) to honor its obligations to the Brokers, all as set forth above in greater detail. The Debtor's ability to maintain its existing insurance program as needed in the ordinary course of business is essential to the preservation of the value of the Debtor's business, operations, and assets. If the Debtor is unable to make any payments owed for the Insurance Obligations, the Insurance Carriers may seek relief from the automatic stay to terminate such Insurance Policies. If such relief was granted by the Court, the Debtor would be required to obtain replacement insurance on an expedited basis and at significant expense to the estate, likely incurring costs exceeding the

[4] "Insurance Obligations" do not include, and Debtor is not at this time seeking authority to pay, any deductibles or self-insured retentions on account of any claims that arose prior to the Petition Date.

amounts owed under the current insurance program. Even if these Insurance Carriers were not permitted to terminate the agreements, any interruption of payment would have an adverse effect on the Debtor's ability to obtain future policies at reasonable rates.

## II. HONORING THE INSURANCE OBLIGATIONS AND THE DEBTOR'S OBLIGATIONS TO THE BROKERS IS A SOUND EXERCISE OF THE DEBTOR'S BUSINESS JUDGEMENT

14. Section 363(b) of the Bankruptcy Code permits a debtor to use estate property "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1). Under section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted) (requiring that the debtor show a "sound business purpose" to justify its actions under section 363 of the Bankruptcy Code); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987). Further, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

15. The Debtor has determined, in the sound exercise of its business judgment, that honoring the Insurance Obligations in the ordinary course of business is critical to the successful prosecution of this chapter 11 case. First, the coverage provided under the Insurance Policies is essential for preserving the value of the Debtor's assets and, in many instances, such coverage is required by various regulations, laws, and contracts that govern the Debtor's business operations. Indeed, section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain

appropriate insurance that poses a risk to the estate or to the public," is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). Moreover, maintenance of insurance policies is required by the Operating Guidelines. *See* 3 United States Trustee Manual, § 3-3.2.3 (Feb. 2026) ("A debtor must maintain appropriate insurance coverage, and documentation regarding the existence of the coverage must be provided to the United States Trustee as early in the case as possible."). Second, if the Debtor fails to pay or maintain the Insurance Obligations, the Insurance Carriers might seek to void the Debtor's coverage under the Insurance Policies.[5] Such a disruption of the Debtor's insurance coverage could expose the Debtor to serious risks, including but not limited to: (a) direct liability for the payment of claims that otherwise would have been payable by the Insurance Carriers; (b) material costs and other losses that otherwise would have been reimbursed by the Insurance Carriers under the Insurance Policies; (c) the inability to obtain similar types of insurance coverage; and (d) higher costs for re-establishing lapsed policies or obtaining new insurance coverage. Any or all of these consequences could cause serious harm to the Debtor's business and jeopardize its ability to successfully prosecute this chapter 11 case.

16. The Debtor may also need to renew or replace certain of the Insurance Policies during the course of the chapter 11 case, or to enter into new policies. If the Debtor does not pay the Insurance Obligations, there is a risk that the Insurance Carriers will refuse to renew the Insurance Policies.

17. Although the Debtor believes that any renewal, modification, or new execution of the Insurance Policies would constitute ordinary course transactions, which do not require Court

[5] The Debtor reserves all rights with respect to the Insurance Policies, including the right to oppose any effort by any Insurance Carriers to terminate any of the Insurance Policies.

approval, the Debtor nevertheless seeks authority to continue to renew and modify the Insurance Policies consistent with its past practices to assure the Insurance Carriers that the Debtor has full authority with respect to new or modified arrangements without the need to obtain further approval from the Court.

## III. THE COURT ALSO MAY GRANT THE MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND THE DOCTRINE OF NECESSITY

18. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may permit payments of prepetition obligations prior to confirmation of a plan and emergence from chapter 11 when doing so is essential to the continued operation of a debtor's business. Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "doctrine of necessity."

19. Under the "doctrine of necessity," bankruptcy courts may authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor. *In re Lehigh and New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to conduct of business until their prereorganization claims have been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

20. Although the "doctrine of necessity" predates the Bankruptcy Code, *see Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286, 309 (1882), the modern application of the doctrine of necessity is grounded in specific provisions of the Bankruptcy Code, including sections 105(a), 1107(a) and 1108. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (fiduciary duties implicit in section 1107(a) of the Bankruptcy Code justify the "preplan satisfaction of a prepetition claim" where necessary to preserve going concern value). The doctrine, largely unchanged from the Court's reasoning in *Miltenberger*, is a widely accepted component of bankruptcy jurisprudence. *See Just for Feet, Inc.*, 242 at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy the debtor's business by refusing to deliver new inventory on the eve of debtor's key sales season); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (affirming order authorizing payment of prepetition wages, salaries, expenses and benefits); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546-47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agreed to provide post-petition trade credit).

21. As described above, honoring the Insurance Obligations on a post-petition basis is necessary to preserve the value of the Debtor's assets, thereby ensuring the adequate protection of the Debtor's property for any party in interest, and helping to minimize the estate's exposure to risk. Failing to honor the Insurance Obligations may have a material adverse effect on the Debtor's ability to maximize the value of its estate. Should such failure or restriction occur, one or more of the Insurance Carriers could decline to renew their Insurance Policies or refuse to enter into new insurance agreements with the Debtor in the future. If the Insurance Policies are permitted to lapse or are otherwise terminated, or if the Debtor failed to honor its obligations to the Brokers, the

Debtor could face significant post-petition liability for personal or property damage, which, in turn, could harm all parties in interest. The Debtor would then be forced to obtain replacement insurance coverage on an emergency basis and at significant cost.

## IV. THE DEBTOR MAY HONOR ITS INSURANCE OBLIGATIONS AND HONOR ITS OBLIGATIONS TO THE BROKERS IN THE ORDINARY COURSE OF BUSINESS WITHOUT NEED FOR COURT APPROVAL

22. Section 363(c)(1) of the Bankruptcy Code provides that a chapter 11 debtor in possession "may enter into transactions . . . [or] may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The Bankruptcy Code does not define "ordinary course of business." *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992). In determining whether a transaction is in the ordinary course of business, the Third Circuit has adopted the two-part "horizontal" dimension and "vertical" dimension test. *Id.* First, the transaction must be analyzed on the horizontal dimension, where the court looks at "whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in [the debtor's] industry." *Id.* at 953. Second, the transaction must be analyzed on the vertical dimension, where the court looks at the transaction from the perspective of a hypothetical creditor and asks whether the transaction subjects such a creditor to different economic risks from those he accepted when he decided to extend credit. *See In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 797 (Bankr. D. Del. 2007). "In other words, the vertical analysis looks at the 'debtor's pre-petition business practices and conduct.'" *In re Blitz U.S.A. Inc.*, 475 B.R. 209, 214 (Bankr. D. Del. 2012) (quoting *Nellson*, 369 B.R. at 797).

23. Here, the Debtor seeks only to honor its Insurance Obligations and to honor its obligations to the Brokers. Such obligations include, among other things, renewing the Insurance Policies when they expire, paying insurance premiums, and paying required fees to the Brokers as and when they become due. Accordingly, the Debtor believes that honoring its Insurance

Obligations and its obligations to the Brokers on a post-petition basis is in the ordinary course of business. As noted above, the Debtor is required to maintain adequate insurance, and therefore the Debtor is required to honor its Insurance Obligations and its obligations to the Brokers to avoid substantial disruption to its day-to-day operations. Based on the foregoing, the Debtor respectfully submits that honoring its Insurance Obligations, and honoring its obligations to the Brokers should be authorized under sections 105(a) and 363(b) of the Bankruptcy Code to the extent such activities are deemed outside the ordinary course of the Debtor's business.

**IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY**

24. The Court may grant the relief requested in this Motion immediately if the "relief is necessary to avoid immediate and irreparable harm." Bankruptcy Rule 6003; *In re First NLC Fin. Servs.*, LLC, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008). The Third Circuit has instructed that irreparable harm is that which "cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). The Debtor submits that, for the reasons set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate.

25. The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[u]nless the Court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered" Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtor requests in this Motion is necessary for the Debtor to operate without interruption and to preserve value for its estate. Accordingly, the Debtor respectfully requests that the Court waive the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

26. Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor or its estate; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate to contest the validity, priority, or amount of any claim against the Debtor or its estate; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate with respect to any and all claims or causes of action against any third party; or (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtor. Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## NOTICE

27. The Debtor will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the United States Attorney's Office for the District of Delaware; (c) the Internal Revenue Service; (d) the holders of the twenty (20) largest unsecured claims against the Debtor; (e) the Insurance Carriers; (f) the Brokers; (g) counsel to Disney; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor will serve copies of this Motion and any order entered in respect hereto as required by Local Rule 9013-1(m). The Debtor respectfully submits that, in light of the nature of the relief requested, no further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter the Interim Order and the Final Order, substantially in the form annexed hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: October 13, 2026
Wilmington, Delaware

**WILSON SONSINI GOODRICH & ROSATI, P.C.**

*/s/ Erin R. Fay*
Erin R. Fay (No. 5268)
Shane M. Reil (No. 6195)
Heather P. Lambert (No. 6923)
222 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 304-7600
E-mails: efay@wsgr.com
sreil@wsgr.com
hlambert@wsgr.com

*Proposed Counsel to the Debtor and Debtor in Possession*

# EXHIBIT A

## Interim Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARACTER TECHNOLOGIES, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11603 ([___])<br><br>**Ref. Docket No. __** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO (A) MAINTAIN EXISTING INSURANCE POLICIES AND PAY ALL INSURANCE OBLIGATIONS ARISING THEREUNDER, AND (B) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE INSURANCE COVERAGE IN THE ORDINARY COURSE OF BUSINESS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtor for entry of this interim order (this "Interim Order") and a final order: (i) authorizing the Debtor, in its discretion, to (a) maintain its existing insurance policies and pay all insurance obligations arising thereunder or in connection therewith, and (b) renew, supplement, modify, or purchase insurance coverage; and (ii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that venue of this case and this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion

[1] The Debtor and the last four digits of its taxpayer identification number are: Character Technologies, Inc. (8842). The Debtor's mailing address for purposes of the chapter 11 case is 700 El Camino Real, Suite 120, P.O. Box 1152, Menlo Park, CA 94025.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted on an interim basis as set forth herein.

2. The final hearing on the Motion (the "Final Hearing") is set for ______________ __, 2026 at __:__ a.m./p.m. (prevailing Eastern Time). Any objections or responses to the entry of the proposed Final Order shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on _______ ___, 2026 (the "Objection Deadline"), and shall be served on the following parties or their respective counsel on or before the Objection Deadline: (a) proposed counsel to the Debtor, Wilson Sonsini Goodrich & Rosati, P.C., 222 Delaware Avenue, Suite 800, Wilmington, DE 19801 (Attn: Erin R. Fay, Shane M. Reil, and Heather P. Lambert (emails: efay@wsgr.com, sreil@wsgr.com, and hlambert@wsgr.com)); (b) the Office of the United States Trustee for the District of Delaware, 844 N. King Street, Room 2207, Wilmington, DE 19801 (Attn: Linda Casey (email: Linda.Casey@usdoj.gov)); and (c) counsel to any statutory committee appointed in this chapter 11 case. If no objections or responses are filed and served by the Objection Deadline, the Court may enter the Final Order without further notice or hearing.

3. The Debtor is authorized, in its discretion, to continue the Insurance Policies in the ordinary course of business and honor the Insurance Obligations thereunder, whether arising prior to or after the Petition Date, including any obligations to the Brokers, upon entry of the Interim Order to the extent that the Debtor determines, in its discretion that such actions are in the best interests of its estate.

4. The Debtor is authorized, in its discretion, to renew, supplement, modify or enter into new Insurance Policies in the ordinary course of business.

5. Nothing in this Interim Order nor any actions taken hereunder: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor or its estate; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate to contest the validity, priority, or amount of any claim against the Debtor or its estate; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate with respect to any and all claims or causes of action against any third party; (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtor; or (e) shall create, or is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

6. The requirements of Bankruptcy Rule 6003 are satisfied.

7. Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon entry hereof.

8. The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

9. Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

10. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

# EXHIBIT B

## Final Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARACTER TECHNOLOGIES, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11603 ([___])<br><br>**Ref. Docket Nos. __ & __** |

**FINAL ORDER (I) AUTHORIZING THE DEBTOR TO (A) MAINTAIN EXISTING INSURANCE POLICIES AND PAY ALL INSURANCE OBLIGATIONS ARISING THEREUNDER, AND (B) RENEW, SUPPLEMENT, MODIFY, OR PURCHASE INSURANCE COVERAGE IN THE ORDINARY COURSE OF BUSINESS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtor for entry of an interim order and this final order (this "Final Order"): (i) authorizing the Debtor, in its discretion, to (a) maintain its existing insurance policies and pay all insurance obligations arising thereunder or in connection therewith, and (b) renew, supplement, modify or purchase insurance coverage; and (ii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that venue of this case and this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion

---

[1] The Debtor and the last four digits of its taxpayer identification number are: Character Technologies, Inc. (8842). The Debtor's mailing address for purposes of the chapter 11 case is 700 El Camino Real, Suite 120, P.O. Box 1152, Menlo Park, CA 94025.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED on a final basis as set forth herein.

2. The Debtor is authorized, in its discretion, to continue the Insurance Policies in the ordinary course of business and honor the Insurance Obligations thereunder, including honoring any prepetition amounts outstanding on account of the Insurance Obligations, including obligations to the Brokers, to the extent that the Debtor determines, in its discretion that such actions are in the best interests of its estate.

3. The Debtor is authorized, in its discretion, to renew, supplement, modify or enter into new Insurance Policies in the ordinary course of business.

4. Nothing in this Final Order nor any actions taken hereunder: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor or its estate; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate to contest the validity, priority, or amount of any claim against the Debtor or its estate; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate with respect to any and all claims or causes of action against any third party; (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtor; or (e) shall create, or is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

5. Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be effective and enforceable immediately upon entry hereof.

6. The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.

7. Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

8. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

# EXHIBIT C

## Schedule of Insurance Policies

| Type of Coverage | Insurer | Policy Number | Inception | Expiration | Annualized Premium |
|---|---|---|---|---|---|
| Property | CNA Insurance Companies | 8037967370 | 3/31/2026 | 3/31/2027 | $2,322 |
| General Liability | Lloyd's London (CRC Wholesale Group) | B1262PC0909426 | 3/31/2026 | 3/31/2027 | $125,000 |
| Business Automobile | CNA Insurance Companies | BUA8037967367 | 3/31/2026 | 3/31/2027 | $1,365 |
| Workers' Compensation – All Other States (FL, HI, NV, NY, PA, VA) | CNA Insurance Companies | WC837967384 | 3/31/2026 | 3/31/2027 | $6,443 |
| Worker's Compensation - California | CNA Insurance Companies | WC837967398 | 3/31/2026 | 3/31/2027 | $2,506 |
| Media/Technology Errors & Omissions/Cyber Liability | AmTrust | ACL124656002 | 4/30/2026 | 4/30/2027 | $314,094 |
| Excess Media / Technology Errors & Omissions / Cyber Liability | Hamilton (Lloyd's of London) | B1262FI2942626 | 4/30/2026 | 4/30/2027 | $155,000 |
| Directors' & Officers' Liability | Beazley (Lloyd's of London) | W3B7CC260101 | 1/15/2026 | 1/15/2028 | $500,000 |
| Excess Directors' & Officers' Liability | Forge | B0507BL2600276 | 1/15/2026 | 1/15/2028 | $400,000 |
| Excess Directors' & Officers' Lead Side A DIC | AIG | 14231439 | 1/15/2026 | 1/15/2028 | $375,000 |
| Excess Directors' & Officers' Lead Side A | Berkshire | 47EMC34628901 | 1/15/2026 | 1/15/2028 | $312,500 |
| Excess Directors' & Officers' Excess Side A | AXA XL | ELU20866826 | 1/15/2026 | 1/15/2028 | $687,500 |
| Excess Directors' & Officers' Excess Side A | Berkley | BPRO8136019 | 1/15/2026 | 1/15/2028 | $515,625 |
| Excess Directors' & Officers' Excess Side A | Vantage | P04ML000076151 | 1/15/2026 | 1/15/2028 | $412,500 |
| Excess Directors' & Officers' Excess Side A | Sompo | ADX30107010500 | 1/15/2026 | 1/15/2028 | $330,000 |
| Excess Directors' & Officers' Excess Side A | Convex (Lloyd's of London) | B0507BL2600285 | 1/15/2026 | 1/15/2028 | $264,000 |
| Excess Directors' & Officers' Excess Side A | QBE | 130020010 | 1/15/2026 | 1/15/2028 | $255,000 |
| Excess Directors' & Officers' Excess Side A | Westfield | XSA520628Y00 | 1/15/2026 | 1/15/2028 | $250,000 |
| Excess Directors' & Officers' Excess Side A | RSUI | NHS717875 | 1/15/2026 | 1/15/2028 | $225,000 |
| Employment Practices Liability / Fiduciary Liability | Berkshire | 42EMC3382603 | 3/31/2026 | 3/31/2027 | $26,000 |