**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARACTER TECHNOLOGIES, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11603 ([___]) |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO (A) CONTINUE TO OPERATE ITS CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, AND (C) MAINTAIN EXISTING BUSINESS FORMS; (II) EXTENDING THE TIME TO COMPLY WITH SECTION 345(b) OF THE BANKRUPTCY CODE; AND (III) GRANTING RELATED RELIEF**

The debtor and debtor in possession in the above-captioned case (the "Debtor") hereby submits this motion (this "Motion") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order" and, together with the Interim Order, the "Proposed Orders"), (i) authorizing the Debtor, in its discretion, to (a) continue to operate its Cash Management System, (b) pay any prepetition or post-petition amounts outstanding on account of the Bank Claims, and (c) maintain existing Business Forms in the ordinary course of business; (ii) waiving the requirements of section 345(b) of the Bankruptcy Code and certain requirements set forth in the U.S. Trustee Guidelines on an interim basis; and (iii) granting related relief. In support hereof, the Debtor relies on the *Declaration of Colin M. Adams in Support of the Debtor's Chapter 11 Petition and First Day Motions* (the "First Day Declaration"),[2] filed concurrently herewith, and further represents as follows:

[1] The Debtor and the last four digits of its taxpayer identification number are: Character Technologies, Inc. (8842). The Debtor's mailing address for purposes of the chapter 11 case is 700 El Camino Real, Suite 120, P.O. Box 1152, Menlo Park, CA 94025.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor confirms its consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the chapter 11 case and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 345, 363, and 503 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

## RELIEF REQUESTED

4. The Debtor hereby requests entry of the Proposed Orders: (i) authorizing the Debtor, in its discretion, to (a) continue to operate its Cash Management System (as defined below), (b) pay any prepetition or post-petition amounts outstanding on account of the Bank Claims (as defined below), and (c) maintain existing Business Forms (as defined below) in the ordinary course of business; (ii) waiving the requirements of section 345(b) of the Bankruptcy Code and certain requirements set forth in the U.S. Trustee Guidelines (as defined below) on an interim basis; and (iii) granting related relief.

## BACKGROUND

5. On October 12, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in the chapter 11 case, and no official committee of unsecured creditors has been appointed.

6. The Debtor is a first in kind artificial intelligence ("AI") entertainment platform that allows users to have immersive, multimodal experiences with fictional or imagined characters. What started as a platform to have one-on-one chats tailored to user preferences, has evolved to become a category leader in entertainment AI. Today, the Character.AI platform generates stunning visuals that become part of a story, creates dynamic video content with AI characters, and actively augments videos and stories with rich audio experiences to enhance immersion. In its 4-year lifespan as an active platform, Character has amassed a large and engaged user base. The burgeoning and evolving field of AI entertainment, however, has proven to be costly to develop and grow. These high costs, coupled with potential litigation related liabilities and regulatory engagement have contributed to the Debtor's inability to generate sufficient cash flows to support its business in the present form. The Debtor has commenced this case to engage in value-maximizing transactions for the benefit of its stakeholders.

7. Additional factual background regarding the Debtor, including its business operations, its corporate and capital structure, and the events leading to the filing of the chapter 11 case, is set forth in the First Day Declaration and incorporated herein by reference.

### A. THE CASH MANAGEMENT SYSTEM

8. The Debtor utilizes an integrated system of bank accounts to facilitate the collection and disbursement of funds in the operation of its business (the "Cash Management System"). The

Cash Management System enables transactions and transfers among the various bank accounts required to effect the Debtor's collections and disbursements. Further, the Cash Management System enables monitoring of collection and disbursement activity and facilitates the Debtor's reporting through the development of timely and accurate information. The Debtor's finance department maintains daily oversight of the Cash Management System, and implements cash management controls for receiving, processing, and releasing funds. Additionally, the Debtor's finance personnel regularly reconcile the Debtor's books and records to ensure that all transfers are properly accounted for.

9. Due to the nature of the Debtor's business and the disruption that would result if the Debtor were required to close its existing bank accounts, it is critical that the Cash Management System remains in place on a post-petition basis. Accordingly, pursuant to sections 105(a) and 363(c) of the Bankruptcy Code, the Debtor seeks authorization to maintain its existing bank accounts and continue using its Cash Management System in the ordinary course.

**B. BANK ACCOUNTS**

10. As of the Petition Date, the Cash Management System holds approximately $57,414,000 in unrestricted cash[3] across seven (7) bank accounts (collectively, the "Bank Accounts").[4] As further set forth in the table below, the Bank Accounts are maintained at Silicon Valley Bank, a division of First Citizens Bank & Trust Company ("SVB"), Morgan Stanley and JPMorgan Chase Bank, N.A. ("Chase") (collectively, the "Banks").

[3] As described in more detail in the First Day Declaration, the Debtor currently holds a $2,000,000 refundable deposit in connection with the proposed sale process. Thus, the Cash Management System holds a total of $59,414,000 in cash and cash equivalents.

[4] Although the Cash Management System includes the number of Bank Accounts as of the Petition Date, subject to the Interim and Final Orders, the Debtor reserves the right to close existing accounts and/or open new accounts.

11. The functions of the Bank Accounts are described in the following table:

***Debtor Bank Accounts***

| Bank Account | Description |
|---|---|
| Main Operating Account; SVB (x6963) | This checking account (the "Main Operating Account") is maintained at SVB and is the "operating hub" of the Debtor's business. The Main Operating Account is used to make payments to all vendors, fund and make payroll, and make any and all other outbound payments, including by wire. SVB sweeps all funds except for $1,000,000 that remains in the Main Operating Account each night. As of the Petition Date, the Main Operating Account held a balance of $1,000,000. |
| Investment Account; Morgan Stanley (x6883) | This account (the "Investment Account") is maintained at Morgan Stanley and is used by the Debtor for investments in, among other things, treasuries, commercial paper and money market funds. The Investment Account gets drawn down by manual wires into the Main Operating Account whenever the Main Operating Account needs funding, depending on the Debtor's operational needs. As of the Petition Date, the Investment Account held a balance of approximately $38,645,000. |
| Receipts Account; SVB (x6978) | This account (the "Receipts Account") is maintained at SVB and is primarily used as the collection account for user subscription payments. The Receipts Account periodically transfers funds to the Main Operating Account. As of the Petition Date, the Receipts Account held a balance of approximately $5,441,000. |
| Cash Sweep Account; SVB (x8728) | This account (the "Cash Sweep Account") is maintained at SVB and receives 95% of the amount swept from the Main Operating Account each night. The funds in the Cash Sweep Account are invested across four treasury and government money market funds whose dividends are then reinvested. The Cash Sweep Account also returns funds back to the Main Operating Account one business day after the Main Operating Account calls for it. As of the Petition Date, the Cash Sweep Account held a balance of approximately $13,615,000. |
| TAS Interest Bearing Account; SVB (x3359) | This account (the "TAS Interest Bearing Account") holds a "Treasury Account Symbol" and receives the remaining 5% of funds that get swept from the Main Operating Account each night and is used as an interest-bearing buffer. The TAS Interest Bearing Account moves in step with the Cash Sweep Account but returns funds back to the Main Operating Account on the same day the Main Operating Account calls for it (as opposed to one day later). As of the Petition Date, the TAS Interest Bearing Account held a balance of approximately $713,000. |
| Chase Account (x8238) | This account (the "Chase Account") is a legacy account that the Debtor no longer uses and as of the Petition Date had a balance of $0. The Debtor anticipates that it may close the Chase Account during the course of the chapter 11 case. |

| Bank Account | Description |
|---|---|
| Adequate Assurance Account; SVB (x5892) | This account (the "Adequate Assurance Account") carries a de minimis balance and the Debtor intends to use the Adequate Assurance Account to hold the Debtor's adequate assurance deposit in connection with the Debtor's utilities. As of the Petition Date, the Adequate Assurance Account had a balance of $0. |

## C. COLLECTIONS

12. The Debtor collects receipts primarily through the Receipts Account and the Main Operating Account. The Receipts Account receives funds from Stripe, Inc. for revenue generated from subscriptions to the Debtor's online platform. The Receipts Account makes periodic transfers to the Main Operating Account in the ordinary course of the Debtor's operations. The Main Operating Account primarily receives funds from (i) application providers (e.g., the Google and Apple App Stores) for revenue from users purchasing and using the Debtor's application; (ii) advertising partners for advertising revenue via ACH wires; and (iii) insurance providers for reimbursements for certain legal settlements.

13. Funds from the Main Operating Account are swept daily into the Cash Sweep and TAS Interest Bearing Accounts. Funds from the Receipts Account are periodically transferred to the Main Operating Account.

## D. DISBURSEMENTS

14. The Debtor makes certain disbursements in the ordinary course of business through the Main Operating Account. The Main Operating Account is used to fund accounts payable, payroll, vendors, and all other outbound payments in the ordinary course of the Debtor's business. The Debtor effectuates wire transfers from the Investment Account into the Main Operating Account on an as-need basis.

## E. INTEREST-BEARING ACCOUNTS

15. The Investment Account, Cash Sweep Account and TAS Interest Bearing Account are each interest-bearing accounts maintained by the Debtor. The funds in the Investment Account are invested in treasuries, commercial paper and money market funds. The funds in the Investment Account are typically transferred by manual wire to the Main Operating Account on an as needed basis, usually once a month. The funds in the Cash Sweep Account are invested across four treasury and government money market funds whose dividends are then reinvested. The Cash Sweep Account also returns funds back to the Main Operating Account one business day after the Main Operating Account calls for it. The TAS Interest Bearing Account receives 5% of the daily swept funds from the Main Operating Account. The funds in the TAS Interest Bearing Account are not invested. Therefore, this account is used as a buffer for the Cash Sweep Account, since funds can be transferred on the same day the Main Operating Account calls for them, as opposed to one day later.

## F. CORPORATE CARDS

16. As part of the Cash Management System, the Debtor presently has approximately six (6) physical corporate credit cards in addition to virtual credit cards (the "Corporate Cards") through Ramp Business Corporation ("Ramp") to cover business expenses in the ordinary course. The Corporate Cards are primarily used to pay for recurring subscription charges for some of the Debtor's largest and most critical vendors. As described in more detail in the Wages Motion,[5] the Debtor has also provided Corporate Cards to employees, in such employees' names, for travel and expenses incurred in the ordinary course of business. The Debtor has historically incurred

[5] The "Wages Motion" means the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to (A) Pay Prepetition Wages, Employee Benefits Obligations, and Other Compensation, and (B) Continue Employee Benefits Programs and Pay Related Administrative Obligations; and (II) Granting Related Relief*, filed concurrently herewith.

approximately $1,000,000 a month for the Corporate Cards, primarily due to costs for vendor payments, and which balance is paid from the Debtor's Main Operating Account. As of the Petition Date, the Corporate Cards hold a balance of approximately $10,000. The Debtor anticipates that, because of its reduced workforce (as described in more detail in the Wages Motion) along with certain reductions of operating expenses as of the Petition Date, the spend on the Corporate Cards will be significantly reduced.

17. The Corporate Cards are an integral part of the Debtor's cash management and account functions. The ability of the Debtor to use the Corporate Cards on a go-forward basis is critical to the continued operation of the Debtor's business. The Debtor's platform and operations can only run with the support of, among others, its vendors who are paid through the Debtor's use of the Corporate Cards and thus the Debtor must be able to continue making automatic payments to such vendors during the pendency of this case. Accordingly, the Debtor's inability to maintain the Corporate Cards would result in unnecessary, detrimental, and value-destructive disruptions to the Debtor's operations. The Debtor seeks authorization to honor all Corporate Card obligations owing as of the Petition Date, and to continue to make timely payments in the ordinary course of business on a post-petition basis on account of any charges that were made via the Corporate Cards both prior to and after the Petition Date.

**G. BANK CLAIMS**

18. In the ordinary course of business, the Debtor incurs periodic service charges and other ordinary course fees in connection with maintaining the Cash Management System (collectively, the "Bank Fees"). The Debtor incurs approximately $3,000 in Bank Fees each month under the Cash Management System. The Debtor anticipates that all of the accrued prepetition Bank Fees that will come due within the first thirty (30) days of the chapter 11 case. To maintain

the integrity of its Cash Management System, the Debtor requests authority to pay all prepetition Bank Fees and to continue to pay Bank Fees in the ordinary course on a post-petition basis.

19. In addition to the Bank Fees, in connection with the Cash Management System, the Debtor may incur other charges ("Bank and Processor Charges," and together with the Bank Fees, the "Bank Claims") in connection with: (a) checks that have been dishonored or returned for insufficient funds in the applicable account; (b) any reimbursement or other payment obligations, such as overdrafts, arising under any agreements governing the Bank Accounts, including, without limitation, any prepetition cash management agreements or treasury services agreements; and (c) any credit card processing fees or other related payment obligations. The Debtor estimates that no Bank and Processor Charges are currently due and owing as of the Petition Date. Out of an abundance of caution, the Debtor requests authority to pay any prepetition Bank and Processor Charges and to continue to pay Bank and Processor Charges in the ordinary course on a post-petition basis.

**H. THE BUSINESS FORMS**

20. The Debtor uses various pre-printed documents (the "Business Forms"), such as checks, invoices, and letterhead, in the ordinary course of business. Because the Business Forms were used prepetition, they do not reference the Debtor's status as debtor in possession. Nonetheless, most parties doing business with the Debtor will be aware of the Debtor's status as debtor in possession because of the publicity surrounding the chapter 11 case and the notice of commencement served on parties in interest.

21. Requiring the Debtor to change existing Business Forms would unnecessarily distract the Debtor's employees and impose needless expenses on the estate. Thus, the Debtor requests that it be authorized to use its existing Business Forms without placing a "Debtor in

Possession" legend on each, until its existing stock is depleted. Once the Debtor has exhausted its existing stock of checks or forms, any new check stock or subsequently printed checks or forms will bear the designation "Debtor in Possession" with the bankruptcy case number. To the extent that checks or forms are prepared electronically, the debtor will add a "Debtor in Possession" designation to such checks within fourteen (14) days of the Petition Date.

## BASIS FOR RELIEF

### I. THE COURT SHOULD AUTHORIZE THE DEBTOR TO MAINTAIN ITS EXISTING BANK ACCOUNTS AND USE ITS EXISTING CASH MANAGEMENT SYSTEM AND MODIFY ANY REQUIREMENT TO CLOSE EXISTING ACCOUNTS

22. Although the Debtor maintains the Bank Accounts as part of an established Cash Management System, the United States Trustee's *Operating Guidelines for Chapter 11 Cases* (the "U.S. Trustee Guidelines") require that the Debtor, as debtor in possession, take certain actions with respect to its prepetition Bank Accounts in order for the U.S. Trustee to supervise the administration of the chapter 11 case. These requirements are designed to draw a clear line of demarcation between prepetition and post-petition transactions and operations and prevent the inadvertent post-petition payment of prepetition claims. The Debtor submits, however, that a modification of certain requirements is warranted.

23. Specifically, the Bank Accounts are held at SVB, Morgan Stanley and Chase, which are financially stable institutions. To protect against the unauthorized payment of prepetition obligations, the Debtor represents that, if it is authorized to use the Bank Accounts, it will not pay, and the Bank will be directed not to pay, any debts incurred before the Petition Date, other than as authorized by the Court. The Debtor will provide the U.S. Trustee with notice of any new accounts in accordance with the terms of the Interim and Final Orders.

24. Enforcement of the U.S. Trustee's requirements without modification would significantly disrupt the Debtor's business. Indeed, as explained in more detail above, the Bank Accounts comprise an established Cash Management System that the Debtor must maintain to ensure collections and disbursements occur. The Cash Management System allows the Debtor to centrally manage cash and includes the necessary accounting controls to enable the Debtor to trace funds through the system and ensure that all transactions are adequately documented and readily ascertainable. While the chapter 11 case is pending, the Debtor will continue to maintain detailed records reflecting all transfers of funds.

25. Accordingly, to avoid delays in payments to administrative creditors, to ensure a smooth transition into chapter 11, and to maximize the value of its estate, the Debtor submits that: (a) it should be permitted to continue to maintain its existing Bank Accounts, open new accounts, and close existing accounts as needed; and (b) the requested relief should extend to any new accounts by providing that the new accounts are deemed to be Bank Accounts and are similarly subject to the rights, obligations, and relief granted by the Court.

26. Both as part of the Motion and in other motions that have been concurrently filed, the Debtor is requesting authority to pay, in its discretion, certain prepetition obligations. With respect to certain of these obligations, the Debtor may have issued checks prior to the Petition Date that have yet to clear the banking system. The Debtor requests that the Banks be authorized and directed to rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored. The Debtor further requests that the Interim Order and the Final Order specify that the Banks shall not have any liability to any party for relying on such representations. This relief is reasonable and

appropriate because the Banks are not able to independently verify or audit whether a particular prepetition check may be honored in accordance with an order of the Court or otherwise.

27. Allowing the Debtor to use its prepetition Cash Management System and engage in related "routine transactions" comports with applicable provisions of the Bankruptcy Code. In particular, section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of this section is to provide a debtor with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court. *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (citations omitted); *In re Vision Metals, Inc.*, 325 B.R. 138, 145 (Bankr. D. Del. 2005) (same). The authority granted by section 363(c)(1) of the Bankruptcy Code extends to a debtor in possession's continued use of its customary cash management system and, thus, supports the relief requested. *See, e.g.*, *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007) (noting that courts have shown a reluctance to interfere in a debtor's making of routine, day-to-day business decisions) (citations omitted); *Vision Metals*, 325 B.R. at 142 ("[W]hen a Chapter 11 debtor-in-possession continues to operate its business, as permitted by section 1108, no court authorization is necessary for the debtor to enter transactions that fall within the ordinary course of its business.").

28. To the extent that use of the existing Cash Management System falls outside the ordinary course of business, such use is permitted by sections 363(b)(1) and 105(a) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he

trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides that this Court may "issue any order . . . that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. *Id.* § 105(a). As described herein, the continuation of the Cash Management System is necessary and appropriate and will allow the Debtor to expeditiously carry out the chapter 11 case, while still providing protections to the Debtor's creditors by ensuring that the Debtor's cash is used appropriately and in accordance with the applicable provisions of the Bankruptcy Code and the Court's orders.

## II. MAINTAINING THE EXISTING CASH MANAGEMENT SYSTEM WILL NOT HARM PARTIES IN INTEREST

29. The Debtor's continued use of its Cash Management System will facilitate its transition into chapter 11 by, among other things, avoiding administrative inefficiencies, expenses and distraction associated with disrupting this system and minimizing delays in the payment of post-petition obligations. Parties in interest will not be harmed by the Debtor's maintenance of the Cash Management System, including maintenance of the Bank Accounts. The Debtor has developed and implemented appropriate mechanisms to ensure that Debtor entities will not make unauthorized payments for prepetition obligations during the pendency of the chapter 11 case. In light of such measures, the Debtor submits that maintaining the Cash Management System is in the best interests of its estate and creditors.

## III. AUTHORIZING THE DEBTOR TO CONTINUE USING DEBIT, WIRE, AND ACH TRANSFERS IS WARRANTED

30. The Debtor requests that the Court grant further relief from the U.S. Trustee Guidelines to the extent that they require the Debtor to make all disbursements by check. The Debtor conducts a large number of transactions on a daily basis through ACH transfers and other similar methods. If the Debtor's ability to conduct transactions by debit, wire, ACH transfer, or

other similar methods is impaired, the Debtor's day-to-day activities would be unnecessarily disrupted, and the estates will incur additional costs. The Debtor maintains records of all electronic disbursements and is able to account for such payments the same as if they were made by check. Therefore, the Debtor submits that authorizing the continuation of using debit, wire, and ACH transfers is warranted.

## IV. THE COURT SHOULD AUTHORIZE THE DEBTOR TO HONOR CERTAIN PREPETITION OBLIGATIONS RELATED TO THE CASH MANAGEMENT SYSTEM

31. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtor seeks authority, in its discretion, to pay or reimburse the Banks in the ordinary course of business for any Bank Claims arising prior to, on, or after the Petition Date.

32. Additionally, in most, if not all circumstances, the Banks would be entitled to setoff or recoup fees related to the Bank Accounts based on account agreements with the Debtor or applicable law. Thus, by authorizing the Debtor to pay or honor such prepetition obligations, the Court will enable the Debtor to normalize operations and avoid the disruption that would otherwise occur if the Bank Accounts were frozen pending payment or resolution of disputes regarding the priority of claims or rights of recoupment.

## V. THE COURT SHOULD AUTHORIZE THE DEBTOR TO CONTINUE TO USE EXISTING BUSINESS FORMS AND CHECKS

33. To minimize expenses to its estate, the Debtor also seeks authorization to continue using the Business Forms existing immediately prior to the Petition Date, without reference to the Debtor's status as debtor in possession. Modifying existing Business Forms would be burdensome and expensive and would confer no corresponding benefit upon those dealing with the Debtor, most of whom, as noted above, will be aware of the commencement of the chapter 11 case. The Debtor therefore requests authorization to use its existing Business Forms without adding a

"Debtor in Possession" or similar legend. The Debtor will obtain new check stock bearing the designation "Debtor in Possession" after depleting its current check stock. To the extent that Business Forms and checks are prepared electronically, the Debtor will add a "Debtor in Possession" designation to such Business Forms and checks within fourteen (14) days of the Petition Date.

## VI. CAUSE EXISTS TO MODIFY CERTAIN REQUIREMENTS OF SECTION 345(b) OF THE BANKRUPTCY CODE

34. Section 345(a) of the Bankruptcy Code authorizes a debtor in possession to make deposits or investments of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety, "unless the court for cause orders otherwise." *Id.* § 345(b). Alternatively, the debtor may require the entity to deposit governmental securities pursuant to 31 U.S.C. § 9303.[6] Additionally, under the U.S. Trustee Guidelines, debtors in possession must, among other things, close prepetition bank accounts and open new "debtor in possession" operating, payroll, and tax accounts at one or more authorized depositories.

35. All of the Bank Accounts comply with the requirements of section 345(b) of the Bankruptcy Code. As described above, Debtor's Bank Accounts are maintained at SVB, Chase,

---

[6] Section 9303 of title 31 provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may instead provide an eligible obligation, designated by the Secretary of the Treasury, as an acceptable substitute for a surety bond. 31 U.S.C. § 9303.

and Morgan Stanley. Each of the Banks has executed a Uniform Depository Agreement with, and is designated as authorized depositories by, the U.S. Trustee, pursuant to the U.S. Trustee Guidelines. Additionally, all of the Bank Accounts are insured by the FDIC. Thus, the Debtor believes that any funds that are deposited in these Bank Accounts are and will remain secure during the pendency of the chapter 11 case.

36. To the extent that the Cash Management System does not strictly comply with section 345 of the Bankruptcy Code, the Debtor submits that cause exists to waive the deposit and investment requirements set forth therein. Courts may waive compliance with section 345 of the Bankruptcy Code and the U.S. Trustee Guidelines for "cause." In evaluating whether "cause" exists, courts have considered a number of factors, including: (a) the sophistication of the debtor's business; (b) the size of the debtor's business operations; (c) the amount of the investments involved; (d) the bank ratings (Moody's and Standard & Poor) of the financial institutions where the debtor in possession funds are held; (e) the complexity of the case; (f) the safeguards in place within the debtor's own business for ensuring the safety of the funds; (g) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (h) the benefit to the debtor; (i) the harm, if any, to the debtor; (j) the harm, if any, to the estate; and (k) the reasonableness of the debtor's request for relief from section 345(b) of the Bankruptcy Code requirements in light of the overall circumstances of the case. *In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999). Here, these factors warrant a modification of the requirements of section 345 of the Bankruptcy Code to the extent the Cash Management System does not already strictly comply with its requirements.

37. Nevertheless, the Debtor requests a 30-day extension of time to address any questions that the U.S. Trustee may have regarding the Cash Management System and, should the

U.S. Trustee have concerns regarding the Bank Accounts, to make such arrangements as are acceptable to the U.S. Trustee (without prejudice to the Debtor's right to seek further modifications or extensions of time).

**IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY**

38. The Court may grant the relief requested in this Motion immediately if the "relief is necessary to avoid immediate and irreparable harm." Bankruptcy Rule 6003; *In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008). The Third Circuit has instructed that irreparable harm is that which "cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). The Debtor submits that, for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate.

39. The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[u]nless the Court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered" Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate without interruption and to preserve value for its estate. Accordingly, the Debtor respectfully requests that the Court waive the fourteen (14)-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

**RESERVATION OF RIGHTS**

40. Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor or its estate; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate to contest the validity, priority, or amount of

any claim against the Debtor or its estate; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate with respect to any and all claims or causes of action against any third party; or (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the Debtor's discretion.

## NOTICE

41. The Debtor will provide notice of this Motion to: (a) the U.S. Trustee; (b) the United States Attorney's Office for the District of Delaware; (c) the state attorneys general for all states in which the Debtor conducts business; (d) the Internal Revenue Service; (e) the holders of the twenty (20) largest unsecured claims against the Debtor on a consolidated basis; (f) the Banks; (g) counsel to Disney; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor will serve copies of this Motion and any order entered in respect thereto as required by Local Rule 9013-1(m). The Debtor respectfully submits that, in light of the nature of the relief requested, no further notice is necessary.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter the Interim Order and the Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: October 13, 2026
Wilmington, Delaware

**WILSON SONSINI GOODRICH & ROSATI, P.C.**

*/s/ Erin R. Fay*
Erin R. Fay (No. 5268)
Shane M. Reil (No. 6195)
Heather P. Lambert (No. 6923)
222 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 304-7600
E-mails: efay@wsgr.com
sreil@wsgr.com
hlambert@wsgr.com

*Proposed Counsel to the Debtor and Debtor in Possession*

# EXHIBIT A

**Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARACTER TECHNOLOGIES, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11603 ([___])<br><br>**Ref. Docket No. __** |

**INTERIM ORDER (I) AUTHORIZING DEBTOR TO (A) CONTINUE TO OPERATE ITS CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, AND (C) MAINTAIN EXISTING BUSINESS FORMS; (II) EXTENDING THE TIME TO COMPLY WITH SECTION 345(b) OF THE BANKRUPTCY CODE; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtor for entry of this interim order (this "Interim Order") and a final order: (i) authorizing the Debtor, in its discretion, to (a) continue to operate its Cash Management System, (b) pay any prepetition or post-petition amounts outstanding on account of the Bank Claims, and (c) maintain existing Business Forms in the ordinary course of business; (ii) extending the time to comply with section 345(b) of the Bankruptcy Code; and (iii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that venue of this case and this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that notice of the Motion and opportunity for a hearing thereon

[1] The Debtor and the last four digits of its taxpayer identification number are: Character Technologies, Inc. (8842). The Debtor's mailing address for purposes of the chapter 11 case is 700 El Camino Real, Suite 120, P.O. Box 1152, Menlo Park, CA 94025.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED on an interim basis as set forth herein.

2. The final hearing on the Motion (the "Final Hearing") is set for _______________ __, 2026 at __:__ a.m./p.m. (prevailing Eastern Time). Any objections or responses to the entry of the proposed Final Order shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on ________ ___, 2026 (the "Objection Deadline"), and shall be served on the following parties or their respective counsel on or before the Objection Deadline: (a) proposed counsel to the Debtor, (i) Wilson Sonsini Goodrich & Rosati, P.C., 222 Delaware Avenue, Suite 800, Wilmington, DE 19801 (Attn: Erin R. Fay, Shane M. Reil, and Heather P. Lambert (emails: efay@wsgr.com, sreil@wsgr.com, and hlambert@wsgr.com); (b) the Office of the United States Trustee for the District of Delaware, 844 N. King Street, Room 2207, Wilmington, DE 19801 (Attn: Linda Casey (email: Linda.Casey@usdoj.gov@usdoj.gov)); (c) counsel to the Stalking Horse Bidder; and (d) counsel to any statutory committee appointed in the chapter 11 case. If no objections or responses are filed and served by the Objection Deadline, the Court may enter the Final Order without further notice or hearing.

3. The Debtor is authorized, but not directed, to maintain and use the Cash Management System as described in the Motion subject to any modification provided herein.

4. The Debtor is authorized to open new bank accounts or close any existing bank accounts as it may deem necessary and appropriate in their discretion; *provided that* (a) the Debtor shall notify the U.S. Trustee and any statutory committees appointed in the chapter 11 case within fifteen (15) days of the opening or closing of any account, and (b) any new bank account shall be at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee for the District of Delaware, or at such bank that is willing to immediately execute such an agreement. The relief granted in this Interim Order is extended to any new bank account opened by the Debtor after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened.

5. In each instance in which the Debtor holds an account at a Bank that is a party to a Uniform Depository Agreement with the U.S. Trustee, immediately after the date of entry of this Order, the Debtor shall (a) contact the Bank; (b) provide the Bank with the Debtor's employer identification number; and (c) identify each of its accounts held at the Bank as being held by a debtor in possession.

6. To the extent any Bank Accounts existing as of the Petition Date are not in compliance with section 345(b) of the Bankruptcy Code and any provision of the U.S. Trustee Guidelines, the Debtor shall have thirty (30) days from the date of entry of this Interim Order (or such additional time to which the U.S. Trustee may agree) to either bring such Bank Accounts into compliance with section 345(b) of the Bankruptcy Code or to make such other arrangements as are agreed to by the U.S. Trustee or approved by the Court; *provided* that nothing in the foregoing shall prevent the Debtor or the U.S. Trustee from seeking further relief from the Court to the extent such an arrangement cannot be reached within that time period (or such other period as agreed to by the Debtor and the U.S. Trustee). For banks at which the Debtor holds accounts that are not

party to a Uniform Depository Agreement with the U.S. Trustee, the Debtor shall use its good-faith efforts to cause the banks to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee immediately after the date of this Interim Order.

7. The Bank Accounts are deemed debtor in possession accounts. The Debtor is authorized to maintain and use the Bank Accounts in the same manner and with the same account numbers, styles, and document forms as those employed prior to the Petition Date, including, without limitation: (a) to deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, drafts, electronic fund transfers, and other debits or items presented, issued, or drawn on the Bank Accounts, (b) to pay ordinary course Bank Claims in connection with the Bank Accounts, including any Bank Claims arising prior to the Petition Date, and (c) to perform their obligations under the documents and agreements governing the Bank Accounts, including without limitation, their Investment Policy and any prepetition Cash Management System agreements or treasury services agreements, in each case subject to the terms of each applicable deposit account control agreement.

8. Those certain existing deposit agreements between the Debtor and the Banks shall continue to govern the post-petition Cash Management System relationship between the Debtor and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.

9. The Debtor is authorized to continue using the Corporate Cards and to pay in the ordinary course of business any amounts owing prepetition or post-petition on account of the Corporate Cards.

10. The Banks are authorized and directed without the need for further order of this Court to in the ordinary course of business: (a) continue to administer, service, and maintain, the

Bank Accounts as such accounts were administered, serviced, and maintained prior to the Petition Date, without interruption and in the ordinary course; (b) receive, process, honor, and pay any and all checks, drafts, wires, ACH transfers, electronic fund transfers, payment orders, or other items presented, issued, or drawn on the Bank Accounts (collectively, the "Disbursements") on account of a post-petition claim or a prepetition claim for which payment has been specifically authorized by this Court; and (c) debit the Bank Accounts for: (i) all undisputed prepetition bank and service fees outstanding as of the date hereof, if any, owed to the Banks for the maintenance of the Cash Management System; (ii) all checks drawn on the Bank Accounts which were cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; and (iii) all checks or other items deposited in one of the Bank Accounts with such Bank prior to the Petition Date, which have not been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the applicable Debtor was responsible for such items prior to the Petition Date.

11. Subject to the provisions of this Interim Order, the Banks are authorized to rely on the representations of the Debtor as to which Disbursements are authorized to be honored or dishonored, whether or not such Disbursements are dated, drawn, or issued prior to, on, or subsequent to the Petition Date, and whether or not the Banks believe the payment is authorized by an order of the Court. The Banks shall not be deemed in violation of this Interim Order and shall have no liability for relying on such representations by the Debtor, without any duty of further inquiry, or honoring any Disbursement that is subject to this Interim Order either (a) at the direction of the Debtor, (b) in the good faith belief that this Court has authorized such prepetition Disbursement to be honored, or (c) as a result of an innocent mistake made despite implementation of reasonable item-handling procedures. To the extent that the Debtor directs that any

Disbursement be dishonored or any Bank inadvertently dishonors any Disbursements, the Debtor may issue replacement Disbursements consistent with the orders of this Court.

12. The Banks are further authorized to (a) honor the Debtor's directions with respect to the opening or closing of any Bank Account, and (b) accept and hold, or invest, the Debtor's funds in accordance with the Debtor's instructions, and the Banks shall have no liability to any party for relying on such representations or instructions.

13. To the extent any other order is entered by this Court authorizing the Banks to honor checks, drafts, ACH transfers, or other electronic funds transfers or any other withdrawals made, drawn, or issued in payment of prepetition claims, the obligation to honor such items shall be subject to the terms and conditions of this Interim Order.

14. The Debtor shall serve a copy of this Interim Order on the Banks within two (2) business days of the entry of this Interim Order, and upon any bank at which the Debtor opens a new bank account, immediately upon the opening of such new account.

15. In connection with the ongoing use of its Cash Management System, the Debtor shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between prepetition and post-petition transactions. The Debtor and the Banks may agree, without further order of this Court, to implement any changes to the Cash Management System and procedures in the ordinary course of business and not inconsistent with this Interim Order that it deems appropriate in their discretion, including, without limitation, closing any of the Bank Accounts or opening new bank accounts as set forth herein.

16. The Debtor is authorized to continue to use its existing Business Forms without alteration or change and without the designation "Debtor in Possession" imprinted upon them;

*provided, however,* once the Debtor's existing check stock has been exhausted, the Debtor shall, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks; *provided further* that, with respect to checks which the Debtor or its agents print themselves, the Debtor shall begin printing the "Debtor in Possession" legend and the bankruptcy case number on such items within ten (10) days of the date of entry of this Interim Order.

17. Nothing in this Interim Order nor any actions taken hereunder: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor or its estate; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate to contest the validity, priority, or amount of any claim against the Debtor or its estate; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate with respect to any and all claims or causes of action against any third party; or (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtor.

18. The requirements of Bankruptcy Rule 6003 are satisfied.

19. Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon entry hereof.

20. The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

21. Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

22. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

# EXHIBIT B

## Final Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARACTER TECHNOLOGIES, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11603 ([___])<br><br>**Ref. Docket Nos. __ & __** |

**FINAL ORDER (I) AUTHORIZING DEBTOR TO (A) CONTINUE TO OPERATE ITS CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, AND (C) MAINTAIN EXISTING BUSINESS FORMS; (II) EXTENDING THE TIME TO COMPLY WITH SECTION 345(b) OF THE BANKRUPTCY CODE; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtor for entry of an interim order and this final order (this "Final Order"): (i) authorizing the Debtor, in its discretion, to (a) continue to operate its Cash Management System, (b) pay any prepetition or post-petition amounts outstanding on account of the Bank Claims, and (c) maintain existing Business Forms in the ordinary course of business; (ii) extending the time to comply with section 345(b) of the Bankruptcy Code; and (iii) granting related relief all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that venue of this case and this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of

[1] The Debtor and the last four digits of its taxpayer identification number are: Character Technologies, Inc. (8842). The Debtor's mailing address for purposes of the chapter 11 case is 700 El Camino Real, Suite 120, P.O. Box 1152, Menlo Park, CA 94025.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

the Debtor's estate, its creditors, and other parties in interest; and this Court having found that the notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if necessary, before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED on a final basis as set forth herein.

2. The Debtor is authorized, but not directed, to maintain and use the Cash Management System as described in the Motion subject to any modification provided herein.

3. The Debtor is authorized to open new bank accounts or close any existing bank accounts as it may deem necessary and appropriate in their discretion; *provided that* (a) the Debtor shall give fifteen (15) days advance notice to the U.S. Trustee and any statutory committees appointed in the chapter 11 case, and (b) any new bank account shall be at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee for the District of Delaware, or at such bank that is willing to immediately execute such an agreement. The relief granted in this Final Order is extended to any new bank account opened by the Debtor after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened.

4. The U.S. Trustee Guidelines are hereby modified such that the Debtor is not required to: (a) close all existing Bank Accounts and open new debtor in possession accounts, or (b) establish specific bank accounts for tax payments.

5. The Bank Accounts are deemed debtor in possession accounts. The Debtor is authorized to maintain and use the Bank Accounts in the same manner and with the same account numbers, styles, and document forms as those employed prior to the Petition Date, including, without limitation: (a) to deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, drafts, electronic fund transfers, and other debits or items presented, issued, or drawn on the Bank Accounts, (b) to pay ordinary course Bank Claims in connection with the Bank Accounts, including any Bank Claims arising prior to the Petition Date, and (c) to perform their obligations under the documents and agreements governing the Bank Accounts, including without limitation, their Investment Policy and any prepetition Cash Management System agreements or treasury services agreements, in each case subject to the terms of each applicable deposit account control agreement.

6. Those certain existing deposit agreements between the Debtor and the Banks shall continue to govern the post-petition Cash Management System relationship between the Debtor and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.

7. The Debtor is authorized to continue using the Corporate Cards and to pay in the ordinary course of business any amounts owing prepetition or post-petition on account of the Corporate Cards.

8. The Debtor is authorized to pay or reimburse its Banks and service providers in the ordinary course of business for any Bank Claims arising prior to the Petition Date.

9. The Banks are authorized and directed without the need for further order of this Court to in the ordinary course of business: (a) continue to administer, service, and maintain, the Bank Accounts as such accounts were administered, serviced, and maintained prior to the Petition

Date, without interruption and in the ordinary course; (b) receive, process, honor, and pay any and all checks, drafts, wires, ACH transfers, electronic fund transfers, payment orders, or other items presented, issued, or drawn on the Bank Accounts (collectively, the "Disbursements") on account of a post-petition claim or a prepetition claim for which payment has been specifically authorized by this Court; and (c) debit the Bank Accounts for: (i) all undisputed prepetition bank and service fees outstanding as of the date hereof, if any, owed to the Banks for the maintenance of the Cash Management System; (ii) all checks drawn on the Debtor's Bank Accounts which were cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; and (iii) all checks or other items deposited in one of the Debtor's Bank Accounts with such Bank prior to the Petition Date, which have not been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the applicable Debtor was responsible for such items prior to the Petition Date.

10. Subject to the provisions of this Final Order, the Banks are authorized to rely on the representations of the Debtor as to which Disbursements are authorized to be honored or dishonored, whether or not such Disbursements are dated, drawn, or issued prior to, on, or subsequent to the Petition Date, and whether or not the Banks believe the payment is authorized by an order of the Court. The Banks shall not be deemed in violation of this Final Order and shall have no liability for relying on such representations by the Debtor, without any duty of further inquiry, or honoring any Disbursement that is subject to this Final Order either (a) at the direction of the Debtor, (b) in the good faith belief that this Court has authorized such prepetition Disbursement to be honored, or (c) as a result of an innocent mistake made despite implementation of reasonable item-handling procedures. To the extent that the Debtor directs that any

Disbursement be dishonored or any Bank inadvertently dishonors any Disbursements, the Debtor may issue replacement Disbursements consistent with the orders of this Court.

11. The Banks are further authorized to (a) honor the Debtor's directions with respect to the opening or closing of any Bank Account, and (b) accept and hold, or invest, the Debtor's funds in accordance with the Debtor's instructions, and the Banks shall have no liability to any party for relying on such representations or instructions.

12. To the extent any other order is entered by this Court authorizing the Banks to honor checks, drafts, ACH transfers, or other electronic funds transfers or any other withdrawals made, drawn, or issued in payment of prepetition claims, the obligation to honor such items shall be subject to this Final Order.

13. The Debtor shall serve a copy of this Final Order on the Banks within two (2) business days of the entry of this Final Order, and upon any bank at which the Debtor opens a new bank account, immediately upon the opening of such new account.

14. In connection with the ongoing use of its Cash Management System, the Debtor shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, recorded properly, and distinguished between prepetition and post-petition transactions. The Debtor and the Banks may agree, without further order of this Court, to implement any changes to the Cash Management System and procedures in the ordinary course of business and not inconsistent with this Final Order that it deems appropriate in their discretion, including, without limitation, closing any of the Bank Accounts or opening new bank accounts as set forth herein.

15. The Debtor is authorized to continue to use its existing Business Forms without alteration or change and without the designation "Debtor in Possession" imprinted upon them;

*provided, however,* once the Debtor's existing check stock has been exhausted, the Debtor shall, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks; *provided further* that, with respect to checks which the Debtor or its agents print themselves, the Debtor shall begin printing the "Debtor in Possession" legend and the bankruptcy case number on such items within ten (10) days of the date of entry of this Final Order.

16. Nothing in this Final Order nor any actions taken hereunder: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor or its estate; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate to contest the validity, priority, or amount of any claim against the Debtor or its estate; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate with respect to any and all claims or causes of action against any third party; or (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtor.

17. Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be effective and enforceable immediately upon entry hereof.

18. The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.

19. Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

20. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

# EXHIBIT C

## Cash Management System Schematic


Investment Account
Morgan Stanley x6883
funding wires
as needed
Stripe receipts
Receipts Account
SVB x6978
periodic transfers
Platform, ad &
insurance receipts
Main Operating Account
SVB x6963
SVB sweep
program
nightly, both ways
Cash Sweep Account
SVB x8728
95%
5%
TAS Interest Bearing
Account
SVB x3359
Chase xx8238
Adequate Assurance
Account
SVB x5892
All outbound payments
Vendors, payroll, cards, wires
Cash entering the company
Cash leaving the company
Internal movement of the company's own cash
Dashed: not one of the seven accounts