**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARACTER TECHNOLOGIES, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11603 ([___]) |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO (A) PAY PREPETITION WAGES, EMPLOYEE BENEFITS OBLIGATIONS, AND OTHER COMPENSATION, AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED ADMINISTRATIVE OBLIGATIONS; AND (II) GRANTING RELATED RELIEF**

The debtor and debtor in possession in the above-captioned case (the "Debtor") hereby submits this motion (this "Motion") for entry of interim and final orders substantially in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order" and, together with the Interim Order, the "Proposed Orders"), (i) authorizing the Debtor, in its discretion, to (a) pay Prepetition Employee Obligations (as defined below) and related expenses arising under or related to the Employee Compensation and Benefits Programs (as defined below) and (b) continue its Employee Compensation and Benefits Programs (and as may be amended, renewed, replaced, modified, revised, supplemented, or terminated from time to time and in the ordinary course of business) in effect as of the Petition Date (as defined below) and pay related administrative obligations; and (ii) granting related relief. In support hereof, the Debtor relies on the *Declaration of Colin M. Adams in Support of the Debtor's Chapter 11 Petition and First Day*

[1] The Debtor and the last four digits of its taxpayer identification number are: Character Technologies, Inc. (8842). The Debtor's mailing address for purposes of the chapter 11 case is 700 El Camino Real, Suite 120, P.O. Box 1152, Menlo Park, CA 94025.

*Motions* (the "First Day Declaration")[2] filed concurrently herewith, and further represents as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. Pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtor confirms its consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this chapter 11 case and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a), 362(d), 363(b), 507(a), and 541 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

**RELIEF REQUESTED**

4. The Debtor hereby requests entry of the Proposed Orders (i) authorizing, but not directing, the Debtor, in its discretion, to (a) pay all Prepetition Employee Obligations (as defined below) and related expenses arising under or related to Employee Compensation and Benefits Programs (as defined below) and (b) continue their Employee Compensation and Benefits

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

Programs (as may be amended, renewed, replaced, modified, revised, supplemented, or terminated from time to time and in the ordinary course of business) in effect as of the Petition Date (as defined below) and pay related administrative obligations; and (ii) granting related relief.

5. The Debtor further requests entry of the Proposed Orders: (a) authorizing all applicable banks and other financial institutions (collectively, the "Banks"), when requested by the Debtor in its discretion, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers, on account of the Prepetition Employee Obligations (defined below), whether such checks or other requests were submitted before, on, or after the Petition Date; (b) authorizing the Banks to rely on the representations of the Debtor as to which checks and payments are subject to this Motion; (c) providing that the Banks shall, at the discretion of the Debtor, receive, process, honor, and pay all prepetition and post-petition checks and fund transfers on account of the Prepetition Employee Obligations that had not been honored and paid as of the Petition Date; and (d) authorizing the Debtor to issue new post-petition checks or effect new post-petition fund transfers to replace any checks, drafts, and other forms of payment which may be inadvertently dishonored or rejected.

## BACKGROUND

6. On October 12, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this chapter 11 case, and no official committee of unsecured creditors has been appointed.

7. The Debtor is a first in kind artificial intelligence ("AI") entertainment platform that allows users to have immersive, multimodal experiences with fictional or imagined characters. What started as a platform to have one-on-one chats tailored to user preferences, has evolved to

become a category leader in entertainment AI. Today, the Character.AI platform generates stunning visuals that become part of a story, creates dynamic video content with AI characters, and actively augments videos and stories with rich audio experiences to enhance immersion. In its 4-year lifespan as an active platform, Character has amassed a large and engaged user base. The burgeoning and evolving field of AI entertainment, however, has proven to be costly to develop and grow. These high costs, coupled with potential litigation related liabilities and regulatory engagement have contributed to the Debtor's inability to generate sufficient cash flows to support its business in the present form. The Debtor has commenced this case to engage in value-maximizing transactions for the benefit of its stakeholders.

8. Additional factual background regarding the Debtor, including its business operations, its corporate and capital structure, and the events leading to the filing of this chapter 11 case, is set forth in the First Day Declaration and incorporated herein by reference.

**A. THE DEBTOR’S WORKFORCE**

9. As of the Petition Date, the Debtor employs 18 active, full-time employees (the “Employees”), 8 of whom are expected to remain employed by the Debtor through key portions of this case, and who are critical to the Debtor’s ability to continue operating its business during the chapter 11 case. None of the Employees is employed on a part-time basis nor is any represented by a union or employed pursuant to a collective bargaining agreement.

10. As of September 30, the Debtor employed a total of approximately 86 full-time employees. As part of the proposed transaction with Disney Worldwide Services, Inc. (“Disney”), however, prepetition, 66 of those employees were offered, and accepted, employment with Disney (the “Transferring Employees”). Of those, 56 have formally resigned from their employment with the Debtor. The remaining ten (10) Employees that have not yet transferred (the “Remaining

Transferring Employees") are holders of H-1b, TN, or F-1 visas. Due to the expedited nature of the transaction with Disney, the Remaining Transferring Employees remain in the process of having the U.S. government update their work visas so that such employees can change employers without losing their immigration status. The Debtor anticipates that the Transferring Employees will resign from their employment with the Debtor shortly after the Petition Date; however, while they remain employees of the Debtor, they continue to provide services to the Debtor.

11. The Debtor also supplements its workforce by retaining individuals and vendors with specialized expertise as independent contractors (the "Independent Contractors"). The number of Independent Contractors employed by the Debtor at any given time fluctuates depending on the Debtor's business needs. The Independent Contractors fill a number of business needs for the Debtor such as product engineering, safety moderator, data science, security engineering, general business support and more. The use of Independent Contractors allows the Debtor to have a flexible workforce to meet its operational needs in a cost-effective manner. Additionally, from time to time, the Debtor employs certain temporary workers, including college interns (the "Temporary Workers" and together with the Independent Contractors, the "Supplemental Workers" and collectively with the Employees, the "Workforce"). The Temporary Workers who are not college interns are employed through approximately six (6) temporary staffing agencies (the "Staffing Agencies") for, among other things, finance, accounting, legal, technology and administrative support. Like the Debtor's Employees, the Debtor's operations rely on the continued availability and access to the Independent Contractors and Temporary Workers. Without the Supplemental Workers, the Debtor would be required to train and hire replacement staff to perform the same necessary functions.

12. The Debtor's Workforce is made up of, among others, highly skilled individuals who are intimately familiar with the Debtor's business. The Workforce, as with any business entity, performs a variety of critical functions for the Debtor, and their technical knowledge, skills, and understanding of the Debtor's infrastructure, and business operations are essential to, among other things, the success of the chapter 11 case. Importantly, the Debtor's Workforce oversees critical safety functions on the Debtor's platform, which requires daily monitoring to ensure the product is compliant with the highest safety standards. Without the continued service and dedication of the Workforce, it will be difficult, if not impossible, to operate the Debtor's business without an unexpected or inopportune interruption, and to prosecute the chapter 11 case in a manner that will maximize the value of the Debtor's estate. Further, the Debtor's inability to maintain its dedicated Workforce would be detrimental to ensuring the safety of the Debtor's platform and application.

## B. EMPLOYEE AND SUPPLEMENTAL WORKER OBLIGATIONS AND EMPLOYEE BENEFITS PROGRAMS

13. Like many similarly-situated companies, the Debtor maintains certain compensation and benefits programs and pays various administrative fees and insurance premiums in connection therewith (collectively, the "Employee Compensation and Benefits Programs"), including the following (each as defined below): Wage Obligations, Supplemental Worker Obligations, Withholding and Deduction Obligations, Employer Payroll Taxes, Severance Program, Former Employee Severance Amount, Non-Insider Retention Bonus Program, PTO, Parental Leave, Medical Coverage and Dental and Vision Coverage, COBRA Obligations, Former Employee COBRA Amount, Life Disability AD&D, Other Benefits and Reimbursable Expenses, the Employee 401(k) Plan, Payroll Processing Fees, Benefits Manager Fees, the Workers'

Compensation Program, and Director Compensation that the Debtor provides in the ordinary course of business.

14. The Debtor estimates that, as of the Petition Date, there are amounts accrued under or related to the Employee Compensation and Benefits Programs (such amounts, the "Prepetition Employee Obligations"), which the Debtor estimates to be approximately $1,825,000. Of this amount, approximately $1,361,000 will become due and payable during the interim period (the "Interim Caps").

| **Prepetition Employee Obligation** | **Interim Caps** | **Final Amounts** |
|---|---|---|
| Compensation, Withholding and Deduction, and Expense Reimbursement | | |
| Wage Obligations | $250,000 | $250,000 |
| Supplemental Worker Obligations | $560,000 | $560,000 |
| Withholding and Deduction Obligations | $92,000 | $92,000 |
| Severance Program | N/A | $282,000 |
| Former Employee Severance Amount | $61,000 | $61,000 |
| Non-Insider Retention Bonus Program | $86,000 | $258,000 |
| PTO | $114,000 | $114,000 |
| Health and Welfare Coverage and Benefits | | |
| Medical Coverage and Dental and Vision Coverage | $72,000 | $72,000 |
| COBRA Obligations | N/A | $10,000 |
| Life, Disability and AD&D Insurance Coverage | $2,500 | $2,500 |
| Other Benefits and Reimbursable Expenses | $20,000 | $20,000 |
| Wage, Benefit, and Employee Management Service Providers | | |
| Payroll Processing Fees | $2,000 | $2,000 |
| Benefits Manager Fees | $2,500 | $2,500 |
| Employee 401(k) Plan | | |
| Employee 401(k) Plan | $99,000 | $99,000 |
| **TOTAL** | **$1,361,000** | **$1,825,000** |

15. The descriptions of the Employee Compensation and Benefits Programs set forth in this Motion constitute a summary only. The actual terms of the agreements, contracts, plans, programs, and manuals governing the Employee Compensation and Benefits Programs will govern in the event of any inconsistency with the descriptions in this Motion. The Debtor requests authority to honor obligations related to the Employee Compensation and Benefits Programs in the ordinary course of business consistent with prepetition practices, regardless of whether the Debtor inadvertently fails to include a particular benefit or aspect of compensation in the defined term "Employee Compensation and Benefits Programs," and any such omitted benefit or aspect of compensation is hereby included in the defined term "Employee Compensation and Benefits Programs" as used herein and in the Proposed Orders.

16. The Workforce relies on their compensation and benefits to pay their daily living expenses. These individuals and their families could experience significant hardship if the Court does not permit the Debtor to honor prepetition obligations that may be outstanding as of the Petition Date in connection with the Employee Compensation and Benefits Programs and to continue paying the Employee Compensation and Benefits Programs on a post-petition basis, particularly in light of inflation and other macroeconomic pressures. Further, the Debtor's failure to honor its prepetition and post-petition obligations in connection with the Employee Compensation and Benefits Programs could cause attrition that would impact the administration of this chapter 11 case and the Debtor's efforts to maximize the value of its assets.

17. The Debtor seeks to minimize the personal hardship that the Employees and Supplemental Workers would suffer if the Prepetition Employee Obligations were not paid or remitted when due or as expected. The Debtor therefore seeks authorization, but not direction, to (a) pay and honor the Prepetition Employee Obligations, as described in greater detail below; and

(b) continue to honor or elect to modify, change, and/or discontinue obligations related to or on account of the Employee Compensation and Benefits Programs in the ordinary course of business in the Debtor's sole discretion and without the need for further Court approval, subject to applicable law.

## C. COMPENSATION, WITHHOLDING AND DEDUCTION, AND EXPENSE REIMBURSEMENT

### i. Wage and Supplemental Worker Obligations

18. In the ordinary course, the Debtor incurs payroll obligations for base wages and salaries owed to its Employees (the "Wage Obligations"). Employees are paid twice monthly, on the fifteenth and last day of the month. The Debtor funds the Wage Obligations to the Payroll Processor (as defined below) approximately two business days before Employees are paid. Independent Contractors are paid either through the Debtor's Payroll Processor or wire payment, at varying times throughout the month depending on the relevant Independent Contractor's contract with the Debtor and the Debtor remits payments to the Staffing Agencies on either a monthly or weekly basis depending on when invoices are submitted (together, the "Supplemental Worker Obligations").

19. The Debtor's most recent regular payroll was paid on September 30, 2026, in the amount of approximately $995,000 and includes funds for all base wages and salaries due through September 30, 2026 for 86 Employees. The Debtor's next regular payroll for the 18 remaining Employees (for the period ending October 15, 2026) will be paid on or before October 15, 2026 and was funded prepetition. Because the Supplemental Workers are paid at varying times throughout the month, certain of such Supplemental Workers Obligations have accrued prepetition and will come due post petition.

20. As of the Petition Date, the Debtor estimates that it owes approximately $250,000 on account of accrued but unpaid Wage Obligations all of which will become due and owing during the interim period. The Debtor estimates that it owes approximately $560,000 on account of accrued but unpaid Supplemental Worker Obligations, all of which will come due and owing during the interim period.

21. The Debtor seeks authorization, but not direction, to continue to satisfy amounts incurred on account of the Wage Obligations and Supplemental Worker Obligations in the ordinary course of business on a post-petition basis. As of the Petition Date, the Debtor does not believe that the amount due and owing to any Employee, Independent Contractor or Temporary Worker on account of Wage Obligations or Supplemental Worker Obligations together with any Prepetition Employee Obligations will exceed the statutory cap of $17,150 set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, except where the excess is a result of accrued but unpaid PTO that is required to be paid under applicable nonbankruptcy law at the conclusion of the Employee's employment.

**ii. Payroll Processing Fees**

22. The Debtor uses Rippling (the "Payroll Processor") to provide services and administer payroll, which includes calculating and processing gross-to-net payroll, issuing payroll payments to the appropriate funds transfer networks, generating pay statements, and coordinating the payment of any Deductions or other applicable withholdings, including withholding, remittance, reporting of payroll taxes (including the Employer Payroll Taxes (as defined below)) for the Employees.

23. The ongoing services of the Payroll Processor are imperative to the smooth functioning of the Debtor's operations and payroll processing. The Debtor remits all fees owed to the Payroll Processor on a bi-weekly basis when it funds payroll.

24. The Debtor pays the Payroll Processor a fixed fee of $60,000 per year, plus approximately $1,000 variable fee each month for its services (the "Payroll Processing Fees"). The Debtor estimates that, as of the Petition Date, there are $2,000 in accrued but unpaid obligations owed on account of the Payroll Processing Fees.

**iii. Withholding and Deduction Obligations**

25. Certain federal and state laws require that the Debtor withhold certain amounts from Employees' gross pay related to federal, state, and local income taxes for remittance to the appropriate federal, state, or local taxing authorities or as required by statute including for garnishments, child support, and Social Security and Medicare taxes (the "Withholding Obligations").

26. The Debtor also routinely deducts certain amounts from Employees' paychecks, including pre-tax and after-tax deductions payable pursuant to certain employee benefit plans discussed herein, such as an Employee's share of healthcare benefits and insurance premiums, 401(k) contributions, garnishments and miscellaneous deductions (collectively, the "Deductions," and together with the Withholding Obligations, the "Withholding and Deduction Obligations") and forward such amounts to various third-party recipients.

27. As of the Petition Date, the Debtor believes that they have deducted but not yet remitted to the appropriate third-party payees approximately $92,000 in Withholding and Deduction Obligations, all of which must be remitted during the Interim Period.

28. Any amounts held by the Debtor on account of the Withholding and Deduction Obligations generally are held in trust by the Debtor and are not property of its estate. As such, the Debtor does not need authorization to remit such payments to the appropriate third parties. Nonetheless, out of an abundance of caution, the Debtor requests authorization to remit all outstanding prepetition amounts deducted on account of the Withholding and Deduction Obligations and to continue to deduct and remit the Withholding and Deduction Obligations on a post-petition basis in the ordinary course of business consistent with their prepetition practices.

**iv. Employer Payroll Taxes**

29. In addition to the Withholding and Deduction Obligations described above, the Debtor is required by applicable statutes to match from its own funds Social Security taxes and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment and disability insurance (the "Employer Payroll Taxes"), to the appropriate taxing authorities.

30. The Debtor funds the Employer Payroll Taxes when it remits its payroll amounts to the Payroll Processor who then remits the appropriate amounts on account of Employer Payroll Taxes. The Debtor believes as of the Petition Date there are no accrued but unpaid Employer Payroll Taxes that have not been remitted to the appropriate governmental authorities. The Debtor seeks authorization, but not direction, to remit the Employer Payroll Taxes and to continue to honor and process the Employer Payroll Taxes on a post-petition basis in the ordinary course of business and consistent with past practices.

**v. Severance Program and Non-Insider Retention Bonus Program**

31. The Debtor has historically, from time to time, offered severance in the ordinary course of its business pursuant to various policies. Before the Petition Date, upon recommendation

to and approval from the Debtor's board of directors, the Debtor implemented a severance program for all full-time Employees (for both insiders (as defined by section 101(31) of the Bankruptcy Code) and non-insiders) who will be employed on the Petition Date and are expected to remain employed through key periods of the chapter 11 case (the "Severance Program"). The Debtor likewise implemented a retention bonus program for non-insiders of the Debtor who are likewise expected to remain employed through key periods of the chapter 11 case (the "Non-Insider Retention Bonus Program"). For the avoidance of doubt, neither the Severance Program nor the Non-Insider Retention Bonus Program are expected to apply to the Transferring Employees.

*a. Severance Program*

32. The Severance Program offers all the Debtor's Employees two months of salary upon termination of their employment by the Debtor without cause. The Debtor designed the Severance Program by considering the critical Employees needed for the chapter 11 efforts, analyzing the Debtor's historical practices, and researching the market for programs offered by similarly-situated companies.

33. The Debtor requests approval of the Severance Program on a final basis only. The Debtor's goal in this case is to engage in a value-maximizing transaction that it hopes will bring meaningful recoveries to creditors. The Debtor's continued operation of its platform is a critical element of this goal. The platform only works and this case can only be administered with the continued employment of the Debtor's limited remaining Employees. Furthermore, the Debtor is likely to winddown its operations following a sale of all or a portion of the Debtor's assets. Maintenance of the Severance Program is critical to sustaining the Employees' morale and loyalty during this difficult period. Failure to maintain the Severance Program will undermine the Debtor's ability to ensure the Debtor's operations continue at least through the sale process. For

the avoidance of doubt, the Debtor is not seeking at this time, and does not expect the Severance Program will be relevant for the Remaining Transferring Employees.

34. Two of the Debtor's current Employees (the General Counsel and Head of People) are likely "insiders" as such term is defined in 11 U.S.C. § 101(31). Each is critical to the function of the Debtor and its efforts during chapter 11. The Debtor seeks to honor the Severance Program for the insiders in addition to non-insiders and believes it is able to do so in accordance with section 503(c)(2) of the Bankruptcy Code, as described in more detail below.

35. Finally, one of the Debtor's Former Employees (defined below), who is not a Transferring Employee, was terminated shortly before the Petition Date and was offered a severance payment of $58,000 plus $3,000 to for COBRA payments (defined below) pursuant to a prior severance program (the "Former Employee Severance Amount") and upon the Former Employee signing a release. As of this filing, to the Debtor's knowledge, the Former Employee has not executed the release. To the extent such Former Employee executes the release, the Debtor requests authority to honor the Former Employee Severance Amount in the interim period.

*b. Non-Insider Retention Bonus Program*

36. Before commencing this chapter 11 case, the Debtor implemented the Non-Insider Retention Bonus Program for approximately 6 Employees, which, for the avoidance of doubt does not include any "insiders" nor does it include the Transferring Employees. The Employees eligible for the Non-Insider Retention Bonus Program include members of the Debtor's trust and safety operation teams (engineers, technologists and specialists) and program managers and associate program managers for the Debtor's trust and safety operations. The Debtor executed the Non-Insider Retention Bonus Program prepetition to retain these valuable non-insider Employees whose expertise will be essential to the chapter 11 case and was offered as an incentive to keep

critical non-insider Employees on the job while the Debtor undertakes an expeditious sale process to maximize estate value. Under the Non-Insider Retention Bonus Program, participants will generally receive scheduled payments on the last day of each month for each month they continue to work for the Debtor during the chapter 11 case. If the Debtor terminates an Employee's employment prior to the end of a month during the retention period, other than for cause, such Employee is eligible for a prorated amount under the Non-Insider Retention Bonus Program for the month in which the termination occurs. The Debtor estimates that approximately $86,000 will be due and owing on account of the Non-Insider Retention Bonus Program during the interim period and approximately $282,000 during the final period.

**vi. PTO and Parental Leave**

37. The Debtor provides paid time off for observed holidays and twenty (20) days of time off or time off necessary to comply with applicable law (collectively, the "PTO") to eligible Employees. PTO for eligible Employees is capped once it accrues to thirty (30) days. The Debtor additionally offers parental leave ("Parental Leave") of 20 weeks for birthing parents and 12 weeks for non-birthing parents for eligible Employees.

38. These forms of compensation are usual, customary, and necessary if the Debtor is to retain qualified employees to operate its business. The current value of accrued and unused PTO is approximately $114,000. In the event of termination of an Employee, prepetition earned but unused PTO may become due and in accordance with applicable state law. Subject to the terms of the Interim and Final Orders, the Debtor seeks authorization, but not direction to pay any prepetition amounts due with respect to earned but unused PTO and to continue its PTO policies in the ordinary course of business on a post-petition basis. The Debtor additionally seeks

authorization to offer Parental Leave for any Employees who may commence such leave after the Petition Date.

**D. HEALTH AND WELFARE COVERAGE AND BENEFITS**

39. The Debtor offers health and welfare benefits to eligible Employees for medical, dental, and vision coverage, and certain other welfare benefits, including life, disability insurance, and other insurance benefits (collectively, the "Health and Welfare Coverage and Benefits"). Failure to continue to honor the Health and Welfare Coverage and Benefits could cause Employees to experience severe hardship and make it difficult for the Debtor to retain the Employees.

40. The Debtor asserts that it is authorized to continue the Health and Welfare Coverage and Benefits in the ordinary course; however, out of an abundance of caution, the Debtor seeks authorization, but not direction, to continue the Health and Welfare Coverage and Benefits on a post-petition basis in the ordinary course of business (including honoring any prepetition obligations that may be outstanding) and consistent with its prepetition practices.

**i. Medical Coverage**

41. The Debtor offers its Employees and Employees' dependents medical insurance benefits through Anthem Blue Cross Blue Shield and Kaiser Permanente (together, the "Medical Plans").

42. The Debtor contributes 100% toward payment of its Employees' premiums under the Medical Plans and 80% toward payment of premiums for Employees' partners or spouses, and dependents under the Medical Plans, with the remaining amounts deducted from participating Employees' paychecks. Premiums in respect of the Medical Plans are paid monthly. As of the Petition Date, the Debtor estimates that it has accrued approximately $66,000 in the aggregate on account of the Medical Plans.

**ii. Dental and Vision Coverage**

43. The Debtor provides eligible Employees dental insurance coverage (the "Dental Plan") and vision insurance coverage (the "Vision Plan") through plans administered by Principal.

44. The Debtor contributes 100% toward payment of its Employees' premiums under the Dental Plan and Vision Plan and 80% toward payment of premiums for Employees' partners or spouses, and dependents under the Dental Plan and Vision Plan, with the remaining amounts deducted from participating Employees' paychecks. Premiums in respect of the Dental Plan and Vision Plan are paid monthly. As of the Petition Date, the Debtor estimates that accrued and outstanding prepetition obligations related to the Dental Plan and Vision Plan are $6,000.

**iii. Flexible Spending Plans**

45. Eligible Employees have the opportunity to contribute to a variety of spending accounts funded with pre-tax dollars: (i) a Health Savings Account (the "HSA"), (ii) a Flexible Spending Account (the "Health Care FSA"), or (iii) a Dependent Care Flexible Spending Account (the "Dependent Care FSA" and together with the HSA and the Health Care FSA, the "Flexible Spending Plans").

46. The HSA allows eligible Employees to make contributions to a personal, tax-free, interest-bearing savings account that can be used for healthcare expenses. The Debtor does not contribute any amounts to Employees' HSAs and therefore is not seeking to make any payments with respect to the HSAs but is seeking authority to continue to offer such benefits in the ordinary course of business.

47. The maximum annual contribution to the Health Care FSA for year ending 2025 was $3,300 and can be used by eligible Employees to pay for medical expenses, dental expenses, and visions expenses not otherwise covered by the Employee's health insurance. The maximum

annual contribution to the Dependent Care FSA for year ending 2025 was $5,000 for married couples filing jointly and $2,500 for married individuals filing separately and can be used by eligible Employees to cover the costs of daycare for children or home care for disabled family members.

48. The Debtor deducts an average of approximately $1,617 from participating Employees' Wage Obligations on account of the Employee contributions to the Health Care FSA or Dependent Care FSA on a semi-monthly basis. Presently, approximately three Employees contribute to either the Health Care FSA or Dependent Care FSA. The Flexible Spending Plans are Employee funded and therefore no amounts are owed by the Debtor as of the Petition Date.

**iv. COBRA Obligations**

49. Pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), certain former employees (the "Former Employees") of the Debtor (collectively, the "COBRA Participants") may continue insurance coverage under the Health Plans, the Dental Plan, the Vision Plan, the Health Care FSA and the HSA after the termination of their employment (the "COBRA Benefits"). COBRA Participants are entitled by law to receive COBRA Benefits for up to 18 months, and in certain instances, up to 36 months, after termination of their employment. Potential COBRA Participants are responsible for paying all premiums associated with the COBRA Benefits. The Debtor administers the COBRA Benefits, including providing all required notifications, billing and collecting premiums from the COBRA Participants, coordinating enrollment information with the Benefits Manager (defined below), and providing customer service and support for COBRA Participants. The Debtor pays for COBRA Benefits upon use on behalf of the participating individuals. In connection with the Severance Program, the Debtor agreed to cover two months of COBRA premiums to all eligible Employees upon termination of

their employment with the Debtor, which amount will be paid out in a lump sum when the Employee is terminated. The Debtor estimates that there are $10,000 accrued and outstanding prepetition obligations in connection with the COBRA Benefits as of the Petition Date.

50. Failure to comply with the requirements of COBRA can subject the Debtor to penalties of up to $110 per day per qualified beneficiary (with a minimum penalty of $15,000 for more than *de minimis* violations), actions by the Department of Labor, and civil lawsuits by former employees to recover their benefits. *See, e.g.*, 29 C.F.R. § 2575.502c-6. Accordingly, the Debtor seeks authorization, but not direction, to (i) continue to offer the COBRA Benefits in the ordinary course to eligible individuals, including to full-time Employees that become eligible post-petition, and (ii) honor all related obligations post-petition in the ordinary course of business and consistent with its prepetition practices.

**v. Life, Disability, and AD&D Insurance Coverage**

51. The Debtor provides or sponsors, as applicable, (a) basic life insurance, as well as accidental death and dismemberment insurance (the "Basic Life and AD&D Insurance") administered by Principal for eligible Employees; (b) an option for eligible Employees to purchase supplemental life insurance (the "Supplemental Life Insurance"); and (c) short- and long-term disability insurance to all active Employees (fully paid by the Debtor), which is administered by Principal ("Disability Insurance") (collectively, the "Life, Disability, and AD&D Insurance Coverage").

52. The Debtor's total monthly costs in connection with Disability Insurance coverage are approximately $2,800. As of the Petition Date, the Debtor believes that $2,500 is outstanding with respect to the Life, Disability, and AD&D Insurance Coverage. The Debtor requests authority

to continue honoring its obligations under the Life, Disability, and AD&D Insurance Coverage post-petition in the ordinary course of business and consistent with its prepetition practices.

**vi. Benefits Manager Fees**

53. The Debtor uses One Digital (the "Benefits Manager") to assist with the administration of the Debtor's Health and Welfare Coverage and Benefits. The Benefits Manager sources, reviews and updates the Health and Welfare Coverage and Benefits plans that are offered to the Employees and serves as a resource for both the Debtor's human resource department and the Employees.

54. The ongoing services of the Benefits Manager are imperative to the smooth functioning of the Debtor's operations. The Debtor pays the Benefits Manager $5,700 per month, for its services (the "Benefits Manager Fees"). The Debtor estimates that, as of the Petition Date, there are $2,500 in accrued but unpaid obligations owed on account of the Benefits Manager Fees.

**vii. Other Benefits and Reimbursable Expenses**

55. The Debtor provides a variety of miscellaneous other benefits for eligible Employees including, among others, wellness stipends, commuter assistance stipends, mobile and Wi-Fi stipends, AI tools stipends, and certain meals (collectively the "Other Benefits" and such expenses the "Reimbursable Expenses"). The Debtor expects that the remaining Employees will continue to incur modest amounts of Reimbursable Expenses related to the Other Benefits throughout the chapter 11 case.

56. Certain of the Reimbursable Expenses are paid for by the Employee up front who then applies for reimbursement of such expense by submitting an expense report to the Debtor. Without reimbursement, Employees may be personally liable for any unpaid obligations. In connection with the Other Benefits, the Debtor also historically provided corporate credit cards

(the "Corporate Credit Cards") serviced by Ramp Business Corporation ("Ramp"), each in the Employee's own name.[3] Statements for charges accrued on the Corporate Credit Cards are sent to the Debtor and the Debtor remits payment on account of such charges directly to Ramp. Employees are not liable for any accrued and unpaid charges on the Corporate Credit Cards.

57. As of the Petition Date, the Debtor estimates approximately $20,000 is outstanding with respect to the Other Benefits, either through a balance on the Corporate Credit Cards, or outstanding in Reimbursable Expenses. The Debtor requests authority to continue honoring its obligations under the Other Benefits post-petition in the ordinary course of business and consistent with its prepetition practices.

**E. WORKERS' COMPENSATION PROGRAM**

58. The Debtor provides workers' compensation insurance for its Employees to cover, among other things, workers' compensation and employer liability for accidents, death, or disease sustained by employees in the course of their employment (the "Workers' Compensation Program"). The Debtor maintains workers' compensation insurance for its workers with Travelers.

59. There are presently no open claims with Travelers, and no claimants are presently receiving any workers' compensation payments.

60. The Workers' Compensation Program is also subject to a regular audit that may result in an adjustment of the premium thereunder (the "Audit"). As such, to ensure that the Debtor

[3] As described in more detail in the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Debtor to (A) Continue to Operate Its Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, and (C) Maintain Existing Business Forms; (II) Extending the Time to Comply With Section 345(B) of the Bankruptcy Code; and (III) Granting Related Relief* (the "Cash Management Motion") filed contemporaneously herewith, the Debtor also uses the Corporate Credit Cards to pay for certain vendor charges. In historical practice, individual Employees would set up the recurring charges with vendors on the Corporate Credit Cards in their name. The Debtor is not seeking relief with respect to such vendor charges in this motion, but rather through the Cash Management Motion.

is able to timely pay amounts that may be determined to be due and owing as a result of the Audit in the ordinary course of this chapter 11 case, the Debtor requests authority to pay any amounts that may become due and owing in respect of the Audit during this chapter 11 case in the ordinary course and without the need for further court order.

**F. EMPLOYEE 401(K) PLAN**

61. As of the Petition Date, the Debtor maintains a retirement savings plan for the benefit of its full-time Employees that satisfies the requirements of section 401(k) of the Internal Revenue Code (the "Employee 401(k) Plan"). Full-time regular Employees are eligible to participate in the Employee 401(k) Plan immediately upon their start date with the Debtor. The Employee 401(k) Plan is administered by Empower. The Debtor withholds pre-tax salary deductions of eligible compensation up to the limits set forth in the Internal Revenue Code. The Debtor matches 25% of Employees' contributions. As of the Petition Date, the Debtor estimates that it owes $99,000 for contributions toward the Employee 401(k) Plan, all of which will come due in the interim period. The Debtor requests authority to continue administering the Employee 401(k) Plan in the ordinary course of business post-petition.

**G. DIRECTOR COMPENSATION**

62. As of the Petition Date, the Debtor's board of directors (the "Board") includes three (3) non-Employee individuals who serve as directors (the "Directors"), and one of whom also sits on a conflicts committee (the "Special Director"), who collectively make up a special committee of the Board (the "Restructuring Committee"). For their service, the Directors, other than the Special Director, receive cash payments of $87,500 per quarter in advance and the Special Director receives $60,000 per month in advance (the "Director Compensation"). As of the Petition Date, the Debtor does not believe that it owes any amounts on account of Director Compensation and

believes that it is authorized to pay any postpetition Director Compensation in the ordinary course. However, out of an abundance of caution, the Debtor seeks authority to continue to pay the Director Compensation on a postpetition basis in the ordinary course of business and consistent with prepetition practices.

## BASIS FOR RELIEF

### I. PAYMENT OF THE PREPETITION EMPLOYEE OBLIGATIONS IS APPROPRIATE UNDER SECTIONS 507(a)(4) AND 507(a)(5) OF THE BANKRUPTCY CODE.

63. The Debtor believes that a substantial portion of the amounts it seeks to pay hereunder are entitled to priority pursuant to sections 507(a)(4) and (a)(5) of the Bankruptcy Code. Section 507(a)(4) of the Bankruptcy Code grants priority to Employee claims for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date up to $17,150 per employee (the "Priority Cap"). 11 U.S.C. § 507(a)(4). Similarly, section 507(a)(5) of the Bankruptcy Code provides the claims for contributions to certain employee benefit plans are also afforded priority treatment to the extent of the number of employees covered by each plan multiplied by $17,150, less any amounts paid pursuant to section 507(a)(4) of the Bankruptcy Code. *Id.* § 507(a)(5). As priority claims, the Debtor is required to pay these claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims given priority under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code for (a) wages, salaries or commissions, including vacation, and sick leave pay earned by an individual and (b) contributions to an employee benefit plan). Notably, to the extent necessary, the Debtor is seeking relief to make any payments on account of Prepetition Employee Obligations above the Priority Cap pursuant to sections 507(a)(4) and (a)(5) of the Bankruptcy Code the Debtor seeks such authority only on a final basis; *provided*, *however*, that the Debtor seeks authority to pay outstanding prepetition amounts on an interim basis on account

of PTO solely to the extent required by applicable state law, in excess of the Priority Cap. Because the vast majority of the Prepetition Employee Obligations the Debtor seeks to pay hereunder (including all of the Prepetition Employee Obligations encompassed by the proposed Interim Order) constitute priority claims, the relief requested herein affects only the timing of payment, and not the amount, and will not prejudice general unsecured creditors. In addition, given the importance of these Employees to the Debtor's operations, such payment is warranted under section 363(b)(1) of the Bankruptcy Code and the doctrine of necessity as explained further below.

64. The Debtor's Workforce is essential to the success of the chapter 11 case and the Debtor's business. As such, payment of the Prepetition Employee Obligations at this time is necessary to avoid potential material disruption to the Debtor's ordinary course operations. Finding, attracting, and training new qualified talent would be extremely difficult, particularly given the current market for AI talent and the Debtor's situation. The additional uncertainty created by needing to expend time, manpower, and money recruiting and training new personnel at a critical time would be non-accretive. In light of the Debtor's ongoing monetization efforts, losing the Debtor's significant talent base would create additional challenges to maximizing value in the chapter 11 case.

## II. PAYMENT OF THE PREPETITION EMPLOYEE OBLIGATIONS IS APPROPRIATE PURSUANT TO SECTION 363(b) OF THE BANKRUPTCY CODE AND THE DOCTRINE OF NECESSITY.

65. Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999)

(collecting cases); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of certain prepetition wages); *In re Phx. Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (requiring the debtor to show a "good business reason" for a proposed transaction under section 363(b)).

66. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may permit payments of prepetition obligations prior to confirmation of a plan and emergence from chapter 11 when essential to the continued operation of a debtor's business. Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "doctrine of necessity."

67. Under the "doctrine of necessity," bankruptcy courts may authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor. *In re Lehigh and New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (recognizing necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to conduct of business until their pre-reorganization claims have been paid");

*In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

68. Although the "doctrine of necessity" predates the Bankruptcy Code, *see Miltenberger v. Logansport Ry. Co.,* 106 U.S. 286, 309 (1882), the modern application of the doctrine of necessity is grounded in specific provisions of the Bankruptcy Code, including sections 105(a), 1107(a), and 1108. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (fiduciary duties implicit in section 1107(a) of the Bankruptcy Code justify the "preplan satisfaction of a prepetition claim" where necessary to preserve going concern value). The doctrine, largely unchanged from the Court's reasoning in *Miltenberger,* is a widely accepted component of bankruptcy jurisprudence. *See, e.g., Just for Feet, Inc.*, 242 B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy the debtor's business by refusing to deliver new inventory on the eve of debtor's key sales season); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (affirming order authorizing payment of prepetition wages, salaries, expenses and benefits).

69. Paying the Prepetition Employee Obligations is warranted under this authority and the facts of the chapter 11 case and will benefit the Debtor's estate and its stakeholders by allowing the Debtor's business operations to continue without interruption. Without the requested relief, Employees at all levels of the Debtor's organization would leave for alternative employment. Such a development would deplete the Debtor's already thin workforce, thereby hindering the Debtor's ability to monetize its assets and effectuate a value-maximizing disposition of its businesses. The loss of valuable Employees and Supplemental Workers and the resulting need to recruit new

personnel to replenish the Debtor's workforce would be distracting and counterproductive at this critical juncture. Further, if the Debtor loses valuable Employees and Supplemental Workers, it will incur significant expenses in locating, recruiting, and training replacements that may far exceed the costs of the Employee Compensation and Benefits Programs for a lost Employee or Supplemental Worker. Indeed, the Debtor believes that if it does not pay the Prepetition Employee Obligations, the remaining Employees and Supplemental Workers may become demoralized and unproductive because of the significant financial strain and other hardship many of the Employees will experience as a result.

70. Therefore, the Debtor respectfully submits that the continuation of the Employee Compensation and Benefits Programs and payment of the Prepetition Employee Obligations is essential to the success of this chapter 11 case, represents an exercise of the Debtor's sound business judgment, and is in the best interests of the Debtor's estate, its creditors and all stakeholders.

## II. PAYMENT OF OBLIGATIONS UNDER THE SEVERANCE AND NON-INSIDER RETENTION BONUS PROGRAMS IS APPROPRIATE.

71. As described above and in more detail in the First Day Declaration, the Debtor cannot operate without its human capital. As the Debtor makes its transition into chapter 11 and engages in the sale process, the Debtor's remaining Employees will play a crucial role in maximizing value for all stakeholders. The Debtor is therefore acutely focused on the critical task of ensuring that its remaining Employees are appropriately compensated and incentivized to remain with the Debtor through the chapter 11 process. To that end, the Debtor seeks authority to continue its Severance Program to both insiders and non-insiders, and continue the Non-Insider Retention Bonus Program.

72. Pursuant 11 U.S.C. § 363(c), the Debtor is entitled to use property of the estate in the ordinary course of its business, without prior approval. The Bankruptcy Code also allows a debtor-in-possession to use property of the estate "other than in the ordinary course of business" where the debtor can offer a legitimate business justification for such use. See 11 U.S.C. § 363(b); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (under normal circumstances, courts will defer to a debtor's judgment in using property under Section 363(b) if there is a legitimate business justification); *In re Lionel Corp*., 722 F.2d 1063, 1071 (2d Cir. 1983) (the application of Section 363(b) requires a "good business reason"). The Debtor has historically paid severance to its employees under various policies and programs that have changed over the years. By this Motion, the Debtor seeks to continue offering all Employees payments under the Severance Program in the ordinary course of business.

73. Even if the Severance Program is not considered "ordinary course," it should be approved because the Debtor has a legitimate business purpose. Courts generally approve employee compensation plans and programs that are outside the ordinary course of business pursuant to Section 363(b)(1) of the Bankruptcy Code when (a) a debtor has used proper business judgment in formulating such a program, and (b) the court finds that the program is fair and reasonable. *See, e.g., In re Montgomery Ward Holding Corp*., 242 B.R. at 155 (affirming bankruptcy court approval of the key employee retention program on the basis that debtors showed a "sound business purpose" justifying such approval); *In re Glob. Home Prods., LLC*, 369 B.R. 778, 783-84 (Bankr. D. Del. 2007) ("Compensation issues are normally governed by the business judgment standards, i.e., proof that there is a broad business purpose for an action . . . The reasonable use of incentives and performance bonuses are considered the proper exercise of a debtor's business judgment") (citations omitted); *In re Dana Corp.*, 358 B.R. 567, 584

(Bankr. S.D.N.Y. 2006) (applying business judgment rule to find that debtor's long term incentive plan was within the fair and reasonable business judgment of the debtor).

74. The Severance Program was designed to fairly compensate and incentivize continued performance of the Employees given the uncertainty created by the chapter 11 case. The Debtor at the advice and recommendation of its financial advisor, Areté Partners, and the Debtor’s other advisors determined that the Severance Program is critical to the Debtor’s chapter 11 process and value maximization strategy. Given the importance of developing a comprehensive program for the Employees, the Debtor’s board of directors approved the Severance Program, which is available to all Employees. Therefore, the Debtor requests that the Court to approve, through the Final Order, the payment under the Severance Program to the insiders and non-insiders upon the Debtor’s termination of such Employees’ employment with the Debtor without cause.

75. In the context of employee compensation plans and programs, particularly with respect to insiders, consideration must typically be given to 11 U.S.C. § 503(c)(2), which prohibits severance payments to “insiders” as administrative expense claims in chapter 11 cases absent certain specific findings; namely, that these payments are “part of a program that is generally applicable to all full-time employees” and these payments are “not greater than 10 times the amount of the mean severance pay given to nonmanagement employees during the calendar year in which the payment[s] [are] made[,].”*See* 11 U.S.C. § 503(c)(2).

76. First, the Severance Program is offered to every Employee. *See* First Day Decl., Ex. A ¶ 102. Second, the amount that would come due for the insiders under the Severance Program is $110,000 in total (one will receive $58,000 and the other will receive $52,000). *Id.* ¶ 103. Comparatively, in calendar year 2026, the Debtor has paid a total of $613,000 in

severance obligations across nonmanagement employees, or on average $47,000 per employee.[4] *Id*. Therefore, the total severance obligation under the Severance Program for the two insiders is only approximately 1.2 times (far less than 10 times) greater than the mean severance pay given to nonmanagement employees during the calendar year 2026. *Id*. The Debtor is thus able to satisfy the requirements under the Bankruptcy Code to make payments pursuant to the Severance Program to the two "insider" Employees and the Court should approve such payments pursuant to the Final Order.

77. For similar reasons, the Debtor believes that the Non-Insider Retention Bonus Program should be approved. First, the relevant Employees are not "insiders" under the Bankruptcy Code and relevant case law. *See* 11 U.S.C. § 101(31)(B) (defining insider, stating "if the debtor is a corporation – (i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor; (iv) partnership in which the debtor is a general partner; (v) general partner of the debtor; or (vi) relative of a general partner, director, officer, or person in control of the debtor"); *see also In re Winstar Communications, Inc.*, 554 F.3d 382, 396–97 (3rd Cir. 2009) (explaining that a party may also be considered a "nonstatutory insider," even without actual control of the debtor, when there is a close relationship between debtor and creditor and when transactions between them were not conducted at arm's length). The Employees eligible for the Non-Insider Retention Bonus Program all work in operations for the Debtor, and none of them is an officer or person in control of the Debtor. First Day Decl., Ex. A ¶ 107. These Employees are on the Debtor's trust and safety team and include program managers, specialists and technologists.

[4] The Former Employees (defined below) who received severance include, among others, members of the Debtor's technical staff, product designers, staff security engineers, senior director of product marketing, senior brand designer, executive assistant, people operations coordinate and social media manager. None of these employees has anyone who reports directly to him or her and did not report directly to the Board. *See* First Day Decl., Ex. A ¶ 107. The Debtor thus believes these employees to be nonmanagement.

*Id*. Put simply, the Employees eligible for the Non-Insider Retention Bonus Program are rank and file employees. *Id*. Therefore, the Non-Insider Bonus Program does not trigger application of relevant provisions of Bankruptcy Code section 503(c).

78. Second, as noted, the Debtor's remaining full-time non-insider Employee perform critical functions related to the ongoing operation of the Debtor's application and platform and therefore, in an exercise of the Debtor's business judgment, the Non-Insider Bonus Program should be approved. The Debtor's innovative and nuanced business operations are only known by the Employees, some of whose tenure began when the Debtor was formed. *Id*. ¶ 108. The intimate knowledge these Employees have will be a key component of marketing the Debtor's assets throughout the sale process. *Id*. In addition, so long as the Debtor's platform and application are live, Employees must continue to monitor and implement substantial safety measures. *Id*. This work is crucial to ensure the Debtor's platform can continue to run safely. *Id*.

79. To ensure the Debtor can maintain its operations for a limited period on a post-petition basis through the sale process and winddown, the Debtor requires employment of individuals who are intimately familiar with the Debtor's platform and application, and most critically, who can ensure the Debtor's operations continue to run safely. Providing the Non-Insider Retention Bonus Program is thus necessary to ensure these employees will continue to provide critical services to the Debtor during their ongoing sale process and eventual winddown.

80. Finally, the market for talented individuals is highly competitive in the AI industry. Indeed, Reuters reports that AI companies are competing for a small, elite pool of an estimated "few dozen to around a thousand" engineers and routinely compensate those engineers with

millions of dollars in compensation packages and retention bonuses.[5] The Employees here include trust and safety operations engineers and other talented technical specialists on the Debtor's trust and safety team. *Id*. ¶ 107. As described above, the Non-Insider Retention Bonus Program is only earned upon each month an Employee remains with the Debtor and is therefore appropriately tailored to incentive continued employment. *Id*. ¶ 109. The retention of these Employees will assist the Debtor's efforts to maximize value for all stakeholders. *Id*. Therefore, in an exercise of its business judgment, the Debtor requests authority to continue the Non-Insider Retention Bonus Program pursuant to the Final Order.

## III. SECTION 541 OF THE BANKRUPTCY CODE AUTHORIZES THE PAYMENT OF WITHHOLDING AND DEDUCTION OBLIGATIONS

81. A portion of the Prepetition Employee Obligations constitute funds held in trust for payment to third parties. The payment of the Withholding and Deduction Obligations requested by this Motion will not prejudice the Debtor's estate because such withholdings are held in trust for the benefit of the related payees and, thus, do not constitute property of the Debtor's estate pursuant to section 541 of the Bankruptcy Code. *See* 11 U.S.C. § 541(d); *Begier v. IRS*, 496 U.S. 53, 58-59 (1990). Further, failure to pay these amounts could subject the Debtor and its officers and directors to liability. *See, e.g.*, *In re Sheppard*, 253 B.R. 397 (Bankr. D.S.C. 2000) (officer responsible for a company not paying its federal employment tax liabilities found personally liable for such tax liabilities); *In re Geise*, 151 B.R. 432 (Bankr. N.D. Ohio 1992) (same); *see also* 26 U.S.C. § 6672(a) ("Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to . . . pay over such tax . . . shall, in

---

[5] Anna Tong and Kenrick Cai, *OpenAI, Google and xAI Battle for Superstar AI Talent, Shelling Out Millions*, REUTERS, May 21, 2025, https://www.reuters.com/business/openai-google-xai-battle-superstar-ai-talent-shelling-out-millions-2025-05-21/.

addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.”).

82. Because many of the Withholding and Deduction Obligations are not property of the Debtor’s estate, their application or payment for their intended purposes will not adversely affect the Debtor’s estate or its creditors. To prevent potentially irreparable harm to the morale of the Employees and, in certain cases, to comply with the clear and unambiguous requirements of section 541(b)(7) of the Bankruptcy Code, the Debtor desires to apply and remit the Withholding and Deduction Obligations for the purposes for which the Withholdings and Deductions were taken.

## IV. THE COURT SHOULD WAIVE THE AUTOMATIC STAY AS IT APPLIES TO WORKERS’ COMPENSATION CLAIMS.

83. Section 362(a)(1) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1). Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for “cause.” 11 U.S.C. § 362(d)(1).

84. The Debtor requests authority under section 362(d) of the Bankruptcy Code to permit Employees to proceed with their workers’ compensation claims in the appropriate judicial or administrative forum. The Debtor believes that cause exists to modify the automatic stay because staying the workers’ compensation claims could have a detrimental effect on the financial well-being and Employee morale and lead to the departure of certain Employees and Supplemental

Workers who are critical to the Debtor's chapter 11 efforts. Such departures could cause a severe disruption in the Debtor's business to the detriment of all parties in interest.

## V. THE COURT SHOULD AUTHORIZE THE BANKS TO HONOR AND PROCESS PAYMENTS IN ACCORDANCE WITH THIS MOTION.

85. The Debtor also requests that the Court authorize and direct the Banks when requested by the Debtor, in its discretion, to receive, process, honor, and pay all checks or electronic fund transfers drawn on the Debtor's bank accounts presented for payment of, and to honor all fund transfer requests made by the Debtor related to, the claims that the Debtor requests authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before, on, or after the Petition Date, provided that sufficient funds are available in the applicable bank accounts to cover the checks and electronic fund transfers. The Debtor also requests that the Banks be authorized to rely on the Debtor's designation or representation that any particular check or electronic payment request has been approved pursuant to the Interim Order and the Final Order.

86. The Debtor will have sufficient liquidity to pay the amounts set forth in this Motion in the ordinary course of business and has implemented controls to ensure that prepetition claims will not be paid out except as authorized by this Court. The Debtor therefore submits that the payment-processing procedures described in this Motion are appropriate.

## IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY

87. The Court may grant the relief requested in this Motion immediately if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003; *In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008). The Third Circuit has instructed that irreparable harm is that which "cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). The

Debtor believes an orderly transition into chapter 11 is critical to the viability of its operations and that any delay in granting the relief requested would disrupt the Debtor's operations and cause irreparable harm. The Employees would suffer significant hardship and some may immediately seek alternative employment opportunities if the relief requested herein is delayed, irreparably jeopardizing the viability of the Debtor's ongoing operations. Further, failure to receive the requested relief at the outset of this chapter 11 case would disrupt the "business as usual" message that is critical to the Debtor's ability to stabilize its operations and maintain Employee confidence during this process. The Debtor submits that, for these reasons, among other reasons set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor and its estate.

88. The Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[u]nless the Court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered" Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate without interruption and to preserve value for its estate. Accordingly, the Debtor respectfully requests that the Court waive the fourteen (14)-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

89. Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor or its estate; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate to contest the validity, priority, or amount of any claim against the Debtor or its estate; (c) shall impair, prejudice, waive, or otherwise affect

the rights of the Debtor or its estate with respect to any and all claims or causes of action against any third party; or (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtor. Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

**NOTICE**

90. The Debtor will provide notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the United States Attorney's Office for the District of Delaware; (c) the Internal Revenue Service; (d) the holders of the twenty (20) largest unsecured claims against the Debtor; (e) the Banks; (f) counsel to Disney; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor will serve copies of this Motion and any order entered in respect hereto as required by Local Rule 9013-1(m). The Debtor respectfully submits that, in light of the nature of the relief requested, no further notice is necessary.

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that this Court enter the Interim Order and the Final Order, substantially in the form annexed hereto as **Exhibit A** and **Exhibit B**, respectively, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: October 13, 2026
Wilmington, Delaware

**WILSON SONSINI GOODRICH & ROSATI, P.C.**

*/s/ Erin R. Fay*
Erin R. Fay (No. 5268)
Shane M. Reil (No. 6195)
Heather P. Lambert (No. 6923)
222 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 304-7600
E-mails: efay@wsgr.com
sreil@wsgr.com
hlambert@wsgr.com

*Proposed Counsel to the Debtor and Debtor in Possession*

# **EXHIBIT A**

**Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARACTER TECHNOLOGIES, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11603 (___)<br><br>**Ref. Docket No. __** |

**INTERIM ORDER (I) AUTHORIZING DEBTOR TO (A) PAY PREPETITION WAGES, EMPLOYEE BENEFITS OBLIGATIONS AND OTHER COMPENSATION, (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED ADMINISTRATIVE OBLIGATIONS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtor for entry of this interim order (this "Interim Order") and a final order (the "Final Order"): (i) authorizing, but not directing, the Debtor, in its discretion, to (a) pay the Wage Obligations and related expenses arising under or related to the Employee Compensation and Benefits Programs and (b) continue to provide its Employee Compensation and Benefits Programs in effect as of the Petition Date (and as may be amended, renewed, replaced, modified, revised, supplemented, or terminated from time to time in the ordinary course of business) and pay related administrative obligations; and (ii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that venue of this case and this

[1] The Debtor and the last four digits of its taxpayer identification number are: Character Technologies, Inc. (8842). The Debtor's mailing address for purposes of the chapter 11 case is 700 El Camino Real, Suite 120, P.O. Box 1152, Menlo Park, CA 94025.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is granted on an interim basis as set forth herein.

2. The final hearing on the Motion (the "Final Hearing") is set for _______________ __, 2026 at __:__ a.m./p.m. (prevailing Eastern Time). Any objections or responses to the entry of the proposed Final Order shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on ________ ___, 2026 (the "Objection Deadline"), and shall be served on the following parties or their respective counsel on or before the Objection Deadline: (a) proposed counsel to the Debtor, Wilson Sonsini Goodrich & Rosati, P.C., 222 Delaware Avenue, Suite 800, Wilmington, DE 19801 (Attn: Erin R. Fay, Shane M. Reil, and Heather P. Lambert (emails: efay@wsgr.com, sreil@wsgr.com, and hlambert@wsgr.com)); (b) the Office of the United States Trustee for the District of Delaware, 844 N. King Street, Room 2207, Wilmington, DE 19801 (Attn: Linda Casey (email: Linda.Casey@usdoj.gov)); (c) counsel to Disney; and (d) counsel to any statutory committee appointed in this chapter 11 case. If no objections or responses are filed and served by the Objection Deadline, the Court may enter the Final Order without further notice or hearing.

3. The Debtor is authorized, but not directed, in its discretion, to make cash payments on account of the Prepetition Employee Obligations and related expenses arising under or related to the Debtor's Employee Compensation and Benefits Programs up to $1,361,000 in the aggregate on an interim basis as set forth in the chart below; *provided, however*, that notwithstanding any other provisions of this Interim Order, no payments to any Employee or Former Employee (other than the Former Employee Severance Amount (if such amount arises)) on account of Prepetition Employee Obligations shall exceed the amounts set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code without further order of this Court unless such excess is the result of cash payments for accrued and unpaid PTO that is required to be paid under applicable state law.

| **Prepetition Employee Obligation** | **Interim Cap** |
|---|---|
| **Compensation, Withholding and Deduction, and Expense Reimbursement** | |
| Wage Obligations | $250,000 |
| Supplemental Worker Obligations | $560,000 |
| Withholding and Deduction Obligations | $92,000 |
| Non-Insider Retention Bonus Program | $86,000 |
| Former Employee Severance Amount (if it arises) | $61,000 |
| PTO | $114,000 |
| Health and Welfare Coverage and Benefits | |
| Medical Coverage and Dental and Vision Coverage | $72,000 |
| COBRA Obligations | N/A |
| Life, Disability and AD&D Insurance Coverage | $2,500 |
| Other Benefits and Reimbursable Expenses | $20,000 |
| Wage, Benefit, and Employee Management Service Providers | |
| Payroll Processing Fees | $2,000 |
| Benefits Manager Fees | $2,500 |
| Employee 401(k) Plan | |
| Employee 401(k) Plan | $99,000 |
| **TOTAL** | **$1,361,000** |

4. The Debtor is authorized, but not directed, in its discretion, to: (a) continue its Employee Compensation and Benefits Programs (except, for the avoidance of doubt, the Severance Program, which shall be subject to a final order; *provided, however,* that the Debtor is authorized to pay the Former Employee Severance Amount in the interim period) in effect as of the Petition Date and pay related administrative expenses; and (b) to amend, renew, replace, modify, revise, supplement, or terminate such Employee Compensation and Benefits Programs in the ordinary course of business.

5. The Debtor is authorized, but not directed, in its discretion, to continue the Workers' Compensation Program and make any payments related thereto, including payment of any fees associated with the Workers' Compensation Program and any workers' compensation claim amounts, to the extent that the Debtor determines, in its discretion, that such actions are in the best interests of its estate.

6. The Debtor is authorized, but not directed, in its discretion to perform as required in connection with any Audit related to its Workers' Compensation Program, including payment of any amounts determined to be owing and outstanding in respect thereof during the pendency of this chapter 11 case, without the need for further order of the Court.

7. Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum and the Debtor is authorized, but not directed, to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

8. The Debtor is authorized, but not directed, in its discretion, to: (a) continue utilizing the Payroll Processor and Benefits Manager in connection with the provision of the Employee Compensation and Benefits Programs described in the Motion and to pay or caused to be paid such claims as and when such obligations are due; and (b) pay prepetition amounts owing in the ordinary course of business to such Payroll Processor and Benefits Manager in connection with the Employee Compensation and Benefits Programs.

9. The Debtor is authorized to forward any unpaid amounts on account of Withholding and Deduction Obligations to the appropriate third-party recipients in accordance with the Debtor's prepetition practices and policies.

10. The Debtor is authorized to forward any unpaid amounts on account of Employer Payroll Taxes to the appropriate taxing authorities in accordance with the Debtor's prepetition practices and policies.

11. Notwithstanding anything to the contrary in the Motion, the Debtor shall not be authorized to pay any amounts subject to section 503(c) of the Bankruptcy Code pursuant to this Interim Order.

12. Nothing in this Interim Order nor any actions taken hereunder: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor or its estate; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate to contest the validity, priority, or amount of any claim against the Debtor or its estate; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate with respect to any and all claims or causes of action against any third party; (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion

of the Debtor; or (e) shall create, or is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

13. The requirements of Bankruptcy Rule 6003 are satisfied.

14. Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon entry hereof.

15. The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

16. Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

17. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

# EXHIBIT B

## Final Order

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARACTER TECHNOLOGIES, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11603 (___)<br><br>**Ref. Docket Nos. __ & __** |

**FINAL ORDER (I) AUTHORIZING DEBTOR TO (A) PAY PREPETITION WAGES, EMPLOYEE BENEFITS OBLIGATIONS AND OTHER COMPENSATION, (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED ADMINISTRATIVE OBLIGATIONS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Debtor for entry of an interim order and this final order (the "Final Order"): (i) authorizing, but not directing, the Debtor, in its discretion, to (a) pay the Wage Obligations and related expenses arising under or related to the Employee Compensation and Benefits Programs and (b) continue to provide its Employee Compensation and Benefits Programs in effect as of the Petition Date (and as may be amended, renewed, replaced, modified, revised, supplemented, or terminated from time to time in the ordinary course of business) and pay related administrative obligations; and (ii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that venue of this case and this proceeding is

[1] The Debtor and the last four digits of its taxpayer identification number are: Character Technologies, Inc. (8842). The Debtor's mailing address for purposes of the chapter 11 case is 700 El Camino Real, Suite 120, P.O. Box 1152, Menlo Park, CA 94025.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing thereon were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED on a final basis as set forth herein.

2. The Debtor is authorized, but not directed, in its discretion, to make cash payments on account of the Prepetition Employee Obligations and related expenses arising under or related to the Employee Compensation and Benefits Programs, including in respect of Former Employees, up to $1,825,000 in the aggregate on a final basis as set forth in the chart below; *provided, however*, that notwithstanding any other provisions of this Final Order, no payments to any Employee or Former Employee on account of Prepetition Employee Obligations shall exceed the amounts set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code without further order of this Court unless such excess is the result of cash payments for accrued and unpaid PTO that is required to be paid under applicable state law.

| **Prepetition Employee Obligation** | **Final Amounts** |
|---|---|
| Compensation, Withholding and Deduction, and Expense Reimbursement | |
| Wage Obligations | $250,000 |
| Supplemental Worker Obligations | $560,000 |
| Withholding and Deduction Obligations | $92,000 |
| Severance Program | $282,000 |
| Former Employee Severance Amount | $61,000 |

| | |
|---|---|
| Non-Insider Retention Bonus Program | $258,000 |
| PTO | $114,000 |
| Health and Welfare Coverage and Benefits | |
| Medical Coverage and Dental and Vision Coverage | $72,000 |
| COBRA Obligations | $10,000 |
| Life, Disability and AD&D Insurance Coverage | $2,500 |
| Other Benefits and Reimbursable Expenses | $20,000 |
| Wage, Benefit, and Employee Management Service Providers | |
| Payroll Processing Fees | $2,000 |
| Benefits Manager Fees | $2,500 |
| Employee 401(k) Plan | |
| Employee 401(k) Plan | $99,000 |
| **TOTAL** | **$1,825,000** |

3. The Debtor is authorized, but not directed, in its discretion to: (a) continue its Employee Compensation and Benefits Programs in effect as of the Petition Date and pay related administrative expenses; and (b) to amend, renew, replace, modify, revise, supplement, or terminate such Employee Compensation and Benefits Programs in the ordinary course of business.

4. The Debtor is authorized, but not directed, in its discretion to continue the Severance Program and the Non-Insider Retention Bonus Program, in effect as of the Petition Date and pay related administrative expenses.

5. The Debtor is authorized, but not directed, in its discretion, to continue the Workers' Compensation Program and make any payments related thereto, including payment of any fees associated with the Workers' Compensation Program and any workers' compensation claim amounts, to the extent that the Debtor determines, in its discretion, that such actions are in the best interests of its estate.

6. The Debtor is authorized, but not directed, in its discretion to perform as required in connection with any Audit related to its Workers' Compensation Program, including payment

of any amounts determined to be owing and outstanding in respect thereof during the pendency of this chapter 11 case, without the need for further order of the Court.

7. Pursuant to section 362(d) of the Bankruptcy Code, Employees are authorized to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum and the Debtor is authorized, but not directed, to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program.

8. The Debtor is authorized, but not directed, in its discretion, to: (a) continue utilizing the Payroll Processor and Benefits Manager in connection with the provision of the Employee Compensation and Benefits Programs described in the Motion and to pay or caused to be paid such claims as and when such obligations are due; and (b) pay prepetition amounts owing in the ordinary course of business to such Payroll Processor and Benefits Manager in connection with the Employee Compensation and Benefits Programs.

9. The Debtor is authorized to forward any unpaid amounts on account of Withholding and Deduction Obligations to the appropriate third-party recipients in accordance with the Debtor's prepetition practices and policies.

10. The Debtor is authorized to forward any unpaid amounts on account of Employer Payroll Taxes to the appropriate taxing authorities in accordance with the Debtor's prepetition practices and policies.

11. The Debtor is authorized, but not directed, in its discretion to continue honoring Director Compensation Obligations.

12. Nothing in this Final Order nor any actions taken hereunder: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor or its estate; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate to contest the validity, priority, or amount of any claim against the Debtor or its estate; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate with respect to any and all claims or causes of action against any third party; (d) shall be construed as a promise to pay a claim or continue any applicable program post-petition, which decision shall be in the discretion of the Debtor; or (e) shall create, or is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

13. Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be effective and enforceable immediately upon entry hereof.

14. The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.

15. Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

16. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.