# EXHIBIT B

**Blackline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CHARACTER TECHNOLOGIES, INC.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 26-11603 (BLS)<br><br>**Ref. Docket ~~No~~Nos. 15, 17 & __** |

**NOTICE OF PROPOSED SALE OF ASSETS, STALKING HORSE TRANSACTION AGREEMENT, BIDDING PROCEDURES, AUCTION, AND SALE HEARING**

PLEASE TAKE NOTICE that the above-captioned debtor and debtor-in-possession (the "Debtor") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), on October 12, 2026, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Debtor is seeking to sell, license or dispose of (the "Sale") all or substantially all of its assets (the "Assets") free and clear of all liens, claims, interests, and encumbrances~~. In~~ to the fullest extent authorized by section 363 of the Bankruptcy Code.

PLEASE TAKE FURTHER NOTICE that in connection with the Sale, the ~~Debtor has entered into~~Court has approved the Debtor's designation as a stalking horse agreement, the Stalking Horse Transaction Agreement, dated as of October ~~[●]~~13, 2026 (the "Stalking Horse Transaction Agreement") for the sale or license of certain assets (the "Disney Target Assets") with Disney Worldwide Services, Inc. ("Disney"), free and clear of all liens, claims, interests and encumbrances, subject to the Debtor's acceptance of higher or otherwise better offers in accordance with the Bidding Procedures.

PLEASE TAKE FURTHER NOTICE that by order, dated [●], 2026 [Docket No. [●]] (the "Bidding Procedures Order")[2], the Bankruptcy Court approved certain relief requested in the related motion [Docket No. ~~[●]~~15] (the "Bidding Procedures Motion"), and certain ~~"Bidding Procedures"~~procedures that govern the Sale (the "Bidding Procedures"). The Bidding Procedures also ~~authorize, but do not require, the Debtor to designate any~~contain a process for designation of other Additional Stalking Horse ~~Purchaser pursuant to any Asset Purchase Agreement (an "Additional Stalking Horse Agreement") with respect to such Additional Stalking Horse Purchaser~~Purchasers and related asset purchase agreements for Assets other than the

[1] The Debtor and the last four digits of its taxpayer identification number are: Character Technologies, Inc. (8842). The Debtor's mailing address for purposes of the chapter 11 case is 700 El Camino Real, Suite 120, P.O. Box 1152, Menlo Park, CA 94025.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order.

Disney Target Assets, subject to the Debtor's acceptance of higher or otherwise better offers in accordance with the Bidding Procedures.

Copies of the Bidding Procedures Motion, the Bidding Procedures Order, the Bidding Procedures, and the Stalking Horse Transaction Agreement are available for download at **https://cases.stretto.com/chartech** (the "Case Website") from the Debtor's claims and noticing agent, Stretto, Inc. ("Stretto"). A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtor that may be assumed and assigned in connection with the Sale. **Any interested bidder should contact (i) the proposed investment banker to the Debtor, Houlihan Lokey, Attn: Daniel ~~Cullin~~Cullins (dcullins@hl.com); and (ii) proposed counsel to the Debtor, Wilson Sonsini Goodrich & Rosati, P.C., Attn: Erin R. Fay (efay@wsgr.com) and Shane M. Reil (sreil@wsgr.com).**

- The deadline to submit a bid for any Assets is [**November 20, 2026 at 5:00 p.m. (ET)**].

- Any objections to the Sale or the relief requested in connection with the Sale (a "Sale Objection"), other than a Contract Objection, which shall be governed by the Assumption and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of the Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801 on or before [**November 13, 2026 at 4:00 p.m. (ET)**] (the "Sale Objection Deadline"), and proof of service of such Sale Objection upon the Objection Notice Parties shall be filed with the Court as and when required by the Local Rules; and (e) be served upon the Objection Notice Parties. The "Objection Notice Parties" are as follows: (a) proposed counsel to the Debtor, Wilson Sonsini Goodrich & Rosati, P.C., 222 Delaware Avenue, Suite 800, Wilmington, Delaware 19801 (Attn: Erin R. Fay (efay@wsgr.com) and Shane M. Reil (sreil@wsgr.com)); (b) proposed investment banker for the Debtor, Houlihan Lokey, (Attn: Daniel Cullins (email: dcullins@hl.com)); (c) counsel to Disney, Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, New York, New York 10001 (Attn: Brandon Van Dyke (brandon.vandyke@skadden.com), Ron E. Meisler (ron.meisler@skadden.com), Bryan Uelk (bryan.uelk@skadden.com), and Samuel J. Cammer (samuel.cammer@skadden.com)); (d) counsel to any official committee of unsecured creditors appointed in the chapter 11 case; and (e) the United States Trustee for the District of Delaware, 844 N. King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, Attn: Linda Casey (Linda.Casey@usdoj.gov).

- An auction for the Assets, unless cancelled or adjourned in accordance with the Bidding Procedures Order, will be held on [**November 23, 2026 at 10:00 a.m. (ET)**], at a location to be determined by the Debtor, or virtually via videoconference pursuant to information to be timely provided by the Debtor to the Auction Participants. As soon as practicable following the conclusion of the Auction, the Debtor will file a notice identifying the Winning Bidder(s).

- Following service of a notice of Auction results, parties may raise objections solely with respect to the conduct of the Auction, the Winning Bidder (only if not a Stalking Horse Purchaser), modifications to any Stalking Horse Agreement, and adequate assurance of future performance by a Winning Bidder other than any Stalking Horse Purchaser (each such objection, a "Supplemental Sale Objection") at the Sale Hearing.

- Unless adjourned in accordance with the Bidding Procedures Order, the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the Sale on [**November 24, 2026 at [●] (ET)**, subject to the Bankruptcy Court's availability].

PLEASE TAKE FURTHER NOTICE THAT, if Disney is a Winning Bidder, the Debtor will seek entry of the proposed form of order approving any Sale to Disney (the "Proposed Disney Sale Order") [Docket No. 15-2], which order includes, among others, provisions:

- authorizing and approving a single, interrelated, and integrated transaction, and all acts taken or required to be taken (including the performance, execution, filing, implementation, consummation, entry into, payment, and provision of services) and all terms, obligations, releases, conditions, waivers, limitations, disclaimers, carveouts, and similar provisions of, under, in connection with, in furtherance of, and with respect to (i) the Stalking Horse Transaction Agreement; (ii) that certain Transition Services Agreement, dated September 18, 2026, between Disney and the Debtor (together with all schedules and exhibits thereto, including the Exclusivity and Prepayment Agreement (as defined below), and as amended, restated, or modified from time to time, the "TSA"); and (iii) that certain Exclusivity and Prepayment Agreement, dated September 18, 2026 (together with all schedules and exhibits thereto, the "Exclusivity and Prepayment Agreement") ((i), (ii), and (iii), collectively, the "Transaction"),

- transferring the Disney Target Assets[3] free and clear of all liens, claims, interests, and encumbrances to Disney,

- assuming the TSA pursuant to sections 363 and 365 of the Bankruptcy Code,

- finding that the Debtor has demonstrated good, sufficient, and sound business purposes to promptly consummate the Transaction, including assumption of the TSA, that doing so is an appropriate exercise of the Debtor's business judgment and is in the best interests of the Debtor, its estate, its creditors, and other parties in interest, and that certain special committees of the Debtor's board of directors (the "Board"), the members of which are each disinterested with respect to the Transaction, led the strategic direction of the marketing process and all negotiations with Disney, and have recommended the Board approve the Transaction, including the Stalking Horse Transaction Agreement, the Exclusivity and Prepayment Agreement, the TSA (including assumption thereof, and in connection with such, the assumption of the Exclusivity and Prepayment Agreement),

- finding that the Debtor, consistent with its fiduciary duties, conducted a robust and extensive marketing process overseen by the Debtor's special committees both before and after the commencement of this Chapter 11 Case, which was substantively and procedurally fair to all parties and all potential bidders, and afforded a full, fair, and reasonable opportunity for any interested party to make a higher or otherwise better offer to purchase the Disney Target Assets,

[3] The Disney Target Assets exclude PII (as defined by section 101(41A) of the Bankruptcy Code).

- finding that the Transaction, including the Stalking Horse Transaction Agreement was negotiated at arm's length, in good faith, and without collusion pursuant to section 363(m) of the Bankruptcy Code,

- finding that neither Disney nor its related Buyer Parties is or are a successor to the Debtor, have *de facto* merged with or into the Debtor, is or are a joint employer, co-employer or single integrated enterprise with the Debtor, is or are an alter ego or mere continuation of the Debtor, or its estate, that no Buyer Party shall have any responsibility for any liability or other obligation of, or claims against, the Debtor unless expressly assumed in writing by such Buyer Party,

- enjoining parties and entities from commencing or continuing actions against Disney with respect to liens, claims, interests and encumbrances against the Debtor or its Assets or under any theories of successor liability set forth in the Proposed Disney Sale Order,

- exculpating (a) Disney and its affiliates and successors and (b) their respective officers, directors, managers, employees, shareholders, agents, contractors, professionals, and assigns (together, the "TSA Exculpated Parties") from any liability to any person or entity for any claims, suits, demands, penalties, fines, charges, proceedings, causes of action, damages, losses, costs, or expenses of any nature (including attorneys' fees) arising, directly or indirectly, from (i) the administration, implementation, or performance of the TSA or (ii) the provision, management, or oversight of the transition services under the TSA; *provided*, that nothing in the provision (x) releases the parties to the TSA from their obligations thereunder or (y) exculpates any TSA Exculpated Party from liability for any act or omission determined by final order of the Court to constitute willful misconduct, bad faith, or gross negligence,

- granting a release by the Debtor, for itself and on behalf of its affiliates, and any of their successors and assigns (individually and collectively, the "Releasing Parties"), of any claims against Disney and its Affiliates or any of its or their Representatives (including any Company Service Provider) (as defined below) hired by Disney or any of its Affiliates (the "Hired Employees"), divisions, affiliated corporations, affiliated non-corporation entities and any successors, predecessors and assigns of the foregoing (individually and collectively, the "Licensee Parties") from any and all past, present and future claims of any kind or nature or description whatsoever that a Releasing Party had, presently has or may hereafter have or claim or assert to have against any of the Licensee Parties by reason of any act, omission, transaction, occurrence, conduct, circumstance, condition, harm, matter, cause or thing that has occurred or existed at any time from the beginning of time up to and through either the closing of the Sale to Disney or entry of the Proposed Disney Sale Order, whichever is later (collectively, the "Claims"), including any Claims that in any way arise from or out of (i) the negotiation of the Sale of the Disney Target Assets or any of the Transaction Documents (or execution of the same), (ii) the recruitment, solicitation, hiring, employment or engagement by Disney of, or offer of employment by Disney or any of its Affiliates to the Debtor's current or former employees, consultants, or other service providers (each, a "Company Service Provider"), (iii) any wind-up, liquidation, dissolution or cessation of the Debtor's business or sale or license of its assets, including the termination of any Company

Service Provider, (iv) the provision of any services to Disney or the other Licensee Parties by any Company Service Provider or by any Hired Employee to the Debtor or any of its affiliates, and (v) the Licensed IP transferred pursuant to the Sale.

PLEASE TAKE FURTHER NOTICE THAT the Proposed Disney Sale Order, including the provisions noted above (as applicable to a particular sale), may be modified for approval of the sale of the Debtor's Assets to non-Disney parties.

**PLEASE TAKE FURTHER NOTICE THAT FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER OR ANY OTHER APPLICABLE ORDER OF THE COURT ENTERED IN THIS CHAPTER 11 CASE MAY RESULT IN THE REJECTION OF YOUR BID AND YOUR DISQUALIFICATION FROM PARTICIPATING IN THE BIDDING FOR AND AUCTION OF ANY OF THE ~~DEBTOR'S~~DEBTOR'S ASSETS.**

**PLEASE TAKE FURTHER NOTICE THAT IF A SALE OBJECTION IS NOT FILED AND SERVED ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, THE OBJECTING PARTY MAY BE BARRED FROM OBJECTING TO THE SALE AND BEING HEARD AT THE SALE HEARING, AND THE BANKRUPTCY COURT MAY ENTER THE SALE ORDER WITHOUT FURTHER NOTICE TO SUCH PARTY.**

Dated: ~~October~~ [●], 2026
Wilmington, Delaware

**WILSON SONSINI GOODRICH & ROSATI, P.C.**

*/s/ Draft*
Erin R. Fay (No. 5268)
Shane M. Reil (No. 6195)
Heather P. Lambert (No. 6923)
222 Delaware Avenue, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 304-7600
E-mails: efay@wsgr.com
sreil@wsgr.com
hlambert@wsgr.com

*Proposed Counsel to the Debtor and Debtor in Possession*